# EXHIBIT A

# 24STCV13149, REBEKA RODRIGUEZ vs. AUTOTRADER.COM, INC., A DELAWARE CORPORATION

CA Superior - Los Angeles County

Los Angeles

**This case was retrieved on 10/09/2024**

## Header

**Case Number:** 24STCV13149
**Date Filed:** 05/24/2024
**Date Full Case Retrieved:** 10/09/2024
**Status:** Open
**Misc:** (1258) Civil Rights/Discrimination (General Jurisdiction); Civil

## Summary

**District**: Central
**Case Type**: Civil
**Judge**: Gail Killefer

## Participants

| Litigants | Attorneys |
|---|---|
| RODRIGUEZ REBEKA<br>**Plaintiff** | |
| AUTOTRADER.COM INC. DBA WWW.AUTOTRADER.COM<br>**Defendant** | |

**--- Unassociated Attorneys ---**

FERRELL SCOTT J.

Attorney for Plaintiff

HEATH JACOB M.

Attorney for Defendant

## Schedule

| Date | Location | Subject |
|---|---|---|
| 12/05/2024 | at 08:30 AM in Department 37 at 111 North Hill Street, Los Angeles, CA 90012 | Case Management Conference |

## Events

| Date | Details |
|---|---|
| 09/23/2024 | at 08:30 AM in Department  37 |
| 10/03/2024 | at 08:30 AM in Department  37, Gail Killefer, Presiding |

24STCV13149, REBEKA RODRIGUEZ vs. AUTOTRADER.COM, INC., A DELAWARE CORPORATION

## Other Docket Proceedings

| Date | Details |
|---|---|
| 05/24/2024 | Alternate Dispute Resolution Packet Filed by Clerk |
| 05/24/2024 | Civil Case Cover Sheet Filed by Rebeka Rodriguez (Plaintiff) |
| 05/24/2024 | Complaint Filed by Rebeka Rodriguez (Plaintiff) |
| 05/24/2024 | Notice of Case Assignment - Unlimited Civil Case Filed by Clerk |
| 05/24/2024 | Summons (on Complaint) Filed by Rebeka Rodriguez (Plaintiff) |
| 05/29/2024 | Certificate of Mailing for (Notice of Case Management Conference) Filed by Clerk |
| 05/29/2024 | Notice of Case Management Conference Filed by Clerk |
| 07/08/2024 | Stipulation and Order (And Request For Order Extending Time To Respond To Complaint) Filed by Autotrader.com, Inc. (Defendant) |
| 07/11/2024 | Proof of Personal Service Filed by Rebeka Rodriguez (Plaintiff) |
| 07/31/2024 | Declaration of Demurring Party Regarding Meet and Confer Filed by Autotrader.com, Inc. (Defendant) |
| 07/31/2024 | Demurrer - without Motion to Strike Filed by Autotrader.com, Inc. (Defendant) |
| 07/31/2024 | Memorandum of Points & Authorities Filed by Autotrader.com, Inc. (Defendant) |
| 07/31/2024 | Proof of Service (not Summons and Complaint) Filed by Autotrader.com, Inc. (Defendant) |
| 09/10/2024 | Amended Complaint ((1st)) Filed by Rebeka Rodriguez (Plaintiff) |
| 09/18/2024 | Case Management Statement Filed by Rebeka Rodriguez (Plaintiff) |
| 09/18/2024 | Notice (of Case Management Conference) Filed by Rebeka Rodriguez (Plaintiff) |
| 09/19/2024 | Case Management Statement Filed by Autotrader.com, Inc. (Defendant) |
| 09/19/2024 | Notice (of Withdrawal of Defendant Autotrader.com, Inc's Demurrers to Plaintiff's Complaint) Filed by Autotrader.com, Inc. (Defendant) |
| 09/20/2024 | Case Management Statement Filed by Rebeka Rodriguez (Plaintiff) |
| 10/02/2024 | Notice of Posting of Jury Fees Filed by Autotrader.com, Inc. (Defendant) |
| 10/03/2024 | Minute Order ( (Case Management Conference)) Filed by Clerk |

## Proceedings

| Date | # | Proceeding Text | Details |
|---|---|---|---|
| 05/24/2024 | | Alternate Dispute Resolution Packet: Alternate Dispute Resolution Packet | PageCount 2 |
| 05/24/2024 | | Civil Case Cover Sheet: Civil Case Cover Sheet | PageCount 7 |
| 05/24/2024 | | Complaint: Complaint | PageCount 16 |
| 05/24/2024 | | Notice of Case Assignment - Unlimited Civil Case: Notice of Case Assignment - Unlimited Civil Case | PageCount 2 |
| 05/24/2024 | | Summons: Summons on Complaint | PageCount 1 |
| 05/29/2024 | | Certificate of Mailing for: Certificate of Mailing for Notice of Case Management Conference | PageCount 1 |
| 05/29/2024 | | Notice of Case Management Conference: Notice of Case Management Conference | PageCount 1 |
| 07/08/2024 | | Stipulation and Order : Stipulation and Order And Request For Order Extending Time To Respond To Complaint | PageCount 5 |
| 07/11/2024 | | Proof of Personal Service: Proof of Personal Service | PageCount 2 |

24STCV13149, REBEKA RODRIGUEZ vs. AUTOTRADER.COM, INC., A DELAWARE CORPORATION

| Date | # | Proceeding Text | Details |
|------|---|-----------------|---------|
| 07/31/2024 | | Declaration of Demurring Party Regarding Meet and Confer: Declaration of Demurring Party Regarding Meet and Confer | PageCount 3 |
| 07/31/2024 | | Demurrer - without Motion to Strike: Demurrer - without Motion to Strike | PageCount 4 |
| 07/31/2024 | | Memorandum of Points & Authorities: Memorandum of Points & Authorities | PageCount 17 |
| 07/31/2024 | | Proof of Service (not Summons and Complaint): Proof of Service (not Summons and Complaint) | PageCount 2 |
| 09/10/2024 | | Amended Complaint: Amended Complaint (1st) | PageCount 33 |
| 09/18/2024 | | Case Management Statement: Case Management Statement | PageCount 8 |
| 09/18/2024 | | Notice : Notice of Case Management Conference | PageCount 6 |
| 09/19/2024 | | Case Management Statement: Case Management Statement | PageCount 6 |
| 09/19/2024 | | Notice : Notice of Withdrawal of Defendant Autotrader.com, Inc's Demurrers to Plaintiff's Complaint | PageCount 3 |
| 09/20/2024 | | Case Management Statement: Case Management Statement | PageCount 8 |
| 10/02/2024 | | Notice of Posting of Jury Fees: Notice of Posting of Jury Fees | PageCount 3 |
| 10/03/2024 | | Minute Order: Minute Order (Case Management Conference) | PageCount 1 |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**



# Superior Court of California, County of Los Angeles

<div style="border:1px solid #000; background:#ddd;">

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

    **Mediation may be appropriate when the parties**
    - want to work out a solution but need help from a neutral person.
    - have communication problems or strong emotions that interfere with resolution.

    **Mediation may not be appropriate when the parties**
    - want a public trial and want a judge or jury to decide the outcome.
    - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
   https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Bar #: 202091 <br> Scott J. Ferrell, Pacific Trial Attorneys, APC <br> 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660 <br> TELEPHONE NO.: (949) 706-6464  FAX NO.: <br> EMAIL ADDRESS: <br> ATTORNEY FOR *(Name)*:  Plaintiff Rebeka Rodriguez | **Electronically FILED by** <br> **Superior Court of California,** <br> **County of Los Angeles** <br> **5/24/2024 4:15 PM** <br> **David W. Slayton,** <br> **Executive Officer/Clerk of Court,** <br> **By D. Williams, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME:

CASE NAME:
Rodriguez v. Autotrader.com, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 24STCV13149 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [X] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: ONE (1)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 23, 2024

Scott J. Ferrell
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**
*LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE | CASE NUMBER |
|---|---|
| Rodriguez v. Autotrader.com, Inc. | 24STCV13149 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Rodriguez v. Autotrader.com, Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Rodriguez v. Autotrader.com, Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>                         Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Rodriguez v. Autotrader.com, Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE<br>Rodriguez v. Autotrader.com, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>6205 Peachtree Dunwoody Rd. |
|---|---|
| CITY:<br>Atlanta　STATE:<br>GA　ZIP CODE:<br>30328 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __05/24/2024__

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/24/2024 4:15 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
4  Tel: (949) 706-6464
   Fax: (949) 706-6469
5
   Attorneys for Plaintiff
6

7

8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                       **COUNTY OF LOS ANGELES**

10

11  REBEKA RODRIGUEZ,                      Case No.  24STCV13149

12          Plaintiff,

13          v.                             **COMPLAINT FOR VIOLATION OF
                                           CALIFORNIA INVASION OF PRIVACY**
14  AUTOTRADER.COM, INC., a Delaware       **ACT ("CIPA")**
    corporation, d/b/a WWW.AUTOTRADER.COM,
15
            Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

---
COMPLAINT

## I.    <u>INTRODUCTION</u>

Defendant has secretly deployed spyware at <u>www.autotrader.com</u> (the "Website") that accesses visitors' devices and installs tracking spyware prior to any efforts to obtain consent to do so, and then monitors and reports visitors' online habits *after* they leave the Website.

Plaintiff recently visited Defendant's Website.  Without Plaintiff's knowledge or consent, Defendant secretly accessed Plaintiff's device and installed "pen register" and "trap and trace" tracking software in violation of California law.  The harm caused by this intrusion is grave, as summarized by the world's leading cybersecurity firm:

> "*Data is worth money, which is a major reason that your online privacy is under threat.*
>
> *For instance, knowing your browsing habits or search history can deliver big profits to advertisers. If you've been searching for new apartments, your search history could tip an advertiser off to the fact that you're going to be moving home soon — time to start serving you ads for moving services, furniture, DIY stores, and home insurance….*
>
> *The risks are more far-reaching than most people realize because of what might happen to your data next. The development of Big Data means that your browsing history could be analyzed to come up with conclusions that you don't want to be drawn. For example, a woman buying items such as folic acid supplements might not appreciate a marketing agency identifying her as 'pregnant' and targeting her with pregnancy products. [¶]  If she's living with mom and dad or hasn't told her partner, she might not be happy to see 'Congratulations on Your Baby!' marketing materials arrive in the mail….*
>
> *Whenever you visit a website, data is being stored about you — possibly without your consent and even without your knowledge. You likely want to know where that data goes and how it's used, or you could decide you want to avoid it being collected altogether.*"[1]

## II.    <u>JURISDICTION AND VENUE</u>

1.    Defendant is subject to jurisdiction in this state under Penal Code section 502(j), which provides that a person who accesses a computer from another jurisdiction is deemed to have personally

---

[1]    Excerpted from "***What Is Data Privacy?***", found online at <u>https://usa.kaspersky.com/resource-center/threats/internet-and-individual-privacy-protection</u> (last accessed April 2024) (emphasis added).

1    accessed the computer in California.  Plaintiff was in California when Defendant accessed Plaintiff's

2    device and installed tracking code.

3        2.    Defendant is also subject to jurisdiction under California's "long-arm" statute found at

4    California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant

5    is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff is informed

6    and believes and thereon alleges that Defendant generates a minimum of eight percent of revenues from

7    its Website based upon interactions with Californians (including instances in which the Website operates

8    as a "gateway" to sales), such that the website "is the equivalent of a physical store in California."  Since

9    this case involves Defendant's activities in the forum state, California courts can "properly exercise

10   personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston*

11   *v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020).

12       3.    Venue is proper in this County pursuant to California Code of Civil Procedure section

13   395(a).

## III.    PARTIES

15       4.    Plaintiff  is a resident of California.  Plaintiff is also a consumer privacy advocate who

16   works as a "tester" to ensure that companies abide by the privacy obligations imposed by California

17   law.  As an individual who advances important public interests at the risk of vile personal attacks,

18   Plaintiff should be "praised rather than vilified."  *See Murray v. GMAC Mortgage Corp*., 434 F.3d 948,

19   954 (7th Cir. 2006).  Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary

20   and desirable for committed individuals to bring serial litigation" to enforce and advance consumer

21   protection statutes, and that Courts must not make any impermissible credibility or standing inferences

22   against them.  *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

23       5.    Defendant is an online car buying and selling portal with customers throughout California

24   and in this County.

## IV.    FACTUAL ALLEGATIONS

26   **A.    The Right to Privacy Has Always Been a Legally Protected Interest in the United States.**

27       6.    Since America's founding, privacy has been a legally protected interest at the local, state,

28   and federal levels.  *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (quoting *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("Privacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'"); and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law.").

7.      More specifically, privacy protections against the disclosure of personal information are embedded in California statutes and at common law.  *See e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The Ninth Circuit has repeatedly held that privacy intrusions may constitute "concrete injury" for purposes of Article III standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding "concrete injury" where plaintiffs claimed that unsolicited telemarketing calls "invade the privacy and disturb the solitude of their recipients*"); In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020) (finding "concrete injury" where Facebook allegedly tracked users' "personally identifiable browsing history" on third party websites), *cert. denied*, 141 S. Ct. 1684 (2021); *Patel*, 932 F.3d at 1275 (finding "concrete injury" where plaintiffs claimed Facebook's facial-recognition technology violated users' privacy rights).

8.      In short, the privacy of personal information is—and has always been—a legally protected interest in many contexts. Thus, a defendant whose acts or practices violate consumer privacy inflicts an actionable "injury" upon an individual.

**B.      The California Invasion of Privacy Act**

9.      The California Legislature enacted the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, to protect certain privacy rights of California citizens.  The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  (Cal. Penal Code § 630.)

10.     As relevant here, section 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

11.     A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or

electronic communication is transmitted, but not the contents of a communication."  (Cal. Penal Code § 638.50(b).)

12.    A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  (Cal. Penal Code § 638.50(b).)

13.    In plain English, a "pen register" is a "device or process" that records *outgoing* information, whereas a "trap and trace device" is a "device or process" that records *incoming* information.  A "pen register" and "trap and trace device" are collectively referred to herein as "Pen-Traps" or "PR/TT".

14.    Historically, law enforcement used "pen registers" to record the numbers of outgoing calls from a particular telephone line, while law enforcement used "trap and trace devices" to record the numbers of incoming calls to that particular telephone line.  As technology advanced, however, courts have expanded the application of those surveillance devices consistent with changes in both federal and state law.

15.    For example, with the passage of the 2001 USA PATRIOT Act, the Pen-Trap definition was expanded to include a device or process to keep up with the advancement and evolution of Internet technologies and communications. In 2015, the California Legislature overwhelmingly adopted this updated and expanded definition without a single vote in opposition.  *See* Stats. 2015, ch. 204, § 1 (A.B. 929) (eff. Jan. 1, 2016); *see also In re Order Authorizing Prospective & Continuous Release of Cell Site Location Recs.*, 31 F. Supp. 3d 889, 898 n.46 (S.D. Tex. 2014) (citing *Susan Freiwald*, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Rev. 949, 982-89 (1996) (describing the evolution of PR/TT technology from mechanical device to computer system)).

16.    For example, if a user sends an email, a "pen register" might record the email address it was sent from, the email address that the email was sent to, and the subject line—because this is the user's *outgoing* information.  On the other hand, if the same user receives an email, a "trap and trace device" might record the email address it was sent from, the email address it was sent to, and the subject line—because this is *incoming* information that is being sent to that same user.

17.    Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies when such a reading would not conflict with the statutory scheme." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley v. Kochava*, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466, at *15 (S.D. Cal. July 27, 2023) (referencing CIPA's "expansive language" when finding software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."). This accords with the fact that "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

18.    Individuals may bring an action against the violator of any provision of CIPA—including section 638.51 of the Penal Code—for $5,000 per violation.  (Cal. Penal Code § 637.2(a)(1).)

19.    CIPA provides for a private right of action and imposes civil liability and statutory penalties for the installation of pen register or trap and trace device without a court order.  Cal. Penal Code § 637.2; *see also Greenley*, 2023 WL 4833466, at *15-*16.  In *Greenley*, the federal district court denied a motion to dismiss in a materially identical case, noting the "expansive language in the California Legislature's chosen decision," *id.*, at *15, which the court held was specific as to the type of data a pen register collects – DRAS – but "vague and inclusive as to the form of the collection tool – 'a device or process.'" *Id.*  The *Greenley* court concluded that the language suggests that "courts should focus less on the form of the data collector and more on the result." *Id.*  Having this legal framework in mind, the court applied the plain meaning to the word "process" and concluded that "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" is a process that falls within CIPA's "pen register" definition.

**C.    Website Operators Can Deploy Tracking Software to De-Anonymize Otherwise Anonymous Website Visitors and Track and Surveil Such Users.**

20.    Individuals who use devices to connect to an Internet website are typically anonymous and expect to remain anonymous.  Some rogue website operators, however, secretly attach a "tracking beacon" to visitor devices that are then used to track and surveil users.

21.    The tracking software will connect fragments of information – such as a unique IP address, user's operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – with connections between them. The tracking software also connects and correlates "undeclared identifiers", such as membership in an email or subscriber list, demographics, purchases/transactions, visits to online news sites, survey results, voter registration, and motor vehicle records.

22.    Using tracking software, a website owner can correlate a grouping of fragments and the connections between them to create a unique digital profile of each individual website visitor.  This process is known as "digital fingerprinting."

23.    If a website owner can link a unique digital profile created by digital fingerprinting to a particular individual, the website owner can assemble a detailed picture of a person's private life, including: the online services for which an individual has registered; personal interests based on websites visited; organizational affiliations; where the individual has been physically; a person's political and religious affiliations; individuals with whom they have leanings and with whom they associate; and where they travel, among other things. *See* https://www.priv.gc.ca/en/opc-actions-and-decisions/research/explore-privacy-research/2013/ip_201305/ (last visited  April 2024).

24.    Digital fingerprinting of a website's users allows the website owner or its agent to monitor user activity (such as page views, searches, or purchases), de-codes the device used by each website visitor, and enables a website to identify the location, race, age, preferences, internet browsing history, and ethnicity of each user.  This data is captured and processed for the purpose of identifying the source of electronic communications on the website for consumer identification purposes.

25.    The following graphic shows how a website deploying digital fingerprinting spyware has gathered and assimilated the digital fingerprints of a website visitor to create a unique digital identifier and link it to a previously anonymous individual named Mary Smith, thereby revealing a treasure trove

of private information about Mary Smith's private life:



26.    In the above example, identity resolution has been achieved: using spyware materially identical to the technology used by the Defendant, the website owner has gathered and assimilated sufficient digital fingerprints of an anonymous visitor to identify that visitor as Mary Smith, and now knows the following information about her:

(a)  Full name (*Mary Smith*)

(b)  Date of birth (*May 1, 1979*)

(c)  Gender (*female*)

(d)  Home address (*2345 Avenue C, Papillion Nebraska*)

(e)  Marital Status and Family (*Married with two children*)

(f)  E-mail address (Mary.Smith@gmail.com)

(g)  Personal Cell Phone: (*111) 123-4567*

(h)  Voter Registration Status (*Registered*)

(i)  Interests (*Shopping, Cooking, Traveling, Reading, Science*)

(j)  Employer (*Karen's Fireside, Inc.*)

(k)  Title (*Vice President*)

(l)  Work Hours (*Daily 9-5*)

27.    For the preceding reasons, the ability to link a unique digital profile to a specific individual using digital fingerprinting is of great monetary value.  Indeed, it has created an entire industry known as "identity resolution."  Identity resolution is generally defined as "the ability to recognize an individual person, in real-time, by connecting various identifiers from their digital interactions across devices and touchpoints."  *See* https://www.fullcontact.com/identity-resolution/ (last visited April 2024).

28.    One of the means by which a website owner can gather digital fingerprints as part of its identity resolution efforts is by deploying Pen-Traps spyware on its website.

29.    In lay terms, PR/TT spyware captures electronic impulses that identify the originating source of Internet communication by capturing routing, address, or signaling information.  One means of doing so is to secretly deploy tracking spyware on a website.

30.    Indeed, PR/TT spyware has caught the attention of the United States Director of National Intelligence, who recently explained that "the advancement of digital technology, including location-tracking and other features of smartphones and other electronic devices, and the advertising-based monetization models that underlie many commercial offerings available on the Internet" pose a threat to the individuals and "raises significant issues related to privacy and civil liberties."

**D.    The PR/TT Spyware Is a "Pen Register".**

31.    To make Defendant's Website load on a user's internet browser, the browser sends an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an "HTTP response" back to the browser with a set of instructions.  *See* Figure 1.

**Figure 1:**

```
┌──────────────────┐                                    ┌──────────────────┐
│                  │          HTTP request              │                  │
│    client        │ ─────────────────────────────────▶ │    server        │
│                  │                                    │                  │
│                  │          HTTP response             │                  │
│                  │ ◀───────────────────────────────── │                  │
└──────────────────┘                                    └──────────────────┘
```

32.    The server's instructions include how to properly display the Website—*e.g.*, what images to load, what text should appear, or what music should display.

33.    In addition, the server's instruction cause at least one PR/TT beacon to be installed on a Website user's Internet browser.  The PR/TT beacon then causes the browser to send identifying information—including the user's IP address—to the PR/TT beacon's software provider, which is a software-as-a-service company that develops the PR/TT beacon provided to website owners like Defendant for a fee.  The PR/TT beacon's software provider uses such PR/TT beacon to receive, store, and analyze data collected from website visitors, including visitors of Defendant's Website.  The PR/TT beacon's software provider provides analytics and marketing services to Defendant using the data collected from visitors to the Website when they visited the Website and from when they visited other websites that included the PR/TT beacon.

34.    The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132).  The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).

35.    Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—and the IP address contains the device's geographical location.

36.    Through an IP address, the device's state, city, and zip code can be determined.

37.    As alleged below, Defendant installs the PR/TT beacon on the user's browser, and such PR/TT beacon collects information—users' IP addresses—that identifies the outgoing "routing,

addressing, or signaling information" of the user. Accordingly, Defendant's PR/TT beacon is a "pen register."

38.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends the HTTP response. This response also includes directions to install the PR/TT beacon on the user's browser. The PR/TT beacon, in turn, instructs the user's browser to send the user's IP address to the PR/TT beacon's developer.

39.    Moreover, the PR/TT beacon's developer stores a beacon or cookie with the user's IP address in the user's browser cache. When the user subsequently visits Defendant's Website, the PR/TT beacon instructs the user's browser to send the user's IP address through the beacon or cookie.

40.    If the user clears his or her cookies, then the user wipes out the PR/TT beacon from the user's browser cache. Accordingly, the next time the user visits Defendant's Website, the process begins over again: (i) Defendant's server installs the PR/TT beacon on the user's browser, (ii) the PR/TT beacon instructs the browser to send to the PR/TT developer the user's IP address, (iii) the PR/TT beacon stores a beacon or cookie in the browser cache, and (iv) the PR/TT beacon's developer will continue to receive the user's IP address on subsequent visits to the Website through the cookie or beacon.

41.    In all cases, the PR/TT beacon receives a user's IP address each and every time a user interacts with the website of one of the PR/TT beacon's developer's clients, including Defendant's Website.

42.    The user's IP address is transmitted to the PR/TT beacon along with the cookie value.

43.    The PR/TT beacon is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data." *Greenley*, 2023 WL 4833466, at *15.

44.    Further, the PR/TT beacon is a "device" because "in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *James v. Walt Disney Co.*, - F. Supp. 3d -, No. 23-cv-02500-EMC (EMC), 2023 WL 7392285, at *13 (N.D. Cal. Nov. 8, 2023).

45.    Because the PR/TT beacon captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of section 638.50(b) of the California Penal Code.

**E.    Defendant Secretly Installed Tracking Software on Plaintiff's and Other Users' Browsers Without Prior Consent or a Court Order in Violation of California Law.**

46.    Defendant owns and operates the Website.

47.    When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[2]

48.    Oftentimes, third-party scripts are installed on websites "for advertising purposes." *Id.*

49.    Further, "[i]f the same third-party tracker is present on many sites, it can build a more complete user profile over time." *Id.*

50.    Defendant has incorporated the code of the PR/TT beacon into the code of its Website. Thus, when Plaintiff visited the Website, the Website caused the PR/TT beacon to be installed on Plaintiff's and other users' browsers.

51.    As outlined above, when a user visits the Website, the Website's code—as programmed by Defendant—installs the PR/TT onto the user's browser.

52.    Upon installing the PR/TT on its Website, Defendant uses the PR/TT to collect the IP address of visitors to the Website, which is used by the PR/TT beacon's developer to provide services to Defendant and its other clients, including targeted advertisements and website analytics. Defendant and its partners use the PR/TT beacon to "digitally fingerprint" each visitor.

53.    At no time prior to the installation and use of the PR/TT beacon on Plaintiff's and other users' browsers, or prior to the use of the PR/TT beacon, did Defendant procure Plaintiff's or other users' consent for such conduct. Nor did Defendant obtain a court order to install or use the PR/TT

---

[2] "Third-party tracking refers to the practice in which a tracker on a website is set by a different website than the one the visitor is currently on. Third-party trackers are snippets of code that are typically installed on multiple websites. They collect and send information about a user's browsing history to other companies, often for advertising purposes. If the same third-party tracker is present on many sites, it can build a more complete user profile over time." https://piwik.pro/glossary/third-party-tracking/ (last visited April 2024). "[C]ompanies may be in trouble using third-party cookies on their websites without complying with privacy laws in a specific jurisdiction…." *Id.*

beacon. The PR/TT beacon deploys prior to any efforts to notify visitors or obtain their consent to being tracked.

54.     *To deter "copycat" litigation, Plaintiff does not specify the beacon by name, the details of its deployment, or the breadth of its operation in this Complaint; Plaintiff will, however, provide a fulsome explanation to Defendant upon reasonable request.*

**F.     Defendant's Conduct Constitutes an Invasion of Plaintiff's Privacy.**

55.     The collection of Plaintiff's personally identifying, non-anonymized information through Defendant's installation and use of the PR/TT beacon constitutes an invasion of privacy.

56.     As alleged herein, the PR/TT beacon is designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue, all through their surreptitious collection of user data including Plaintiff's data.

57.     Companies such as Defendant share their users' data with the PR/TT beacon's developer. In order for such developer to perform data analysis on user data and to assist companies like Defendant to run targeted advertising campaigns, the PR/TT beacon's developer needs to collect data that identifies a particular user. This is why the PR/TT beacon's developer collects IP addresses: it allows the developer to segment users in order to run targeted campaigns and perform data analysis.

58.     In other words, companies like Defendant are collecting users' data and sending it to its PR/TT beacon's developer for a profit including by optimizing its marketing campaigns.

**G.     Plaintiff's Experience**

59.     Plaintiff has visited the Website within the applicable statute of limitations period via an Internet-connected computer.

60.     When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the PR/TT beacon to be installed on Plaintiff's browser. Defendant and the PR/TT beacon's developer then used the PR/TT beacon to collect Plaintiff's IP address.

61.     Defendant and the PR/TT beacon's developer used the information collected by the PR/TT beacon to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and/or advertisers' revenue.

62.     Plaintiff did not provide Plaintiff's prior consent to Defendant to install or use the PR/TT beacon on Plaintiff's browser.

63.     Defendant did not obtain a court order before installing or using the PR/TT beacon.

64.     Plaintiff has, therefore, had Plaintiff's privacy invaded by Defendant's violations of section 638.51(a) of the California Penal Code.

65.     As explained above, Defendant knowingly and intentionally deployed PR/TT spyware to (1) decode and record the routing, addressing, and signaling information transmitted by Plaintiff's electronic device communication; and (2) capture the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication as part of its identity resolution efforts. This conduct constitutes illegal installation of "PR/TT" spyware in violation of California law.

66.     Defendant did not obtain Plaintiff's knowing and informed consent to the preceding acts, nor did Defendant obtain a court order authorizing it to do so.

**67.     Plaintiff brings this action as an individual Complaint with the hope that Defendant will voluntarily stop its unlawful conduct, remediate the damage caused, and compensate Plaintiff. If Defendant refuses, Plaintiff will amend this Complaint to name additional plaintiffs and/or add class allegations.  Plaintiff does not assert any claims arising under federal law.**

### V.     CAUSE OF ACTION

**CALIFORNIA INVASION OF PRIVACY ACT**

**PENAL CODE SECTION 638.51(a)**

68.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.     Plaintiff brings this cause of action individually against Defendant.

70.     Section 638.51 of the Penal Code provides that it is illegal for any "person' to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53."  (Cal. Penal Code § 638.51(a).)

71.     A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or

electronic communication is transmitted, but not the contents of a communication." (Cal. Penal Code § 638.50(b).)

72.    The PR/TT beacon is a "pen register" because it is a "device or process" that "capture[d]" the "routing, addressing, or signaling information"—the IP address—from the electronic communications transmitted by Plaintiff's computer or smartphone. (Cal. Penal Code § 638.50(b).)

73.    At all relevant times, Defendant knowingly installed the PR/TT beacon—which is a pen register—on Plaintiff's browser, and used the PR/TT beacon to collect Plaintiff's IP address, and track Plaintiff.

74.    The PR/TT beacon does not collect the content of Plaintiff's electronic communications with the Website. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (quotation omitted).

75.    Plaintiff did not provide Plaintiff's prior consent to Defendant's installation or use of the PR/TT beacon.

76.    Defendant did not obtain a court order to install or use the PR/TT beacon.

77.    Pursuant to section 637.2 of the California Penal Code, Plaintiff has been injured by Defendant's violation of section 638.51(a) of the California Penal Code, and seeks statutory damages of $5,000 for Defendant's violation of section 638.51(a). *See* Penal Code § 637.2(a)(1).

78.    By knowingly violating a criminal statute and accessing Plaintiff's browser to install tracking software without Plaintiff's prior consent, Defendant acted with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.    For statutory damages, punitive damages, reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5, and costs of suit; and

b.    For any and all other relief at law that may be appropriate.

1

Dated:  May 24, 2024

PACIFIC TRIAL ATTORNEYS, APC

2

By: _____

Scott. J. Ferrell

3

Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

| | SUPERIOR COURT OF CALIFORNIA | | | Reserved for Clerk's File Stamp | |

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

## NOTICE OF CASE ASSIGNMENT

## UNLIMITED CIVIL CASE

**FILED**
Superior Court of California
County of Los Angeles

05/24/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ D. Williams _____ Deputy

Your case is assigned for all purposes to the judicial officer indicated below.

CASE NUMBER:
24STCV13149

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Gail Killefer | 37 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 05/28/2024
(Date)

David W. Slayton, Executive Officer / Clerk of Court

By D. Williams_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AUTOTRADER.COM, INC., a Delaware corporation, d/b/a
WWW.AUTOTRADER.COM,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
REBEKA RODRIGUEZ,

**Electronically FILED by
Superior Court of California,
County of Los Angeles
5/24/2024 4:15 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
111 N. Hill Street, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
24STCV13149

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott J. Ferrell (Bar # 202091)
PACIFIC TRIAL ATTORNEYS, APC     Phone No.: (949) 706-6464
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660
DATE: 05/24/2024     Clerk, by David W. Slayton, Executive Officer/Clerk of Court , Deputy
*(Fecha)*     *(Secretario)* D. Williams *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>05/29/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ E. Avena _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Rebeka Rodriguez | |
| DEFENDANT/RESPONDENT:<br>Autotrader.com, Inc. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24STCV13149 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Scott J. Ferrell
Pacific Trial Attorneys, A Professional Corporation
4100 Newport Place Drive
Suite 800
Newport Beach, CA 92660

David W. Slayton, Executive Officer / Clerk of Court

Dated: 05/29/2024                    By: E. Avena
                                                  Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

05/29/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____E. Avena_____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Rebeka Rodriguez

DEFENDANT:
Autotrader.com, Inc.

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
24STCV13149

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 10/03/2024      Time: 8:30 AM      Dept.: 37

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 05/29/2024

Judicial Officer
Gail Killefer / Judge

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Scott J. Ferrell
4100 Newport Place Drive
Suite 800
Newport Beach, CA 92660

David W. Slayton, Executive Officer / Clerk of Court

By E. Avena
Deputy Clerk

Dated: 05/29/2024

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

LASC LACIV 132 Rev. 01/23
For Optional Use

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

Electronically Received 07/01/2024 12:18 PM

1    ARAVIND SWAMINATHAN (*pro hac vice* forthcoming)
      aswaminathan@orrick.com
2    Orrick, Herrington & Sutcliffe LLP
      401 Union Street
3    Suite 3300
      Seattle, WA  98101-2668
4    Telephone:     +1 206 839 4300
      Facsimile:     +1 206 839 4301
5
      THOMAS K. FU (BAR NO. 325209)
6    tfu@orrick.com
      ORRICK, HERRINGTON & SUTCLIFFE LLP
7    355 S. Grand Ave., Suite 2700
      Los Angeles, CA 90071
8    Telephone:     +1 213 612 2458
      Facsimile:     +1 213 612 2499
9
      Attorneys for Defendant
10   AUTOTRADER.COM, INC.

11

FILED
Superior Court of California
County of Los Angeles

07/08/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ J. Jones _____ Deputy

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        COUNTY OF LOS ANGELES

14

15   REBEKA RODRIGUEZ,                    Case No. 24STCV13149

16              Plaintiff,

17       v.                              **STIPULATION AND REQUEST FOR ORDER EXTENDING TIME TO RESPOND TO COMPLAINT; [~~PROPOSED~~] ORDER**

18   AUTOTRADER.COM, INC., a Delaware
      corporation, d/b/a
19   WWW.AUTOTRADER.COM

20              Defendant.

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    Pursuant to California Rules of Court, Rule 3.110(e), Plaintiff Rebeka Rodriguez and

2 Defendant Autotrader.com, Inc. ("Autotrader") hereby stipulate as follows and jointly request an

3 order extending the deadline for Autotrader to respond to Plaintiff's Complaint:

4    WHEREAS, Plaintiff filed a Complaint on May 24, 2024;

5    WHEREAS, Plaintiff served the Complaint on Autotrader on May 31, 2024;

6    WHEREAS, Autotrader's deadline to respond to the Complaint was July 1, 2024;

7    WHEREAS, Plaintiff stipulated to a 30-day extension to respond, making July 31, 2024 the

8 new due date for Autotrader's responsive pleading;

9    WHEREAS, Plaintiff and Autotrader agree that it would best conserve the parties' and

10 judicial resources for parties to have additional time to further meet and confer before Autotrader

11 files its responsive pleading; and

12    NOW THEREFORE, Plaintiff and Autotrader stipulate and jointly request an order

13 extending Autotrader's deadline to respond to the Complaint to July 31, 2024.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: July 1, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                       By:  /s/ Thomas K. Fu
                                             ARAVIND SWAMINATHAN
                                             THOMAS K. FU
                                             Attorneys for Defendant
                                             AUTOTRADER.COM. INC.

Dated: July 1, 2024                    PACIFIC TRIAL ATTORNEYS


                                       By:  /s/ David Reid
                                             DAVID REID
                                             Attorneys for Plaintiff
                                             REBEKA RODRIGUEZ


### CALIFORNIA RULES OF COURT 2.257 ATTESTATION

I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories hereto.

Dated: July 1, 2024


                                       By:  /s/ Thomas K. Fu
                                             ARAVIND SWAMINATHAN
                                             THOMAS K. FU
                                             Attorneys for Defendant
                                             AUTOTRADER.COM. INC.

## <u>ORDER</u>

Having considered the joint stipulation of the parties, and finding good cause exists for granting the relief sought, the stipulation of the parties is made the order of the Court.

**SO ORDERED.**

Date:    07/08/2024    _____

Judge of the Superior Court

STIPULATED MOTION TO EXTEND TIME TO RESPOND TO COMPLAINT

<div align="center">

**PROOF OF SERVICE**

</div>

1.    I am over eighteen years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is Orrick, Herrington & Sutcliffe LLP, 355 South Grand Avenue, Suite 2700, Los Angeles, CA 90071.

2.    On July 1, 2024, I served the following document(s):

**STIPULATION AND REQUEST FOR ORDER EXTENDING TIME TO RESPOND TO COMPLAINT; [PROPOSED] ORDER**

3.    ☒  I served the document(s) on the following person(s):

Scott J. Ferrell                                    Counsel for Plaintiff
sferrell@pacifictrialattorneys.com
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660

☐  The names, addresses, and other applicable information about the person served is included in the attached Service List.

4.    The documents were served by the following means:

☒  **By Electronic Service (E-mail)**. Based on a court order or an agreement of the parties to accept service by electronic transmission, I transmitted the document(s) and an unsigned copy of this declaration to the person(s) at the electronic notification address(es) listed in Item 3 on July 1, 2024, before 5:00 p.m. PST.

☒  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒  **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: July 1, 2024        Signature: _Jean Kellett_

Type or Print Name: Jean Kellett

<div align="center">

STIPULATED MOTION TO EXTEND TIME TO RESPOND TO COMPLAINT

</div>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | FOR COURT USE ONLY |
|---|---|
| SCOTT J. FERRELL, (SBN: 202091)<br>PACIFIC TRIAL ATTORNEYS<br>A PROFESSIONAL CORPORATION<br>4100 NEWPORT PLACE DRIVE, SUITE 800<br>NEWPORT BEACH, CA 92660<br><br>TELEPHONE NO.: (949) 706-6464    FAX NO. *(Optional)* (949) 706-6469<br>E-MAIL ADDRESS *(Optional)* : sferrell@pacifictrialattorneys.com<br>ATTORNEY FOR *(Name):* PLAINTIFF | **Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>7/11/2024 12:51 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By M. Saxon, Deputy Clerk** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES | |
|---|---|
| STREET ADDRESS: 111 N. HILL STREET<br>MAILING ADDRESS: 111 N. HILL STREET<br>CITY AND ZIP CODE: LOS ANGELES, CA 90012<br>BRANCH NAME: STANLEY MOSK COURTHOUSE | |

| PLAINTIFF/PETITIONER: REBEKA RODRIGUEZ | CASE NUMBER: **24STCV13149** |
|---|---|
| DEFENDANT/RESPONDENT: AUTOTRADER.COM, INC., a Delaware corporation,<br>d/b/a WWW.AUTOTRADER.COM, | |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 1195334IV |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   - a.☒  Summons
   - b.☒  Complaint
   - c ☒  Alternative Dispute Resolution (ADR) package
   - d ☒  Civil Case Cover Sheet *(served in complex cases only)*
   - e ☐  cross-complaint
   - f. ☒  other *(specify documents):* CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION;FIRST AMENDED GENERAL ORDER  ; PEREMPTORY CHALLENGE TO JUDICIAL OFFICER (Code Civ. Proc., S 170.6) ; NOTICE OF CASE ASSIGNMENT UNLIMITED CIVIL CASE; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE ; ORDER PURSUANT TO CCP 1054(a), EXTENDING TIME TO RESPOND BY 30 DAYS WHEN PARTIES AGREE TO EARLY ORGANIZATIONAL MEETING STIPULATION

3. a. Party served: *(specify name of party as shown on documents served):*
      AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*
      CORPORATION SERVICE COMPANY, REGISTERED AGENT, BY SERVING NICOLE STAUSS, PERSON AUTHORIZED TO ACCEPT SERVICE

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
      SACRAMENTO, CA 95833

5. I served the party *(check proper box)*
   - a. ☒  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 5/31/2024  (2) at: *(time)* 12:41PM

   - b. ☐  **by substituted service.** On *(date):*                  at: *(time)*          . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3):
     - (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
     - (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
     - (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date):        (city):        **or** ☐ a declaration of mailing is attached.
     - (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF/PETITIONER: REBEKA RODRIGUEZ | CASE NUMBER: |
|---|---|

Page 1 of 2

| DEFENDANT/RESPONDENT:  AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM, | 24STCV13149 |
|---|---|

5.  c. ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) (date):        (1) (city):
    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)
    (4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

    d. ☐  **by other means** (specify means of service and authorizing code section):
        ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
    a. ☐ as an individual defendant
    b. ☐ as the person sued under the fictitious name of (specify):
    c. ☒ on behalf of (specify): AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,
        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
    a.  Name: ROBERT J. MASON
    b.  Address: **800 W. 1ST STREET, SUITE 200-B**
        **LOS ANGELES, CALIFORNIA 90012**
    c.  Telephone number: **(213) 607-9000**
    d.  The fee for service was: $ 109.00
    e.  I am:


USA Legal Network

        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☒ registered California process server:
            (i) ☐ owner  ☐ Employee ☒ independent contractor.
            (ii) ☒ Registration No.:03-007
            (iii) ☒ County: PLACER

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    Or
9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: 06/14/2024

ROBERT J. MASON
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

_____
(SIGNATURE)

**Page 2 of 2**

1    JACOB M. HEATH (SBN 238959)
     jheath@orrick.com
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
3    Menlo Park, CA  94025-1015
     Telephone:     +1 650 614 7400
4    Facsimile:      +1 650 614 7401

5    THOMAS FU (SBN 325209)
     tfu@orrick.com
6    ORRICK, HERRINGTON & SUTCLIFFE LLP
     355 So. Grand Avenue
7    Suite 2700
     Los Angeles, CA 90071
8    Telephone:     +1 213 629 2020
     Facsimile:      +1 213 612 2499

9
     Attorney for Defendant,
10   AUTOTRADER.COM, INC.

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/31/2024 5:29 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk

11

12                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                            COUNTY OF LOS ANGELES

14

15   REBEKA RODRIGUEZ,                      Case No. 24STCV13149

16              Plaintiff,                  **DECLARATION OF JACOB M.
                                            HEATH IN SUPPORT OF
17        v.                                DEFENDANT AUTOTRADER.COM,
                                            INC.'s DEMURRER TO PLAINTIFF'S
18   AUTOTRADER.COM, INC., a Delaware       COMPLAINT**
     corporation, d/b/a
19   WWW.AUTOTRADER.COM                     Reservation No.: 760391835156
                                            Date: September 23, 2024
20              Defendant.                  Time: 8:30 am
                                            Dept: 37
21                                          Judge: Hon. Gail Killefer
                                            Date Action Filed: May 24, 2024
22

23

24

25

26

27

28

HEATH DECLARATION ISO DEFENDANT AUTOTRADER.COM, INC.'S DEMURRER TO COMPLAINT

I, Jacob M. Heath, declare:

1.      I am an attorney duly admitted to practice before the courts of the State of California. I am an attorney at the law firm of Orrick, Herrington & Sutcliffe LLP, attorneys of record for Defendant Autotrader.com, Inc. I make this declaration in support of Defendant's Demurrer to Plaintiffs' Complaint. I personally spoke to Aravind Swaminathan, another attorney at Orrick, about the meet-and-confer process in this case.  He communicated to me the following facts.

2.      On May 29, 2024, Mr. Swaminathan contacted Plaintiff by email concerning the substantive bases for the Complaint.  Following that email, Mr. Swaminathan and Plaintiff's counsel spoke by telephone about the basis for the complaint and bases for dismissal that Defendant would likely assert, and agreed that Plaintiff would provide additional information regarding the Complaint.

3.      On June 28, 2024, Plaintiff responded with an email concerning the substantive bases for the Complaint.

4.      On July 1, 2024, the parties filed a joint stipulation to extend Defendant's deadline to respond to the Complaint by 30 days, from July 1, 2024 to July 31, 2024.  The stipulation stated: "Plaintiff and Autotrader agree that it would best conserve the parties' and judicial resources for parties to have additional time to further meet and confer before Autotrader files its responsive pleading."  The Court granted the stipulated 30-day extension on July 8, 2024.

5.      On July 13, 2024, Mr. Swaminathan sent an email informing Plaintiff that Defendant would be filing a demurrer to the Complaint on July 31, 2024.

6.      Later on July 13, 2024, Plaintiff responded with an email agreeing that the parties had met and conferred regarding the demurrer, and stating: "We will review the papers and respond accordingly."

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on July 31, 2024, in Menlo Park, California.


Dated: July 31, 2024

By: */s/ Jacob M. Heath*
Jacob M. Heath

1  JACOB M. HEATH (SBN 238959)
   jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
4  Facsimile:    +1 650 614 7401

5  THOMAS FU (SBN 325209)
   tfu@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   355 So. Grand Avenue
7  Suite 2700
   Los Angeles, CA 90071
8  Telephone:    +1 213 629 2020
   Facsimile:    +1 213 612 2499
9
   Attorneys for Defendant,
10 AUTOTRADER.COM, INC.

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                    COUNTY OF LOS ANGELES

14

15 REBEKA RODRIGUEZ,                    Case No. 24STCV13149

16              Plaintiff,              **DEFENDANT AUTOTRADER.COM,
                                        INC.'s NOTICE OF DEMURRER AND
17     v.                               DEMURRER TO PLAINTIFF'S
                                        COMPLAINT**
18 AUTOTRADER.COM, INC., a Delaware
   corporation, d/b/a                   Reservation No.: 760391835156
19 WWW.AUTOTRADER.COM                   Date: September 23, 2024
                                        Time: 8:30 am
20              Defendant.              Dept: 37
                                        Judge: Hon. Gail Killefer
21                                      Date Action Filed: May 24, 2024

22

23

24

25

26

27

28

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/31/2024 5:29 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk

1

**NOTICE OF DEMURRER**

2

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on September 23, 2024, at 8:30 am, or as soon thereafter

4

as this matter may be heard, in Department 37 of the above-entitled court, located at 111 North

5

Hill St., Los Angeles, California 90012, Defendant Autotrader.com, Inc. will, and hereby does,

6

demurrer to the Complaint filed by Plaintiff Rebeka Rodriguez and each cause of action hereby

7

alleged, pursuant to California Code of Civil Procedure section 430.10(e).

8

Defendant's Demurrer to Plaintiff's Complaint is based on the ground that the sole cause

9

of action does not state facts sufficient to state a claim upon which relief can be granted against

10

Defendant, per California Code of Civil Procedure section 430.10(e), because the Complaint fails

11

to plead all elements of the sole cause of action and states facts that fail as a matter of law to state

12

a claim. Defendant seeks an order sustaining this Demurrer without leave to amend, with

13

prejudice, and for such other and further relief as the Court deems just and proper.

14

Defendant's Demurrer to Plaintiff's Complaint is based on this Notice of Demurrer, the

15

Demurrer, the accompanying Memorandum of Points and Authorities, the pleadings and other

16

papers filed in this action, any other matters of which the Court may or must take notice, and any

17

and all documentary evidence or oral argument as may be presented in connection with the

18

hearing on this matter.

19

20

Dated: July 31, 2024                    Respectfully submitted,

21

                                        JACOB M. HEATH
                                        THOMAS FU
22

                                        ORRICK, HERRINGTON & SUTCLIFFE LLP

23

24

                                        By: */s/ Jacob M. Heath*
                                            JACOB M. HEATH
25

                                            Attorneys for Defendant
                                            Autotrader.com, Inc.
26

27

28

1

## **DEMURRER TO COMPLAINT**

2          Defendant Autotrader.com, Inc. hereby demurs to the sole claim brought against it in

3    Plaintiff's Complaint. Defendant demurs to the cause of action asserting unlawful installation or

4    use of a pen register or a trap and trace device under California Penal Code section 638.51(a), on

5    the ground that Plaintiff fails to allege facts sufficient to constitute a cause of action.  Cal. Civ.

6    Proc. Code § 430.10(e); *Rakestraw v. Cal. Physicians' Serv.*, 81 Cal. App. 4th 39, 43 (2000);

7    *Aubry v. Tri-City Hosp. Dist.*, 2 Cal. 4th 962, 967 (1992).

8          Accordingly, as discussed in the accompanying Memorandum of Points and Authorities,

9    the Court should sustain the Demurrer pursuant to Cal. Civ. Proc. Code § 430.10(e).

10

11   Dated: July 31, 2024                    Respectfully submitted,

12                                           JACOB M. HEATH
                                             THOMAS FU
13                                           ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15                                      By:  */s/ Jacob M. Heath*

16                                           JACOB M. HEATH
                                             Attorney for Defendant
17                                           Autotrader.com, Inc.

18

19

20

21

22

23

24

25

26

27

28

Journal Technologies Court Portal

# Make a Reservation

**REBEKA RODRIGUEZ vs AUTOTRADER.COM, INC., A DELAWARE CORPORATION**

Case Number: 24STCV13149    Case Type: Civil Unlimited    Category: Civil Rights/Discrimination
Date Filed: 2024-05-24  Location: Stanley Mosk Courthouse - Department 37

## Reservation

| Case Name: | Case Number: |
|---|---|
| REBEKA RODRIGUEZ vs AUTOTRADER.COM, INC., A DELAWARE CORPORATION | 24STCV13149 |
| Type: | Status: |
| Demurrer - without Motion to Strike | RESERVED |
| Filing Party: | Location: |
| Autotrader.com, Inc. (Defendant) | Stanley Mosk Courthouse - Department 37 |
| Date/Time: | Number of Motions: |
| 09/23/2024 8:30 AM | 1 |
| Reservation ID: | Confirmation Code: |
| 760391835156 | CR-PZZ6EWUCRNJWR3M5M |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Demurrer - without Motion to Strike | 0.00 | 1 | 0.00 |
| TOTAL | | | **$0.00** |

## Payment

| Amount: | Type: |
|---|---|
| $0.00 | NOFEE |
| Account Number: | Authorization: |
| n/a | n/a |
| Payment Date: | |
| n/a | |

[🖨 Print Receipt]    [➕ Reserve Another Hearing]

1  JACOB M. HEATH (SBN 238959)
   jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, CA  94025-1015
   Telephone:     +1 650 614 7400
4  Facsimile:     +1 650 614 7401

5  THOMAS FU (SBN 325209)
   tfu@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   355 So. Grand Avenue
7  Suite 2700
   Los Angeles, CA 90071
8  Telephone:     +1 213 629 2020
   Facsimile:     +1 213 612 2499

9
   Attorneys for Defendant,
10 AUTOTRADER.COM, INC.

11

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/31/2024 5:29 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

12

COUNTY OF LOS ANGELES

13

14

15 REBEKA RODRIGUEZ,                          Case No. 24STCV13149

16            Plaintiff,

17     v.                                     **DEFENDANT AUTOTRADER.COM,
                                              INC'S MEMORANDUM IN SUPPORT
                                              OF ITS DEMURRERS TO
18 AUTOTRADER.COM, INC., a Delaware           PLAINTIFF'S COMPLAINT**
   corporation, d/b/a
19 WWW.AUTOTRADER.COM                          Reservation No.: 760391835156
                                              Date: September 23, 2024
20            Defendant.                       Time: 8:30 am
                                              Dept: 37
21                                             Judge: Hon. Gail Killefer
                                              Date Action Filed: May 24, 2024

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ................................................................................................ 3

III.   LEGAL STANDARD ....................................................................................... 5

IV.   LEGAL ARGUMENT ...................................................................................... 5

    A.    The Complaint Fails For Insufficient Factual Allegations.................................... 5

    B.    The Complaint Fails As A Matter Of Law.............................................................. 7

        1.    Merely collecting IP addresses—as is required to operate a website—does not constitute an illegal pen register or trap and trace device. .................... 7

        2.    The "installation" of software here was done with Autotrader's consent—the only consent required. .......................................................... 9

        3.    Though not required, Plaintiff consented to the recording of her IP address in any event. ....................................................................... 11

V.    CONCLUSION ............................................................................................... 12

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

1

**TABLE OF AUTHORITIES**

2

                                                                              **Page(s)**

3

**Cases**

4

*Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.*,
    1 Cal. App. 5th 545 (2016)...........................................................................7

5

*Blank v. Kirwan*,
    39 Cal. 3d 311 (1985) ................................................................................5

6

7

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................8

8

*Byars v. Hot Topic, Inc.*,
    656 F. Supp. 3d 1051 (C.D. Cal. 2023)..............................................1, 2, 3

9

10

*Capitol Records Inc. v. Thomas-Rasset*,
    2009 WL 1664468 (D. Minn. 2009) .......................................................7, 8

11

*Cody v. Boscov's, Inc.*,
    658 F. Supp. 3d 779 (C.D. Cal. 2023).......................................................3

12

13

*Esparza v. UAG Escondido A1 Inc.*,
    2023 WL 4834945 (S.D. Cal. July 27, 2023) ............................................3

14

*Garcia v. Build.com, Inc.*,
    2023 WL 4535531 (S.D. Cal. July 13, 2023) ............................................3

15

16

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)......................................................9

17

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...........................................3, 4, 14

18

19

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    886 F. Supp. 2d 888 (N.D. Ill. 2012) ........................................................8

20

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023)......................................................3

21

22

*Licea v. Cinmar, LLC*,
    659 F. Supp. 3d 1096 (C.D. Cal. 2023)......................................................3

23

*Licea v. Vitacost.com, Inc.*,
    683 F. Supp. 3d 1118 (S.D. Cal. 2023)......................................................3

24

25

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007)......................................................................5

26

*Malibu Media, LLC v. Pontello*,
    2013 WL 12180709 (E.D. Mich. 2013) ....................................................12

27

28

*Martin v. Sephora USA, Inc.*,
   2023 WL 3061957 (E.D. Cal. Apr. 24, 2023)....................................................................3

*Morris v. JPMorgan Chase Bank, N.A.*,
   78 Cal. App. 5th 279 (2022)....................................................................5

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. 2023)....................................................................8

*Ramirez v. Wong*,
   188 Cal. App. 4th 1480 (2010)....................................................................7

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. 2021)....................................................................11

*S. Bell Tel. & Tel. Co. v. Hamm*,
   306 S.C. 70 (1991)....................................................................10

*Sparshott v. Feld Ent., Inc.*,
   311 F.3d 425 (D.C. Cir. 2002)....................................................................10

*Torres v. Nutrisystem, Inc.*,
   289 F.R.D. 587 (C.D. Cal. 2013)....................................................................11

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008)....................................................................3, 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
   674 F. Supp. 3d 751 (N.D. Cal. 2023)....................................................................3

*Valenzuela v. Kroger Co.*,
   2023 WL 4418887 (C.D. Cal. June 23, 2023)....................................................................3

*Valenzuela v. Super Bright LEDs Inc.*,
   2023 WL 8424472 (C.D. Cal. 2023)....................................................................3

**Statutes**

Cal. Civ. Proc. Code § 430.10(e)....................................................................5

Cal. Penal Code § 631....................................................................3, 10

Cal. Penal Code § 638.50....................................................................6

Cal. Penal Code § 638.51....................................................................*passim*

Cal. Penal Code § 638.52....................................................................8, 9

**Other Authorities**

California Bill Analysis, A.B. 929 Assem., 4/7/2015....................................................................8

California Bill Analysis, A.B. 929 Assem., 4/21/2015....................................................................8

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iii -

2015 California Assembly Bill No. 929,
California 2015-2016 Regular Session, Committee Report....................................................9, 10

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT AUTOTRADER.COM, INC.'S MEMORANDUM
IN SUPPORT OF DEMURRERS TO PLAINTIFF'S COMPLAINT

1   **I.**    <u>**INTRODUCTION**</u>

2        Over the last several years, Plaintiff's counsel has earned a reputation as a "serial litigant[]

3   bringing numerous 'cookie cutter' lawsuits under the [California Invasion of Privacy Act ('CIPA')]

4   against various businesses that operate websites." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051,

5   1059 (C.D. Cal. 2023) (noting by December 2022, "Mr. Ferrell appear[ed] to have filed at least 58

6   of these virtually identical lawsuits"). As Judge Bernal has explained, the "central dynamic" behind

7   these lawsuits is as follows: Counsel "appears to work with multiple 'tester' plaintiffs to drum up

8   these lawsuits," which he then files in staggering numbers. *Id.* at 1059-60. "[T]he goal" of this

9   enterprise is not to "[i]nitiat[e] legitimate litigation," but rather "to file as many lawsuits as possible

10   in the least amount of time," in hopes of obtaining "quick cash settlement[s]." *Id.* at 1060.

11   Accordingly, when filing these multitudinous lawsuits, Plaintiff's counsel does not "plead specific

12   facts arising out of a specific encounter with a specific defendant," but instead "cop[ies] and

13   paste[s] [the same] complaint"—which is "written at such a high level of generality that it could

14   apply word-for-word to the dozens of other businesses this law firm is suing"—"over and over

15   again." *Id.* Indeed, these "cookie-cutter" complaints typically "never mention[] the name of the

16   company Plaintiff is suing after the caption page, because doing so might take more than a few

17   seconds to alter when filing a new lawsuit." *Id.*[1]

18   ———————————————

19   [1] Lest there be any doubt about whether the quotes in this paragraph accurately reflect Judge
20   Bernal's admonishment of Plaintiff's counsel, Autotrader reproduces the relevant portion of his
     opinion at length below:

21       Before turning to these issues, the Court acknowledges the central dynamic in this litigation…:
22       Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter"
        lawsuits under CIPA against various businesses that operate websites. As of December 9, 2022,
23       Mr. Ferrell appears to have filed at least 58 of these virtually identical lawsuits. Mr. Ferrell
24       appears to work with multiple "tester" plaintiffs to drum up these lawsuits.... The cases bear
        strong echoes of serial Americans with Disabilities Act (ADA) litigation, in which Mr. Ferrell
25       has also engaged. Initiating legitimate litigation generally requires a considerable expenditure
        of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead
26       specific facts arising out of a specific encounter with a specific defendant. As the saying goes,
27       time is also money. So when the goal is to file as many lawsuits as possible in the least amount
        of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to
        write the original template in such a way that hardly anything needs to be swapped out.

28

This lawsuit against Defendant Autotrader.com, Inc. ("Autotrader") is just the latest in this scheme. Here, the Complaint—materially indistinguishable from the host of others like it—claims that because software on an Autotrader website captured Plaintiff's IP address when Plaintiff visited it, Autotrader violated Penal Code § 638.51's criminal prohibition on "pen registers" and "trap and trace devices." That high-level sketch, however, is as detailed as the Complaint's allegations get. Indeed, the Complaint admits that it "does not specify the [offending technology at issue] by name, the details of its deployment, or the breadth of its operation," because Plaintiff wants to "deter 'copycat' litigation." Compl. ¶ 54. Setting aside that Plaintiff's motive proves that this case is the newest incarnation of what Judge Bernal chastised in *Byars*, it is indisputable that the Complaint fails to plead even the most basic facts necessary to state a cause of action under Section 638.51 (or any law), and so for that reason alone cannot survive. *See Byars*, 656 F. Supp. 3d 1060-61 ("[I]f a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant … then almost by definition he is pleading without the factual specificity necessary to state a claim for relief.").

What is more, the few facts that the Complaint does plead make clear that Section 638.51 is, for multiple reasons, inapplicable here as a matter of law. ***First***, courts have long held, and the language and legislative history of Section 638.51 make clear, that merely collecting IP addresses of incoming website visitors—something every website must do to allow the internet to function— does not constitute an illegal "pen register" or a "trap and trace device." The Complaint relies squarely on that improper legal theory, extending Section 638.51 far beyond its limits in a way that would threaten to criminalize vast swathes of the internet.

***Second***, Section 638.51 specifically permits the installation of a pen register or trap and

---

Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement. But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? … The FAC is replete with evidence of cut-and-paste work, perhaps the most obvious of which is that it never mentions the name of the company Plaintiff is suing after the caption page, because doing so might take more than a few seconds to alter when filing a new lawsuit.

*Byars*, 656 F. Supp. 3d at 1059–60 (footnotes and citations omitted).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   trace device with the consent of the "user" (singular) on whose premises the device is installed. In

2   this respect, Section 638.51 stands in stark contrast to other provisions of the California Invasion

3   of Privacy Act that require the consent of all parties, not just one. *See, e.g.*, Penal Code § 631. The

4   "user" here is Autotrader, since the (unspecified) software alleged to violate Section 638.51 was

5   installed on Autotrader's website by an (again unspecified) provider. And the Complaint alleges

6   that Autotrader consented to the software, as Section 638.51 requires.

7        ***Third***, even if *Plaintiff's* consent were relevant, Plaintiff provided it. The Complaint

8   establishes that she chose voluntarily to navigate to Autotrader's website while knowing in advance

9   that her "'IP address information [would be] provided" as part of that interaction. *Heeger v.*

10  *Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (quoting *United States v. Forrester*,

11  512 F.3d 500, 510 (9th Cir. 2008)).

12       Plaintiff's Complaint is thus flawed through and through and fails—multiple times over—

13  as a matter of law. Plainly, this is not some mere oversight, but rather Plaintiff's counsel's design

14  from the start. As Judge Bernal observed, Plaintiff's counsel does "[s]ometimes … get away with"

15  complaints this defective, because some defendants are "willing to offer a quick cash settlement"

16  to avoid the costs of litigation. *Byars*, 656 F. Supp. 3d at 1060. But where, as here, a defendant does

17  "not roll over so easily," courts routinely see these lawsuits for the baseless nuisances that they are,

18  and dismiss them accordingly. *Id.*[2] This court should do the same.

19  **II.    BACKGROUND**

20       "[E]very computer or server connected to the Internet has a unique IP address." *Heeger*,

21  509 F. Supp. 3d at 1189 (quoting *Forrester*, 512 F.3d at 510 n.5). An IP address is the internet

---

[2] For a sampling of recent lawsuits that have been dismissed, see, e.g., *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023); *Esparza v. UAG Escondido A1 Inc.*, 2023 WL 4834945 (S.D. Cal. July 27, 2023); *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118 (S.D. Cal. 2023); *Garcia v. Build.com, Inc.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023); *Valenzuela v. Kroger Co.*, 674 F. Supp. 3d 751 (C.D. Cal. 2023); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023); *Martin v. Sephora USA, Inc.*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1051 (C.D. Cal. 2023); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779 (C.D. Cal. 2023); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

DEFENDANT AUTOTRADER.COM, INC.'S MEMORANDUM
IN SUPPORT OF DEMURRERS TO PLAINTIFF'S COMPLAINT

equivalent of a telephone number: It is a "numerical identifier" assigned to "each computer or network connected to the Internet." *Id.* And, like a telephone number, it is "provided" and "used ... for the specific purpose of directing the routing of information." *Id.* In particular, an internet user who wishes to visit a website must "voluntarily turn[] over" their IP address "in order to direct" the routing used to make that connection. *Id.* Because an individual's IP address **must be provided** in order to facilitate a connection to a website, it is "inevitable that [a website] learns a [visitor]'s IP address." *Id.* at 1190 (emphasis added); *see also* Compl. ¶ 35 (admitting that "the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server"). That is, at a fundamental level, how the internet works.

In this case, Plaintiff alleges that this basic process of collecting IP addresses is not only illegal, but criminal. Specifically, Plaintiff—a self-described "tester" who seeks to generate lawsuits by visiting companies' websites with the intent of incurring supposed privacy violations, Compl. ¶ 4—claims that at some unspecified time she visited Autotrader's website and, as a part of that process, revealed her IP address to Autotrader. Compl. ¶¶ 59-60; *see also* Compl. ¶ 35. According to Plaintiff, Autotrader's receipt and recording of that IP address constitutes a violation of Penal Code § 638.51's prohibition on "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Compl. ¶ 10.

Beyond those high-level allegations, Plaintiff's Complaint is exceptionally barebones. Indeed, the Complaint admits that it "does not specify the [technology at issue] by name, the details of its deployment, or the breadth of its operation"—purportedly to "deter 'copycat' litigation." Compl. ¶ 54. Nor does the Complaint even specify when Plaintiff supposedly visited Autotrader's website. *See* Compl. ¶ 59 (alleging only that Plaintiff did so "within the applicable statute of limitations period").

To the extent the Complaint includes factual allegations at all, they are hypothetical and untethered to the actual claim at issue. For instance, the Complaint gives the example of a hypothetical website operator who might choose to supply a visitor's IP address to a third-party purveyor of an "identity resolution" tool, who will then send back to the website operator other

1  information that the "identity resolution" vendor has associated with the visitor's IP address, such

2  as name, birth date, and email address. *See* Compl. ¶¶ 20-26. The Complaint does not attempt to

3  explain why such a hypothetical transaction would be relevant, since the only claim is that

4  *capturing* IP addresses—not putting them to subsequent use—constitutes a "pen register" or "trap

5  and trace device" under Section 638.51. And in any event, the Complaint does not supply any well-

6  pleaded factual allegations indicating that Autotrader uses such an identity resolution tool (at all,

7  let alone regarding Plaintiff in particular).

8  ### III.    LEGAL STANDARD

9     In evaluating a demurrer, a court must "admit[ ] all material facts properly pleaded," but

10 need not accept as true "contentions, deductions or conclusions of fact or law." *Blank v. Kirwan*,

11 39 Cal. 3d 311, 318 (1985). To survive a demurrer, a complaint must "allege[s] facts sufficient to

12 establish every element of each cause of action." *Linear Tech. Corp. v. Applied Materials, Inc*., 152

13 Cal. App. 4th 115, 122 (2007); Cal. Civ. Proc. Code § 430.10(e). Accordingly, a court should

14 sustain a demurrer "[i]f the plaintiff failed to plead, or if the defendants negated, any essential

15 element of a particular cause of action." 152 Cal. App. 4th at 122.

16 ### IV.    LEGAL ARGUMENT

17    The Complaint is doomed by both what it lacks and what it contains. Its sparse allegations

18 are missing several facts that would be necessary to state a claim, including critical details about

19 Plaintiff's encounter with Autotrader. *Infra* § IV.A. And the few facts actually pleaded suffice to

20 show that there was no Section 638.51 violation here in any event. *Infra* § IV.B.

21    **A.    The Complaint Fails For Insufficient Factual Allegations.**

22    "The absence of any allegation essential to a cause of action renders it vulnerable to a

23 general demurrer." *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 291 (2022). Here,

24 Plaintiff—on her own telling—is missing several. Indeed, as Plaintiff admits, she "does not specify

25 the beacon by name, the details of its deployment, or the breadth of its operation in this Complaint."

26 Compl. ¶ 54. That is fatal.

27    As Plaintiff herself recognizes, Section 638.51 is limited to the installation of two specific

28

DEFENDANT AUTOTRADER.COM, INC.'S MEMORANDUM
IN SUPPORT OF DEMURRERS TO PLAINTIFF'S COMPLAINT

technologies: a "pen register" and a "trap and trace device." Compl. ¶ 70. Each of those, in turn, bears a particular definition under the statute. "Pen register" is defined to "mean[] a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Penal Code § 638.50(b). And "trap and trace device" is defined to "mean[] a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Penal Code § 638.50(c).

Accordingly, to plead a cause of action under Section 638.51, Plaintiff must allege facts showing (at least) that the "device or process" at issue either:

> (a) recorded (b) dialing, routing, addressing, or signaling information that was (c) transmitted by **an instrument or facility** from which a wire or **electronic communication** is sent; or

> (a) captured (b) **impulses** (c) that identify the originating number or dialing, routing, addressing, or signaling information (d) which are reasonably likely to identify the source of a wire or **electronic communication**.

The Complaint does not even try to plead facts showing that either of those definitions is satisfied here. To take just a few examples, the Complaint includes no factual allegations identifying any "**instrument or facility**," any "**electronic communications**," or any "**impulses**."

Instead, all the Complaint offers are conclusory assertions parroting the language of the statute without elaboration. In particular, Plaintiff alleges that "Defendant knowingly and intentionally deployed … spyware to (1) decode and record the routing, addressing, and signaling information transmitted by Plaintiff's electronic device communication; and (2) capture the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." Compl. ¶ 65; *see also* Compl. ¶ 29 (alleging that Autotrader "captures electronic impulses that identify the originating source of Internet communication by capturing routing, address, or signaling information"). Those sentences generically recite the elements of Section

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -
DEFENDANT AUTOTRADER.COM, INC.'S MEMORANDUM
IN SUPPORT OF DEMURRERS TO PLAINTIFF'S COMPLAINT

638.51. But the Complaint offers no supporting specific facts whatsoever. Perhaps the closest it comes is alleging the use of a so-called "beacon" to collect IP addresses, *e.g.* Compl. ¶ 37, but Plaintiff intentionally excluded any detail about the beacon from her Complaint, *id.* ¶ 54. Those kinds of "conclusory allegation[s]" with "no facts [alleged] in support" are nowhere near enough to survive a demurrer. *Ramirez v. Wong*, 188 Cal. App. 4th 1480, 1488 (2010); *see also, e.g.*, *Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.*, 1 Cal. App. 5th 545, 551 (2016) (explaining that courts must "reject" a "mere conclusion unsupported by any specific factual allegations"). For this reason alone, Plaintiff's Complaint must be dismissed.

### B. The Complaint Fails As A Matter Of Law.

The few facts that the Complaint does plead, moreover, make clear that Plaintiff's claim cannot go forward for at least three reasons. ***First***, to the extent that the Complaint alleges a theory for how the software on Autotrader's website operates, it is that Autotrader collects website visitors' "IP addresses." *See* Compl. ¶¶ 33-42. But software that merely collects IP addresses is fundamental to the internet's basic functioning and does not constitute an unlawful "pen register" or "trap and trace device." *Infra* § IV.B.1. ***Second***, Section 638.51 narrowly outlaws "installing" a pen register or trap and trace device only if it is done without the consent of the "user" (singular) on whose premises the device is installed. Penal Code § 638.51(b). Here, that "user" is Autotrader, as the (unspecified) software at issue was installed on Autotrader's website. The Complaint pleads Autotrader's consent; Plaintiff's consent is irrelevant under the statute. *Infra* § IV.B.2. Third, even if Plaintiff's consent were relevant, she provided it by voluntarily navigating to Autotrader's website when any reasonable person would know—and indeed, Plaintiff (a self-described "tester" who visits websites *knowing* that they will collect her IP address, Compl. ¶ 4) herself expected—that navigation would result in the transmission of her IP address to Autotrader.

### 1. Merely collecting IP addresses—as is required to operate a website—does not constitute an illegal pen register or trap and trace device.

For more than a decade, courts have held that the federal prohibition on pen registers and trap and trace devices "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Records Inc. v. Thomas-*

*Rasset*, 2009 WL 1664468, at *3 (D. Minn. 2009) (discussing Pen Register Act, 18 U.S.C. § 3121). After all, "[i]f [such a law] did apply" to the mere collection of incoming IP addresses, "then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the internet." *Id.*; *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012) (because "all Wi-Fi devices on a network necessarily receive addressing information to determine if a data packet is addressed to them," if capture of such information violated the federal prohibition on pen registers and trap and trace devices then "any user of a Wi-Fi network on which a third party was also operating" would be "in violation of the Act").

That same conclusion applies to Section 638.51, which is not just analogous to, but indeed specifically modeled on, that same federal prohibition. *See* California Bill Analysis, A.B. 929 Assem., 4/7/2015; *see also, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (explaining that California courts routinely look to analogous federal laws when interpreting CIPA (citing *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020))). The California legislature, like Congress, stopped well short of criminalizing the basic functioning of the internet. Indeed, the legislative history of Section 638.51 makes crystal clear that the legislature was concerned with "telephone surveillance"—not collection of non-telephone information like IP addresses. *See* California Bill Analysis, A.B. 929 Assem., 4/21/2015. That makes sense: In enacting Section 638.51, the legislature worked from definitions of "'pen register' [a]s an electronic device which records all numbers called from (outgoing) a particular **telephone line**," and a "'trap and trace device' [as a device that] records what numbers had called a specific **telephone**, *i.e.* all incoming phone numbers." California Bill Analysis, A.B. 929 Assem., 4/7/2015 (quoting Los Angeles District Attorney's Office) (emphasis added).

The legislature wrote that understanding into the text of the law itself. CIPA requires any court order authorizing the installation of a pen register or trap and trace device to specify "[t]he number" and "physical location of the **telephone line** to which the pen register or trap and trace device is to be attached." Penal Code § 638.52(d)(3) (emphasis added); *see also id.* § 638.52(c)

1    (providing that a "pen register or trap and trace device shall not" collect the physical location of the

2    subscriber "except to the extent that the location may be determined from the **telephone number**"

3    (emphasis added)). These provisions make clear that CIPA conceives of a "pen register or trap and

4    trace device" as devices that will be "attached" to a "telephone line" with a "physical location."

5    Penal Code § 638.52(d)(3).

6        Plaintiff's attempt to apply Section 638.51 to software that collects website visitors' IP

7    addresses cannot be squared with any of that. In direct contrast to the statutory text, the software at

8    issue here is alleged to be installed on a website (not a "telephone line"), which has neither an

9    associated phone "number" nor a "physical location." Indeed, it has nothing to do with telephone

10   lines, telephone numbers, or telephone surveillance at all. Accordingly, it falls well outside the

11   scope of Section 638.51's prohibition. For this reason alone, Plaintiff's claim fails.[3]

12                    **2.      The "installation" of software here was done with Autotrader's consent—the only consent required.**

13

14       Even if Plaintiff had pleaded the existence of a "pen register" or "trap and trace device,"

15   her claim would still fail because Section 638.51 permits the installation of such a device with "the

16   consent of the **user of that service**"—here, Autotrader. Penal Code § 638.51(b)(5) (emphasis

17   added). The legislature's use of the singular "user" for Section 638.51's consent requirement is a

18   notable departure from other provisions of CIPA (such as Section 631's prohibition on

19   wiretapping), which require consent of *all* parties. As the California Legislature explained when

20   enacting Section 638.51, "[u]nlike a wiretap," "pen registers and track and trace devices do not

21   provide [access to] the content of the messages which are transmitted." 2015 California Assembly

22   _____

     [3] The Complaint suggests that *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023),

23   "denied a Motion to Dismiss in a materially identical case." Compl. ¶ 19. As an initial matter,

24   however, *Greenley*—unlike this case—did not involve allegations of software that merely collected
     a website visitor's IP address. Instead, the *Greenley* plaintiff alleged that the software at issue

25   collected (among other things) his "geolocation." 684 F. Supp. 3d at 1037. What is more, *Greenley*
     cited no caselaw—or indeed, any authority—in support of its holding. To the contrary, it seemed

26   to believe (incorrectly) that it was writing on a blank slate, and thus did not grapple with any of the
     cases, legislative history, or textual provisions discussed in text above. *See id.* at 1050 (stating that

27   the defendant "provide[d] no caselaw in support" of its position on Section 638.51, and observing
     that "it seems no court has interpreted this provision of CIPA"). *Greenley* is thus of little help in

28   resolving the issues and arguments presented here.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

Bill No. 929, California 2015-2016 Regular Session, Committee Report at 11. Accordingly, "[w]iretap[s]" under CIPA are "subject to a much higher standard of scrutiny than" the pen registers and trap and trace devices at issue here. *Id.*

That makes sense. If the law required the consent of *all* parties before installing a pen register, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting identical provision of federal law on which Section 638.51 was modeled). After all, a caller ID system allows the recipient of an inbound wire communication to learn and record the identity of the initiating party. *See id.* Accordingly, if laws like Section 638.51 were interpreted (contrary to their text) as requiring the consent of *all* parties to any communication, then all caller ID users would be criminals (since such users do not first obtain consent of incoming callers before obtaining their identity from the caller ID system). *See id.* But they are not. Section 638.51 avoids that absurd result by requiring only the consent of one party (the "user," singular)—i.e., the "subscriber to the service," *see S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70, 73 (1991) (interpreting materially identical provision of South Carolina law)—before allowing installation of the pen register or trap and trace device.

Fundamentally, then, Plaintiff's lawsuit misunderstands the operation of Section 638.51. That provision is designed to protect the person on whose premises the trap and trace device is installed. Here, the (unspecified) provider of the (unspecified) accused software—that is, a "provider of electronic … communication service," Penal Code § 638.51(b)—installed the software on Autotrader's website. Had the provider done so without *Autotrader's* knowledge or consent, then *Autotrader* would have a cause of action against that provider—just as a homeowner would have a cause of action against a police officer who installs a pen register on that person's home phone without that person's (or a court's) permission. But Section 638.51 does not prohibit Autotrader from installing software to determine incoming IP addresses *on its own website* without first obtaining permission from every website visitor—just as it does not prohibit every person from installing a caller ID device *in their own home* without first obtaining permission from every

- 10 -

incoming caller.

Here, Plaintiff alleges that the installation of the software was done "knowingly and intentionally" on Autotrader's part. Compl. ¶ 65. Because Autotrader's is the only consent that is required, and according to Plaintiff's own allegations Autotrader used the software knowingly and intentionally, there can be no doubt that Autotrader gave consent to the installation of the (unspecified) software at issue in Plaintiffs' Complaint. Plaintiff's Section 638.51 claim fails for this separate reason.

### 3.    Though not required, Plaintiff consented to the recording of her IP address in any event.

Moreover, even if Plaintiff's consent were required here, which it is not, Plaintiff unquestionably gave it when she voluntarily navigated to Autotrader's website. Consent to recording exists under CIPA where a plaintiff proceeds in circumstances where "a reasonably prudent user would have been aware" that their information was being recorded. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. 2021); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (individual who "actually expected the [communication] to be recorded" can be deemed to "have implicitly consented to the recording by the very act of" initiating the communication).

That is undoubtedly the case here. As courts have explained, any reasonable website user who voluntarily navigates to a website would understand in advance that her "'IP address information [would be] provided" as part of that interaction." *Heeger*, 509 F. Supp. 3d at 1190 (quoting *Forrester*, 512 F.3d at 510). After all, any such website user **must** "voluntarily turn[] over" their IP address "in order to direct" the routing used to access the website—it is "inevitable that [a website] learns a [visitor]'s IP address" when they navigate to it. *Id.* at 1189-90. Indeed, for precisely this reason, courts have long held that Internet users do not have any expectation of privacy at all in their IP addresses or the IP addresses of the websites they visit. *Heeger*, 509 F. Supp. 3d at 1190; *Forrester*, 512 F.3d at 510. In fact, it is not just a hypothetical reasonable website user who would have understood this before navigating to Autotrader's website—Plaintiff herself did as well. As the Complaint admits, Plaintiff is a "tester," which means that she visits websites

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

*knowing* that they will collect her IP address (since, again, this is true of all websites)—and *intending* for this to happen, so that she can bring a claim for statutory damages as a result. *See* Compl. ¶ 4.

Because Plaintiff "consensually engaged in [an internet] transaction" and "communicated h[er] IP address as part of" that transaction, the laws prohibiting pen registers and trap and trace devices "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. 2013). For this independent reason, her Section 638.51 claim fails.

## V.    **CONCLUSION**

For the reasons outlined above, Autotrader respectfully requests that the Court sustain its demurrer.

Dated: July 31, 2024

JACOB M. HEATH
THOMAS FU
Orrick, Herrington & Sutcliffe LLP


By: */s/ Jacob M. Heath*
_____
JACOB M. HEATH
Attorneys for Defendant
AUTOTRADER.COM, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

DEFENDANT AUTOTRADER.COM, INC.'S MEMORANDUM
IN SUPPORT OF DEMURRERS TO PLAINTIFF'S COMPLAINT

1  JACOB M. HEATH (SBN 238959)
   jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
4  Facsimile:    +1 650 614 7401

5  THOMAS FU (SBN 325209)
   tfu@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   355 So. Grand Avenue
7  Suite 2700
   Los Angeles, CA 90071
8  Telephone:    +1 213 629 2020
   Facsimile:    +1 213 612 2499
9
   Attorney for Defendant,
10 AUTOTRADER.COM, INC.

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/31/2024 5:29 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk

11

12                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF LOS ANGELES

14

15  REBEKA RODRIGUEZ,                    Case No. 24STCV13149

16            Plaintiff,                 **PROOF OF SERVICE RE:
                                         DEFENDANT AUTOTRADER.COM,
17       v.                              INC.'s DEMURRER TO PLAINTIFF'S
                                         COMPLAINT**
18  AUTOTRADER.COM, INC., a Delaware
    corporation, d/b/a
19  WWW.AUTOTRADER.COM                   Reservation No.: 760391835156
                                         Date: September 23, 2024
20            Defendant.                 Time: 8:30 am
                                         Dept: 37
21                                       Judge: Hon. Gail Killefer
                                         Date Action Filed: May 24, 2024
22

23

24

25

26

27

28

                                  PROOF OF SERVICE

1

**PROOF OF SERVICE**

2

1.   I am over eighteen years of age and not a party to this action. I am employed in the

3

County of Sacramento, State of California. My business address is Orrick, Herrington & Sutcliffe LLP, 400 Capitol Mall, Suite 3000, Sacramento, CA 95814.

4

2.   On July 31, 2024, I served the following document(s):

5

**DEFENDANT AUTOTRADER.COM, INC.'s NOTICE OF DEMURRER AND**

6

**DEMURRER TO PLAINTIFF'S COMPLAINT**

7

**DEFENDANT AUTOTRADER.COM, INC'S MEMORANDUM IN SUPPORT OF**

8

**ITS DEMURRERS TO PLAINTIFF'S COMPLAINT**

9

**DECLARATION OF JACOB M. HEATH IN SUPPORT OF DEFENDANT**
**AUTOTRADER.COM, INC.'s DEMURRER TO PLAINTIFF'S COMPLAINT**

10

3.   ☒  I served the document(s) on the following person(s):

11

Scott J. Ferrell                              Counsel for Plaintiff

12

sferrell@pacifictrialattorneys.com
PACIFIC TRIAL ATTORNEYS

13

4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660

14

15

4.   The documents were served by the following means:

16

☒   **By Electronic Service (E-mail)**. Based on a court order or an agreement of the parties

17

to accept service by electronic transmission, I transmitted the document(s) and an unsigned copy of this declaration to the person(s) at the electronic notification

18

address(es) listed in Item 3 on July 31, 2024.

19

☒    I did not receive, within a reasonable time after the transmission, any electronic
message or other indication that the transmission was unsuccessful.

20

☒    **STATE**: I declare under penalty of perjury under the laws of the State of California that

21

the foregoing is true and correct.

22

23

Dated: July 31, 2024                     /s/ Rachelle Esquivel

24

Rachelle Esquivel

25

26

27

28

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**FILED**
Superior Court of California
County of Los Angeles

**09/10/2024**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ E. Avena _____ Deputy

Electronically Received 09/10/2024 06:07 PM

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| REBEKA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,<br><br>Defendant. | Case No. 24STCV13149<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")**<br><br>Complaint filed: May 24, 2024<br>Trial date: TBA |

## I.    <u>INTRODUCTION</u>

Defendant has secretly deployed spyware at www.autotrader.com (the "Website") that accesses visitors' devices and installs tracking spyware prior to any efforts to obtain consent to do so, and then monitors and reports visitors' online habits ***after*** they leave the Website.

In addition, Defendant secretly allows third parties to intercept and monetize any search terms that unsuspecting visitors enter on the search bar at the Website.  The third parties link particular searches to specific visitors and provide that information to even more third parties for targeted advertising.  For example, after a visitor conducts a search for "depression" on Defendant's website, that individual's social media accounts can be flooded with ads for antidepressant medication, mental health counselors, and pharmacies.

Plaintiff recently visited Defendant's Website and entered confidential search terms into the search bar.  Without Plaintiff's knowledge or consent, Defendant intentionally aided various third parties to intercept the terms and link them to plaintiff in violation of California law.  In addition, without Plaintiff's knowledge or consent, Defendant secretly accessed Plaintiff's device and installed "pen register" and "trap and trace" tracking software in violation of California law.

The harm caused by these multiple intrusions is grave, as summarized by the world's leading cybersecurity firm:

> "*Data is worth money, which is a major reason that your online privacy is under threat.*
>
> *For instance, knowing your browsing habits or search history can deliver big profits to advertisers. If you've been searching for new apartments, your search history could tip an advertiser off to the fact that you're going to be moving home soon — time to start serving you ads for moving services, furniture, DIY stores, and home insurance….*
>
> *The risks are more far-reaching than most people realize because of what might happen to your data next. The development of Big Data means that your browsing history could be analyzed to come up with conclusions that you don't want to be drawn. For example, a woman buying items such as folic acid supplements might not appreciate a marketing agency identifying her as 'pregnant' and targeting her with pregnancy products. [¶]  If she's living with mom and dad or*

1    *hasn't told her partner, she might not be happy to see 'Congratulations on Your Baby!' marketing*

2    *materials arrive in the mail….*

3    *Whenever you visit a website, data is being stored about you — possibly without your consent*

4    *and even without your knowledge. You likely want to know where that data goes and how it's*

5    *used, or you could decide you want to avoid it being collected altogether.*"[1]

6                    **II.    JURISDICTION AND VENUE**

7            1.      Defendant is subject to jurisdiction in this state under Penal Code section 502(j), which

8    provides that a person who accesses a computer from another jurisdiction is deemed to have personally

9    accessed the computer in California.  Plaintiff was in California when Defendant accessed Plaintiff's

10   device and installed tracking code.

11           2.      Defendant is also subject to jurisdiction under California's "long-arm" statute found at

12   California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant

13   is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff is informed

14   and believes and thereon alleges that Defendant generates a minimum of eight percent of revenues from

15   its Website based upon interactions with Californians (including instances in which the Website operates

16   as a "gateway" to sales), such that the website "is the equivalent of a physical store in California."  Since

17   this case involves Defendant's activities in the forum state, California courts can "properly exercise

18   personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston*

19   *v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020).

20           3.      Venue is proper in this County pursuant to California Code of Civil Procedure section

21   394(b).

22                         **III.    PARTIES**

23           4.      Plaintiff is a resident of California.  Plaintiff is also a consumer privacy advocate who

24   works as a "tester" to ensure that companies abide by the privacy obligations imposed by California

25   law.  As an individual who advances important public interests at the risk of vile personal attacks,

26   Plaintiff should be "praised rather than vilified."  *See Murray v. GMAC Mortgage Corp*., 434 F.3d 948,

27   954 (7th Cir. 2006).  Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary

28   ────────────────────
[1]   Excerpted from "**What Is Data Privacy?**", found online at https://usa.kaspersky.com/resource-center/threats/internet-and-individual-privacy-protection (last visited Apr. 18, 2024) (emphasis added).

1   and desirable for committed individuals to bring serial litigation" to enforce and advance consumer

2   protection statutes, and that Courts must not make any impermissible credibility or standing inferences

3   against them.  *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

4       5.      Defendant is an online car buying and selling portal with customers throughout the state

5   of California and this County.

6                              **IV.    FACTUAL ALLEGATIONS**

7   **A.    The Right to Privacy Has Always Been a Legally Protected Interest in the United States.**

8       6.      Since America's founding, privacy has been a legally protected interest at the local, state,

9   and federal levels.  *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (quoting *Spokeo,*

10  *Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("Privacy rights have long been regarded 'as providing a basis

11  for a lawsuit in English or American courts.'"); and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th

12  Cir. 2017) ("Violations of the right to privacy have long been actionable at common law.").

13      7.      More specifically, privacy protections against the disclosure of personal information are

14  embedded in California statutes and at common law.  *See e.g.*, *U.S. Dep't of Justice v. Reporters Comm.*

15  *for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The Ninth Circuit has  repeatedly held that privacy

16  intrusions may constitute "concrete injury" for purposes of Article III standing); *Van Patten v. Vertical*

17  *Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding "concrete injury" where plaintiffs

18  claimed that unsolicited telemarketing calls "invade the privacy and disturb the solitude of their

19  recipients*"); In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020) (finding

20  "concrete injury" where Facebook allegedly tracked users' "personally identifiable browsing history"

21  on third party websites), *cert. denied*, 141 S. Ct. 1684 (2021); *Patel*, 932 F.3d at 1275 (finding "concrete

22  injury" where plaintiffs claimed Facebook's facial-recognition technology violated users' privacy

23  rights).

24      8.      In short, the privacy of personal information is—and has always been—a legally

25  protected interest in many contexts. Thus, a defendant whose acts or practices violate consumer privacy

26  inflicts an actionable "injury" upon an individual.

27  **B.    The California Invasion of Privacy Act and Pen Registers/Trap and Trace Devices**

28

9.      The California Legislature enacted the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, to protect certain privacy rights of California citizens.  The California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  (Cal. Penal Code § 630.)

10.      As relevant here, section 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

11.      A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  (Cal. Penal Code § 638.50(b).)

12.      A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  (Cal. Penal Code § 638.50(b).)

13.      In plain English, a "pen register" is a "device or process" that records *outgoing* information, whereas a "trap and trace device" is a "device or process" that records *incoming* information.  A "pen register" and "trap and trace device" are collectively referred to herein as "Pen-Traps" or "PR/TT".

14.      Historically, law enforcement used "pen registers" to record the numbers of outgoing calls from a particular telephone line, while law enforcement used "trap and trace devices" to record the numbers of incoming calls to that particular telephone line.  As technology advanced, however, courts have expanded the application of those surveillance devices consistent with changes in both federal and state law.

15.      For example, with the passage of the 2001 USA PATRIOT Act, the Pen-Trap definition was expanded to include a device or process to keep up with the advancement and evolution of Internet technologies and communications. In 2015, the California Legislature overwhelmingly adopted this updated and expanded definition without a single vote in opposition.  *See* Stats. 2015, ch. 204, § 1 (A.B.

929) (eff. Jan. 1, 2016); *see also In re Order Authorizing Prospective & Continuous Release of Cell Site Location Recs.*, 31 F. Supp. 3d 889, 898 n.46 (S.D. Tex. 2014) (citing *Susan Freiwald*, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Rev. 949, 982-89 (1996) (describing the evolution of PR/TT technology from mechanical device to computer system)).

16.     For example, if a user sends an email, a "pen register" might record the email address it was sent from, the email address that the email was sent to, and the subject line—because this is the user's *outgoing* information.  On the other hand, if the same user receives an email, a "trap and trace device" might record the email address it was sent from, the email address it was sent to, and the subject line—because this is *incoming* information that is being sent to that same user.

17.     Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies when such a reading would not conflict with the statutory scheme." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (referencing CIPA's "expansive language" when finding software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications.").  This accords with the fact that "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

18.     Individuals may bring an action against the violator of any provision of CIPA—including section 638.51 of the Penal Code—for $5,000 per violation.  (Cal. Penal Code § 637.2(a)(1).)

19.     CIPA provides for a private right of action and imposes civil liability and statutory penalties for the installation of pen register or trap and trace device without a court order.  Cal. Penal Code § 637.2; *see also Greenley*, 684 F. Supp. 3d at 1050-51.  In *Greenley*, the federal district court denied a motion to dismiss in a materially identical case, noting the "expansive language in the California Legislature's chosen decision," *id.* at 1050, which the court held was specific as to the type of data a pen register collects – DRAS – but "vague and inclusive as to the form of the collection tool – 'a device or process.'" *Id.* The *Greenley* court concluded that the language suggests that "courts should

focus less on the form of the data collector and more on the result." *Id.* Having this legal framework in mind, the court applied the plain meaning to the word "process" and concluded that "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" is a process that falls within CIPA's "pen register" definition. *Id.*

**C.    Website Operators Can Deploy Tracking Software to De-Anonymize Otherwise Anonymous Website Visitors and Track and Surveil Such Users.**

20.    Individuals who use devices to connect to an Internet website are typically anonymous and expect to remain anonymous. Some rogue website operators, however, secretly attach a "tracking beacon" to visitor devices that are then used to track and surveil users.

21.    The tracking software will connect fragments of information – such as a unique IP address, user's operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – with connections between them. The tracking software also connects and correlates "undeclared identifiers", such as membership in an email or subscriber list, demographics, purchases/transactions, visits to online news sites, survey results, voter registration, and motor vehicle records.

22.    Using tracking software, a website owner can correlate a grouping of fragments and the connections between them to create a unique digital profile of each individual website visitor. This process is known as "digital fingerprinting."

23.    If a website owner can link a unique digital profile created by digital fingerprinting to a particular individual, the website owner can assemble a detailed picture of a person's private life, including: the online services for which an individual has registered; personal interests based on websites visited; organizational affiliations; where the individual has been physically; a person's political and religious affiliations; individuals with whom they have leanings and with whom they associate; and where they travel, among other things. *See* https://www.priv.gc.ca/en/opc-actions-and-decisions/research/explore-privacy-research/2013/ip_201305/ (last visited Apr. 18, 2024).

24.    Digital fingerprinting of a website's users allows the website owner or its agent to monitor user activity (such as page views, searches, or purchases), de-codes the device used by each

website visitor, and enables a website to identify the location, race, age, preferences, internet browsing history, and ethnicity of each user.  This data is captured and processed for the purpose of identifying the source of electronic communications on the website for consumer identification purposes.

25.     The following graphic shows how a website deploying digital fingerprinting spyware has gathered and assimilated the digital fingerprints of a website visitor to create a unique digital identifier and link it to a previously anonymous individual named Mary Smith, thereby revealing a treasure trove of private information about Mary Smith's private life:



26.     In the above example, identity resolution has been achieved: using spyware materially identical to the technology used by the Defendant, the website owner has gathered and assimilated sufficient digital fingerprints of an anonymous visitor to identify that visitor as Mary Smith, and now knows the following information about her:

(a)  Full name (*Mary Smith*)

(b)  Date of birth (*May 1, 1979*)

(c)  Gender (*female*)

(d)  Home address (*2345 Avenue C, Papillion Nebraska*)

(e)  Marital Status and Family (*Married with two children*)

(f)  E-mail address (Mary.Smith@gmail.com)

(g) Personal Cell Phone: *(111) 123-4567*

(h) Voter Registration Status *(Registered)*

(i) Interests *(Shopping, Cooking, Traveling, Reading, Science)*

(j) Employer *(Karen's Fireside, Inc.)*

(k) Title *(Vice President)*

(l) Work Hours *(Daily 9-5)*

27.    For the preceding reasons, the ability to link a unique digital profile to a specific individual using digital fingerprinting is of great monetary value. Indeed, it has created an entire industry known as "identity resolution." Identity resolution is generally defined as "the ability to recognize an individual person, in real-time, by connecting various identifiers from their digital interactions across devices and touchpoints." *See* https://www.fullcontact.com/identity-resolution/ (last visited Apr. 18, 2024).

28.    One of the means by which a website owner can gather digital fingerprints as part of its identity resolution efforts is by deploying Pen-Traps spyware on its website.

29.    In lay terms, PR/TT spyware captures electronic impulses that identify the originating source of Internet communication by capturing routing, address, or signaling information. One means of doing so is to secretly deploy tracking spyware on a website.

30.    Indeed, PR/TT spyware has caught the attention of the United States Director of National Intelligence, who recently explained that "the advancement of digital technology, including location-tracking and other features of smartphones and other electronic devices, and the advertising-based monetization models that underlie many commercial offerings available on the Internet" pose a threat to the individuals and "raises significant issues related to privacy and civil liberties."

**D.    The PR/TT Spyware Is a "Pen Register".**

31.    To make Defendant's Website load on a user's internet browser, the browser sends an "HTTP request" or "GET" request to Defendant's server where the relevant Website data is stored. In response to the request, Defendant's server sends an "HTTP response" back to the browser with a set of instructions. *See* Figure 1.

**Figure 1:**

32.     The server's instructions include how to properly display the Website—*e.g.*, what images to load, what text should appear, or what music should display.

33.     In addition, the server's instruction cause at least one PR/TT beacon to be installed on a Website user's Internet browser.  The PR/TT beacon then causes the browser to send identifying information—including the user's IP address—to the PR/TT beacon's software provider, which is a software-as-a-service company that develops the PR/TT beacon provided to website owners like Defendant for a fee.  The PR/TT beacon's software provider uses such PR/TT beacon to receive, store, and analyze data collected from website visitors, including visitors of Defendant's Website.  The PR/TT beacon's software provider provides analytics and marketing services to Defendant using the data collected from visitors to the Website when they visited the Website and from when they visited other websites that included the PR/TT beacon.

34.     The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132).  The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).

35.     Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—and the IP address contains the device's geographical location.

36.     Through an IP address, the device's state, city, and zip code can be determined.

37.     As alleged below, Defendant installs the PR/TT beacon on the user's browser, and such PR/TT beacon collects information—users' IP addresses—that identifies the outgoing "routing,

FIRST AMENDED COMPLAINT

addressing, or signaling information" of the user.  Accordingly, Defendant's PR/TT beacon is a "pen register."

38.    The first time a user visits Defendant's Website, the user's browser sends an HTTP request to Defendant's server, and Defendant's server sends the HTTP response.  This response also includes directions to install the PR/TT beacon on the user's browser.  The PR/TT beacon, in turn, instructs the user's browser to send the user's IP address to the PR/TT beacon's developer.

39.    Moreover, the PR/TT beacon's developer stores a beacon or cookie with the user's IP address in the user's browser cache.  When the user subsequently visits Defendant's Website, the PR/TT beacon instructs the user's browser to send the user's IP address through the beacon or cookie.

40.    If the user clears his or her cookies, then the user wipes out the PR/TT beacon from the user's browser cache.  Accordingly, the next time the user visits Defendant's Website, the process begins over again:  (i) Defendant's server installs the PR/TT beacon on the user's browser, (ii) the PR/TT beacon instructs the browser to send to the PR/TT developer the user's IP address, (iii) the PR/TT beacon stores a beacon or cookie in the browser cache, and (iv) the PR/TT beacon's developer will continue to receive the user's IP address on subsequent visits to the Website through the cookie or beacon.

41.    In all cases, the PR/TT beacon receives a user's IP address each and every time a user interacts with the website of one of the PR/TT beacon's developer's clients, including Defendant's Website.

42.    The user's IP address is transmitted to the PR/TT beacon along with the cookie value.

43.    The PR/TT beacon is at least a "process" because it is "software that identifies consumers, gathers data, and correlates that data."  *Greenley*, 684 F. Supp. 3d at 1050.

44.    Further, the PR/TT beacon is a "device" because "in order for software to work, it must be run on some kind of computing device.  It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct."  *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023).

45.    Because the PR/TT beacon captures the outgoing information—the IP address—from visitors to websites, it is a "pen register" for the purposes of section 638.50(b) of the California Penal Code.

**E.    Defendant Secretly Installed Tracking Software on Plaintiff's and Other Users' Browsers Without Prior Consent or a Court Order in Violation of California Law.**

46.    Defendant owns and operates the Website.

47.    When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[2]

48.    Oftentimes, third-party scripts are installed on websites "for advertising purposes." *Id.*

49.    Further, "[i]f the same third-party tracker is present on many sites, it can build a more complete user profile over time." *Id.*

50.    Defendant has incorporated the code of the PR/TT beacon into the code of its Website. Thus, when Plaintiff visited the Website, the Website caused the PR/TT beacon to be installed on Plaintiff's and other users' browsers.

51.    As outlined above, when a user visits the Website, the Website's code—as programmed by Defendant—installs the PR/TT onto the user's browser.

52.    Upon installing the PR/TT on its Website, Defendant uses the PR/TT to collect the IP address of visitors to the Website, which is used by the PR/TT beacon's developer to provide services to Defendant and its other clients, including targeted advertisements and website analytics. Defendant and its partners use the PR/TT beacon to "digitally fingerprint" each visitor.

53.    At no time prior to the installation and use of the PR/TT beacon on Plaintiff's and other users' browsers, or prior to the use of the PR/TT beacon, did Defendant procure Plaintiff's or other users' consent for such conduct. Nor did Defendant obtain a court order to install or use the PR/TT beacon. The PR/TT beacon deploys prior to any efforts to notify visitors or obtain their consent to being tracked.

54.    The specific PR/TT spyware beacons detected on Defendant's Website are identified below, which explains the details of the beacons' deployment and the breadth of the beacons' operation.

---

[2] "Third-party tracking refers to the practice in which a tracker on a website is set by a different website than the one the visitor is currently on. Third-party trackers are snippets of code that are typically installed on multiple websites. They collect and send information about a user's browsing history to other companies, often for advertising purposes. If the same third-party tracker is present on many sites, it can build a more complete user profile over time." https://piwik.pro/glossary/third-party-tracking/ (last visited Apr. 18, 2024). "[C]ompanies may be in trouble using third-party cookies on their websites without complying with privacy laws in a specific jurisdiction…." *Id.*

Plaintiff's investigation of the Website has determined that at least six types of PR/TT spyware are deployed by the Website, *i.e.*, Nexxen, Neustar, LiveRamp / RapLeaf, TreasureData.com, 7SeaSky.com, and ComScore – scorecardresearch.com.

**1.    Data Harvesting Without Consent**

55.    When a user visits the Website, distinct third-party tracking services are detected. These entities, recognized as prominent digital trackers, employ sophisticated methodologies to profile users. These methodologies encompass the acquisition of device IP addresses, synchronizing external identifiers, utilizing TCP/IP header-derived IP addresses, and extracting user agent and device particulars. Additionally, they engage in cookie-sharing practices during request transmissions on the Website.

56.    Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner.  In addition, the Website is designed so that a visitor can navigate through the various webpages of the Website without having to make any cookie-related preferences.  In other words, a visitor to the Website can read the content of various webpages without having to make any cookie-related preferences.  The following analysis of specific spyware detected on the Website reflects the analysis of such computer expert as an exemplar of what occurs during a typical user visit, and is not an attempt to allege that such expert was investigating the Website during Plaintiff's visit to the Website.

**2.    Nexxen**

57.    The Nexxen platform is used for businesses to identify and segment visitors for marketing campaigns.  Companies can use the Nexxen platform to buy or sell this audience data.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



58.     A request is sent to the Nexxen tracking URL adnxs.com.  The X-Proxy-Origin in the response header returned by Nexxen contains the visitor's IP address.  In addition to IP tracking, the Website enables the use of third-party tracking cookies to be stored on the visitor's browser and sent with the request.





**3.     Neustar**

59.    Neustar is an advertising service that website publishers use to generate revenue on their sites.   The Website sends a request to the Neustar tracking pixel when Website visitors view the webpage.  The Website stores tracking cookies for Neustar on the visitor's browser.



### 4.    LiveRamp / RapLeaf

60.    LiveRamp is a data onboarding platform that gathers a company's online and offline customer data, maps the data to individual customer profiles, and uploads enriched audience segments to advertising platforms.  The Website sends a request to the LiveRamp tracking pixel when Website visitors view the webpage.



61.    The Website stores tracking cookies for LiveRamp on the visitor's browser.

| Name | Value | Domain |
|------|-------|--------|
| rlas3 | OhiELfWTEhKcqE6AjveNcKGSQQh3+UyuzHG+ER38dVo= | .rlcdn.com |
| pxrc | CJ2dgrcGEgUI6AcQABIFCOhHEAASBgjuRxDLPRIHCLbqARDjIRI... | .rlcdn.com |

### 5.    TreasureData.com

62.    TreasureData.com is a customer data platform that can capture, analyze, and transform billions of data points collected from visitors to build segmented audiences for targeted marketing campaigns.  The Website tracks pages that the visitor has viewed and stores tracking cookies on the browser for future tracking.

*///*

FIRST AMENDED COMPLAINT



| Name | Value | Domain |
|------|-------|--------|
| _td_global | 2f27507e-0577-4835-800e-a43e0036d658 | .in.treasuredata.com |

## 6. 7SeaSky.com

63. 7SeaSky.com is an unknown tracker. It is a common practice for web tracking services to obfuscate their tracking URLs. Numerous web beacons are sent out containing large encrypted data packets and tracking cookies are stored on the visitor's browser.



| Name | Value | Domain |
|------|-------|--------|
| cg_uuid | c9746281501e2d6c32b29bf9401675d6 | obs.7seasky.com |

## 7. ComScore – scorecardresearch.com

64. ComScore's Proximic is a programmatic targeting suite that allows advertisers to hyper-target audiences and tracks users across desktops, mobiles, and tablets, creating user personas containing information such as demographics, interests, and content consumption habits. The Website sends requests to tracking visitor activity on the Website and stores tracking cookies on the visitor's browser.

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT

| Name | Value | Domain |
|------|-------|--------|
| UID | 177398db92c4bd3091a13a11726000488 | .scorecardresearch.com |
| XID | 177398db92c4bd3091a13a11726000488 | .scorecardresearch.com |

**F.    Defendant's Conduct Constitutes an Invasion of Plaintiff's Privacy.**

65.    The collection of Plaintiff's personally identifying, non-anonymized information through Defendant's installation and use of the PR/TT beacon constitutes an invasion of privacy.

66.    As alleged herein, the PR/TT beacon is designed to analyze Website data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue, all through their surreptitious collection of user data including Plaintiff's data.

67.    Companies such as Defendant share their users' data with the PR/TT beacon's developer. In order for such developer to perform data analysis on user data and to assist companies like Defendant to run targeted advertising campaigns, the PR/TT beacon's developer needs to collect data that identifies a particular user.  This is why the PR/TT beacon's developer collects IP addresses:  it allows the developer to segment users in order to run targeted campaigns and perform data analysis.

68.    In other words, companies like Defendant are collecting users' data and sending it to its PR/TT beacon's developer for a profit including by optimizing its marketing campaigns.

**G.    Plaintiff's PR/TT Experience**

69.    Plaintiff has visited the Website within the applicable statute of limitations period via an Internet-connected computer.  In particular, Plaintiff's visit occurred in March 2024.

70.    When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the PR/TT beacon to be installed on Plaintiff's browser.  Defendant and the PR/TT beacon's developer then used the PR/TT beacon to collect Plaintiff's IP address.  Defendant and the PR/TT

beacon's developer did more than just collect Plaintiff's IP address. Based on the existence of multiple PR/TT beacons and tracking cookies deployed on the Website, Plaintiff is informed and believes, and thereon alleges, that the PR/TT beacon will collect and track a unique IP address, the Website user's operating system name, operating system version number, browser name, browser version number, browser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them. Plaintiff is also informed and believes, and thereon alleges, that Defendant and the PR/TT beacon's developer engaged in the identity resolution tactics described above in order to digitally fingerprint Plaintiff and other users of the Website.

71.    Defendant and the PR/TT beacon's developer used the information collected by the PR/TT beacon to analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and/or advertisers' revenue.

72.    Plaintiff did not provide Plaintiff's prior consent to Defendant to install or use the PR/TT beacon on Plaintiff's browser.

73.    Defendant did not obtain a court order before installing or using the PR/TT beacon.

74.    Plaintiff has, therefore, had Plaintiff's privacy invaded by Defendant's violations of section 638.51(a) of the California Penal Code.

75.    As explained above, Defendant knowingly and intentionally deployed PR/TT spyware to (1) decode and record the routing, addressing, and signaling information transmitted by Plaintiff's electronic device communication; and (2) capture the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication as part of its identity resolution efforts. This conduct constitutes illegal installation of PR/TT spyware in violation of California law.

76.    Defendant did not obtain Plaintiff's knowing and informed consent to the preceding acts, nor did Defendant obtain a court order authorizing it to do so.

**H.    CIPA and Search Terms**

77.    CIPA was enacted in 1967 expressly "to protect the right of privacy of the people of [California." (Cal. Penal Code § 630.) The California Legislature was concerned about "advances in

science and technology" leading to "the development of new devices and techniques for the purpose of eavesdropping upon private communications[, which] … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  (Cal. Penal Code § 630.) The Legislature's intent stated in "broad terms" to protect the right of privacy of the people of California "appears to lie at the heart of virtually all the decisions construing [CIPA]."  *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199 (2021).

78.    As relevant here, section 631(a) proscribes any "person" from "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable, or is being sent from, or received at any place within this state, … or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section…."  (Cal. Penal Code § 631(a).)

79.    Although CIPA was enacted before the dawn of the Internet, "the California Supreme Court regularly reads statutes to apply to new technologies when such a reading would not conflict with the statutory scheme."  *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (referencing CIPA's "expansive language" when finding software was a "pen register"); *id.* at 1046 ("the right is dynamic against new threats to privacy."); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications.").  This accords with the fact that "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."  *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

80.    Multiple federal courts including the Ninth Circuit have recognized that the unlawful collection of search terms of website users by third parties who are not the owners or operators of the website can violate section 631(a) of the California Penal Code.  *Heerde v. Learfield Communications, LLC*, - F. Supp. 3d -, No. 2:23-cv-04493-FLA-MAA, 2024 WL 3573874, at *4-*8 (C.D. Cal. July 19,

1   2024) (Aenlle-Rocha, J.); *R.C. v. Walgreen Co.*, - F. Supp. 3d -, 2024 WL 2263395, at \*16 (C.D. Cal.

2   May 9, 2024) (Bernal, J.) ("URLs which disclose search terms that reveal website users' 'personal

3   interests, queries, and habits' are 'contents' of communications under CIPA") (citing *In re Facebook,*

4   *Inc. Internet Tracking Litig.*, 956 F.3d at 605).

5       81.    Federal courts have recognized that a consumer has a reasonable expectation of privacy

6   in search terms used in search bars on websites.  *Heerde*, 2024 WL 3573874, at \*10 ("Here, Plaintiffs

7   allege plausibly a reasonable expectation of privacy in their search terms.  As pleaded, a reasonable

8   factfinder could determine the Search Terms were sensitive and confidential because they revealed the

9   specific content Plaintiffs consumed.") (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at

10  603 and *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates

11  [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms

12  or the particular document within a website that a person views."); *In re Zynga Privacy Litig.*, 750 F.3d

13  1098, 1108-09 (9th Cir. 2014); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605.

14      82.    The Ninth Circuit has recognized that the federal "Wiretap Act's legislative history

15  evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized

16  third-party or 'an unseen auditor.'"  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608.

17  Numerous federal court decisions construe statutory language in CIPA consistent with the Wiretap Act's

18  construction.  *Licea v. Cinmar, LLC*, 2023 WL 2415592, at \*9 (C.D. Cal. Mar. 7, 2023) ("[C]ourts have

19  looked at cases analyzing the Wiretap Act as informative of section 631(a)."); *In re Vizio*, *Inc., Consumer*

20  *Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.).  "'The analysis for a

21  violation of CIPA is the same as that under the federal Wiretap Act.'"  *Brodsky v. Apple Inc.*, 445 F.

22  Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted).  The California Supreme Court, interpreting

23  section 631(a) of the California Penal Code, held that,  "While one who imparts private information

24  risks the betrayal of his confidence by the other party, a substantial distinction has been recognized

25  between the secondhand repetition of the contents of a conversation and its simultaneous dissemination

26  to an unannounced second auditor, whether that auditor be a person or mechanical device."  *Ribas v.*

27  *Clark*, 38 Cal. 3d 355, 360-61 (1985).  "As one commentator has noted, such secret monitoring denies

28  the speaker an important aspect of privacy of communication—the right to control the nature and extent

of the firsthand dissemination of his statements."  *Id.* at 361 (citation omitted), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021).  "Partly because of this factor, the [CIPA] has been read to require the assent of all parties to a communication before another may listen."  *Ribas*, 38 Cal. 3d at 361.  The Legislature's express objective in enacting section 631 is to protect a person's communications "from a situation where the other person on the other end of the line permits an outsider" to monitor the communication.  *Id.* at 363 (citation omitted).

83.    Individuals may bring an action against the violator of any provision of CIPA—including section 631(a) of the California Penal Code—for $5,000 per violation.  (Cal. Penal Code § 637.2(a)(1).)

**I.    Defendant Secretly Installed Tracking Software on Its Website, Which Allowed a Third Party Search Engine Provider to Obtain the Content of Plaintiff's Communications Intended for Defendant Only Without Prior Consent in Violation of California Law.**

84.    Defendant owns and/or operates the Website.

85.    When companies build their websites, they install or integrate various third-party scripts into the code of the website in order to collect data from users or perform other functions.[3]

86.    The Website uses a search engine developed by a third party (the "Third Party Search Engine Provider") to implement search functions (the "Search Bar"), which allows visitors to type search queries or search terms ("Search Terms") into the Search Bar to search for specific content on the Website.

87.    Search Terms are inherently private.  All search terms are personal in nature, but there is obviously heightened desire for the searches to be kept confidential when the Search Terms themselves contain private information, as plaintiff's search did.

88.    While the Search Bar appears to be under the control of the Website, and the associated searches appear to be limited to the specific site on which the search is run, the Search Bar implemented

---

[3] "Third-party tracking refers to the practice in which a tracker on a website is set by a different website than the one the visitor is currently on. Third-party trackers are snippets of code that are typically installed on multiple websites. They collect and send information about a user's browsing history to other companies, often for advertising purposes. If the same third-party tracker is present on many sites, it can build a more complete user profile over time."  https://piwik.pro/glossary/third-party-tracking/ (last visited July 2024).  "[C]ompanies may be in trouble using third-party cookies on their websites without complying with privacy laws in a specific jurisdiction…."  *Id.*

by Defendant is, in reality and without attribution, actually implementations of the Third Party Search Engine Provider's undisclosed search engine.

89.    The Website does not notify visitors that their Search Terms will be surreptitiously intercepted by Third Party Search Engine Provider's search engine when conducting a search on the Website.  There is no notification that would let visitors know that their searches were being tracked, stored, shared, and sold.

90.    The Website does not provide users with notice that – and no opportunity to consent to – sharing Search Terms with a third party.  The Website does not obtain consent to share visitors' Search Terms with third parties contemporaneously with visitors' search requests.  The Website does not provide users with notice that – and no opportunity to consent to – the interception of the users' Search Terms entered via the Website's Search Bar by tracking tools allowing a third party immediate access to such Search Terms.

91.    Defendant did not disclose to visitors of the Website that third-parties were intercepting the Search Terms for non-search related functions such as advertising, advertising sales and bidding, marketing profiles, and demographic databases.

92.    Defendant purposefully implemented and utilized the Search Bar, which discloses Search Terms to the Third Party Search Engine Provider.  Defendant purposefully implemented and utilized various marketing tools to allow the Third Party Search Engine Provider to intercept and read the Search Terms.

93.    The Search Bar cannot be placed on the Website without steps taken directly by or on behalf of Defendant, *i.e.*, by a website manager.  The Search Bar cannot be placed on the Website without the knowledge and cooperation by Defendant, the owner of the Website.  Here, the Search Bar was employed on the Website and could not have been placed there without purposeful action on the part of Defendant.

94.    Defendant knew that the search engine used on the Website would feed visitors' Search Terms to the tracking tools implemented by Defendant on the Website, and that the Website did not provide notice of or obtain consent as to such practices.

95.     Both Defendant and the Third Party Search Engine Provider benefit from such arrangement by gathering valuable marketing data.

96.     In order for a Third Party Search Engine Provider to perform data analysis on user data and to assist companies like Defendant to run targeted advertising campaigns, the Third Party Search Engine Provider needs to collect data about the Search Terms that Website users type in the Search Bar. Companies like Defendant are collecting users' data and sending it to its search engine software developer for a profit including by optimizing its marketing campaigns.

97.     Plaintiff is informed and believes, and thereon alleges, that the Third Party Search Engine Provider is capable of using the Search Terms for its own advertising purposes and does so to benefit its own products and services separate from the services it renders to Defendant.

98.     Users care about who has their information and have a strong interest in limiting who may or may not access their communications with websites.  Sharing users' communications including Search Terms is directly contrary to the privacy interests of website users, especially where sharing their information with one party will result in a chain reaction of data sharing with third-parties, which users cannot anticipate.. Data sharing policies for a service is an important factor for individuals deciding whether to use a Search Bar on a website.

99.     Plaintiff's investigation of the Website via a computer expert has determined that a user's search terms while using the search box on the Website is harvested and shared with multiple third-party websites that track visitor activity on the Website.  The following analysis of specific sharing of user searches on the Website reflects the analysis of such computer expert as an exemplar of what occurs during a typical user visit, and is not an attempt to allege that such expert was investigating the Website during Plaintiff's visit to the Website.

100.    When searching the Website, the search phrase is added to the URL.  The Website then reports the URL containing the user's search term to several third-party websites that track visitor activity on the Website.

101.    A screenshot of the user search for "Cars for Sale in Los Angeles, CA" on the Website is as follows:



102.    The Website then reports the URL containing the user's search term to Google Analytics.



103.    The Website also reports the URL containing the user's search term to Facebook.



104.    The Website also reports the URL containing the user's search term to 7SeaSky.com.

**FIRST AMENDED COMPLAINT**



105.    The Website also reports the URL containing the user's search term to Pinterest.



106.    The Website also reports the URL containing the user's search term to ScorecardResearch.com.



107.    The Website also reports the URL containing the user's search term to Good Ad Services.

108.    In 2024, Plaintiff visited the Website via an Internet-connected computer. The Website's search function can be used to find a variety of content. Plaintiff utilized the Search Bar to perform a highly confidential search. Defendant was the intended recipient of the Search Terms typed into the Search Bar by Plaintiff.

109.    Defendant re-routed Plaintiff's Search Terms along with those for all users of the Website, meant for Defendant, to the Third Party Search Engine Provider.

110. During Plaintiff's visit, Plaintiff was unaware of the tracking tools intercepting confidential communications with the Website.

111. Plaintiff reasonably believed that communications to the Website were made in confidence.

112. During Plaintiff's visit to the Website, Plaintiff was not provided an opportunity to review or consent to sharing of Plaintiff's information with any third party, or consent to the use of tracking tools while using the Search Bar.

113. During Plaintiff's visit to the Website, Plaintiff was not provided with any notice or given an opportunity to provide consent to the tracking tools intercepting Plaintiff's Search Terms.

114. When Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the search bar to transmit Plaintiff's search terms to an undisclosed third party, which is the developer of the search engine that powers the search bar on the Website.

115. At no time prior to the installation and use of the Website's search bar search engine did Defendant or the undisclosed third-party search engine provider procure Plaintiff's or other users' consent for such conduct.

116. Plaintiff did not provide prior consent to Defendant to install a search bar that secretly transmits Plaintiff's search terms to an undisclosed third party.

117. Defendant did not obtain Plaintiff's knowing and informed consent to the preceding acts.

118. Plaintiff is informed and believes, and thereon alleges that tracking tools have been deployed to analyze Website data in the form of user Search Terms and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and/or advertisers' revenue, all through the surreptitious collection of user data including Plaintiff's data.

119. The Third Party Search Engine Provider is capable of using the search terms user data for its own purposes including sale to marketing agencies and the improvement of its search engine software product.

120. The collection of Plaintiff's search terms through Defendant's installation and use of the search bar on its Website constitutes an invasion of privacy.

121.    Plaintiff has been harmed by Defendant from having [his/her] Search Terms intercepted by the Third Party Search Engine Provider.

122.    Plaintiff suffered an intangible injury to Plaintiff's dignity caused by the invasion of Plaintiff's privacy attributable to Defendant's wrongdoing and the wrongdoing of the aforementioned third parties.  Plaintiff has an interest in maintaining control over Plaintiff's private and sensitive information, such as Search Terms, as well as an interest in preventing their misuse.  Plaintiff suffered the loss of the right to control information concerning Plaintiff due to Defendant's and the actions of third parties who are partners of Defendant in the wrongdoing alleged herein.  The "disclosure of private information" is an intangible harm that is "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC. v. Ramirez*, 594 U.S. 413, 425 (2021).  This is consistent with longstanding Ninth Circuit precedent recognizing that historical privacy rights " 'encompass[] the individual's control of information concerning his or her person' ... the violation of which gives rise to a concrete injury sufficient to confer standing." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)).

123.    Plaintiff has, therefore, had Plaintiff's privacy invaded by Defendant's violations of section 631(a) of the California Penal Code.

## CLASS ACTION ALLEGATIONS

124.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who visited the Website within the statute of limitations period and whose rights were violated as described above.**

125.    NUMEROSITY: Plaintiff does not know the number of Class members but believes the number to be in the tens of thousands, at minimum. The exact identities of Class members may be ascertained by the records maintained by Defendant.

126.    COMMONALITY: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined

without reference to the individual circumstances of any Class member, include but are not limited to the following:

    a.  Whether Defendant engaged in the wrongful conduct described above;

    b.  Whether Defendant violated section 638.51 of the California Penal Code;

    c.  Whether Defendant violated section 631(a) of the California Penal Code;

    d.  Whether Defendant's PR/TT beacon constitutes either a pen register or trap-and-trace device within the meaning of section 638.51 of the California Penal Code.

127.  <u>TYPICALITY</u>: As a person located in California who visited and used the Website, who was harmed by the violations of California statutory law impairing her right to control information concerning Plaintiff, Plaintiff is asserting claims that are typical of the Class.

128.  <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

129.  <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## V.  <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION

### CALIFORNIA INVASION OF PRIVACY ACT

### PENAL CODE SECTION 638.51(a)

130.  Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

131.  Plaintiff brings this cause of action individually against Defendant.

132.  Section 638.51 of the Penal Code provides that it is illegal for any "person' to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Cal. Penal Code § 638.51(a).)

133.    A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Cal. Penal Code § 638.50(b).)

134.    The PR/TT beacon is a "pen register" because it is a "device or process" that "capture[d]" the "routing, addressing, or signaling information"—the IP address—from the electronic communications transmitted by Plaintiff's computer or smartphone. (Cal. Penal Code § 638.50(b).)

135.    At all relevant times, Defendant knowingly installed the PR/TT beacon—which is a pen register—on Plaintiff's browser, and used the PR/TT beacon to collect Plaintiff's IP address, and track Plaintiff.

136.    The PR/TT beacon does not collect the content of Plaintiff's electronic communications with the Website. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (quotation omitted).

137.    Plaintiff did not provide Plaintiff's prior consent to Defendant's installation or use of the PR/TT beacon.

138.    Defendant did not obtain a court order to install or use the PR/TT beacon.

139.    Pursuant to section 637.2 of the California Penal Code, Plaintiff has been injured by Defendant's violation of section 638.51(a) of the California Penal Code, and seeks statutory damages of $5,000 for Defendant's violation of section 638.51(a). *See* Penal Code § 637.2(a)(1).

140.    By knowingly violating a criminal statute and accessing Plaintiff's browser to install tracking software without Plaintiff's prior consent, Defendant acted with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294.

## SECOND CAUSE OF ACTION

## CALIFORNIA INVASION OF PRIVACY ACT

## PENAL CODE SECTION 631(a)

141.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

142.    Plaintiff brings this cause of action individually against Defendant.

143.    The Website, including the tracking tools placed upon them, are "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (stating that "***it is undeniable that a computer may qualify as a 'machine***'" within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 956 F.3d 589 (9th Cir. 2020).

144.    Within the applicable statute of limitations, Plaintiff used the search function, which is the Search Bar, on the Website to communicate Search Terms to Defendant, with the expectation of receiving search results provided by Defendant.

145.    Within the applicable statute of limitations, one or more third parties other than Defendant, without the consent of all parties to the communication, and in an unauthorized manner, willfully read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff contemporaneous with the communications transit through or passing over any wire, line or cable or with the communications sending from or being received at any place within California.

146.    The information collected by the third party or third parties was not for the sole benefit of Defendant.

147.    Within the applicable statute of limitations, Defendant aided, agreed with, employed, and conspired with such third party or third parties to implement the tracking tools, to violate section 631(a) of the California Penal Code, and to accomplish the wrongful conduct alleged herein.

148.    Plaintiff did not authorize or consent to the tracking, interception, and collection of any of Plaintiff's electronic communications.

149.    The violation of section 631(a) of the California Penal Code constitutes an invasion of privacy.

150.    Pursuant to section 637.2 of the California Penal Code, Plaintiff has been injured by Defendant's violation of section 631(a) of the California Penal Code, and seeks statutory damages of $5,000 for Defendant's violation of section 631(a).  *See* Cal. Penal Code § 637.2(a)(1).

151.    By knowingly violating a criminal statute without Plaintiff's prior consent and by failing to remediate the violation upon notification of such violation by Plaintiff, Defendant acted intentionally

with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.    An order enjoining Defendant from continuing to violate California statutory law as challenged herein;

b.    For statutory damages, punitive damages, reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5, and costs of suit; and

c.    For any and all other relief at law or equity that may be appropriate and necessary.

Dated:  September 10, 2024                    PACIFIC TRIAL ATTORNEYS, APC

                                                              By:_____

                                                              Scott. J. Ferrell
                                                              Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On September 10, 2024, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐    (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY FEDERAL EXPRESS OVERNIGHT)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY HAND DELIVERY)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addressee(s) designated.

☒    (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via USA Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 10, 2024, at Newport Beach, California.

Mandy K. Jung

**SERVICE LIST**

Jacob M. Heath, Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Email: jheath@orrick.com

Thomas Fu, Esq.
Orrick, Herrington & Sutcliffe LLP
355 So. Grand Avenue
Suite 2700
Los Angeles, CA 90071
Email: tfu@orrick.com

Attorneys for Defendant
AUTOTRADER.COM, INC.

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|

NAME: Scott J. Ferrell       STATE BAR NUMBER: 202091

FIRM NAME: Pacific Trial Attorneys, APC

STREET ADDRESS: 4100 Newport Place Drive, Suite 800

CITY: Newport Beach   STATE: CA   ZIP CODE: 92660

TELEPHONE NO.: (949) 706-6464   FAX NO.: (949) 706-6469

EMAIL ADDRESS: sferrell@pacifictrialattorneys.com

ATTORNEY FOR (name): Plaintiff Rebeka Rodriguez

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

STREET ADDRESS: 111 N. Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Stanley Mosk Courthouse

**Electronically FILED by Superior Court of California, County of Los Angeles 9/18/2024 11:36 AM David W. Slayton, Executive Officer/Clerk of Court, By A. Lopez, Deputy Clerk**

PLAINTIFF/PETITIONER: Rebeka Rodriguez

DEFENDANT/RESPONDENT: Autotrader.com, Inc.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):  [X] UNLIMITED CASE (Amount demanded exceeds $35,000)   [ ] LIMITED CASE (Amount demanded is $35,000 or less) | 24STCV13149 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: October 3, 2024   Time: 8:30 A.M.   Dept.: 37   Div.:   Room:

Address of court (if different from the address above):

[X]  **Notice of Intent to Appear by Telephone, by** (name): Roger E. Borg

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. [X] This statement is submitted by party (name): Rebeka Rodriguez
   b. [ ] This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date): April 30, 2024
   b. [ ] The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. [X] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served (specify names and explain why not):
      (2) [ ] have been served but have not appeared and have not been dismissed (specify names):
      (3) [ ] have had a default entered against them (specify names):
   c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in [X] complaint   [ ] cross-complaint   (Describe, including causes of action):
      This complaint states a cause of action for Violation of California Invasion of Privacy Act.

Page 1 of 5

**CM-110**

| | | |
|---|---|---|
| PLAINTIFF/PETITIONER: Rebeka Rodriguez | | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Autotrader.com, Inc. | | 24STCV13149 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

Without Plaintiff's knowledge or consent, Defendant intentionally aided various third parties to intercept
See Attachment 4b

☒  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☒ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐  The trial has been set for *(date):*

b.  ☒  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒  days *(specify number):* 3-5 days

b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☒ by the following:

a.  Attorney:  David W. Reid and Victoria Knowles

b.  Firm:  Pacific Trial Attorneys

c.  Address:  4100 Newport Place Dr., Ste. 800, Newport Beach, CA 92660

d.  Telephone number:  (949) 706-6464     f.  Fax number:  (949) 706-6469

e.  Email address:  sferrell@pacifictrialattorneys.com     g.  Party represented:  Plaintiff

☐  Additional representation is described in Attachment 8.

9.  **Preference**

☐  This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| PLAINTIFF/PETITIONER: Rebeka Rodriguez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Autotrader.com, Inc. | 24STCV13149 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | [X] | [X] Mediation session not yet scheduled<br>[ ] Mediation session scheduled for *(date)*:<br>[ ] Agreed to complete mediation by *(date)*:<br>[ ] Mediation completed on *(date)*: |
| (2) Settlement conference | [X] | [X] Settlement conference not yet scheduled<br>[ ] Settlement conference scheduled for *(date)*:<br>[ ] Agreed to complete settlement conference by *(date)*:<br>[ ] Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | [ ] | [ ] Neutral evaluation not yet scheduled<br>[ ] Neutral evaluation scheduled for *(date)*:<br>[ ] Agreed to complete neutral evaluation by *(date)*:<br>[ ] Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | [ ] | [ ] Judicial arbitration not yet scheduled<br>[ ] Judicial arbitration scheduled for *(date)*:<br>[ ] Agreed to complete judicial arbitration by *(date)*:<br>[ ] Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | [ ] | [ ] Private arbitration not yet scheduled<br>[ ] Private arbitration scheduled for *(date)*:<br>[ ] Agreed to complete private arbitration by *(date)*:<br>[ ] Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | [ ] | [ ] ADR session not yet scheduled<br>[ ] ADR session scheduled for *(date)*:<br>[ ] Agreed to complete ADR session by *(date)*:<br>[ ] ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Rebeka Rodriguez<br>DEFENDANT/RESPONDENT: Autotrader.com, Inc. | 24STCV13149 |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes  ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case  *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy  ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to  ☐ consolidate  ☐ coordinate  will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial  *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated  *(specify):*

**CASE MANAGEMENT STATEMENT**

*LexisNexis® Automated California Judicial Council Forms*

**CM-110**

| PLAINTIFF/PETITIONER: Rebeka Rodriguez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Autotrader.com, Inc. | 24STCV13149 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

The case is not at issue. Plaintiff filed a First Amended Complaint on September 10, 2024, and Defendant's responsive pleading is due on or before October 14, 2024. Plaintiff requests a continuance of the CMC.

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: September 18, 2024

| Scott J. Ferrell | ► _[signature]_ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ► |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

*LexisNexis® Automated California Judicial Council Forms*

# Attachment

Attachment 4b

the terms and link them to plaintiff in violation of California law. Plaintiff seeks statutory damages, punitive damages, reasonable attorneys' fees and any and all other relief that may be appropriate.

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On September 18, 2024, I served the foregoing document described as **CASE MANAGEMENT STATEMENT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐    (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY OVERNIGHT FEDERAL EXPRESS)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY HAND DELIVERY)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addresse(s) designated.

☐    (BY ELECTRONIC SERVICE)   I am causing the document(s) to be served by email from the electronic notification address of _____@pacifictrialattorneys.com the document described above on the date shown below to the email addresses of the persons listed in the attached service list.

☒    (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list. I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 18, 2024, at Newport Beach, California.

_____
Melojean Greenfield

**SERVICE LIST**

1

2

Jacob M. Heath
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401
Email: jheath@orrick.com

Attorneys for Defendant,
AUTOTRADER.COM, INC.

3

4

5

6

7

Thomas Fu
ORRICK, HERRINGTON &
SUTCLIFFE LLP
355 So. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499
Email: tfu@orrick.com

Attorneys for Defendant,
AUTOTRADER.COM, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | PACIFIC TRIAL ATTORNEYS |
| | A Professional Corporation |
| 2 | Scott J. Ferrell, Bar No. 202091 |
| | sferrell@pacifictrialattorneys.com |
| 3 | Victoria C. Knowles, Bar No. 277231 |
| | vknowles@pacifictrialattorneys.com |
| 4 | 4100 Newport Place Drive, Ste. 800 |
| | Newport Beach, CA 92660 |
| 5 | Tel: (949) 706-6464 |
| | Fax: (949) 706-6469 |
| 6 | |
| | Attorneys for Plaintiff |
| 7 | |

**Electronically FILED by
Superior Court of California,
County of Los Angeles
9/18/2024 11:36 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk**

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF LOS ANGELES**

10

| | | |
|---|---|---|
| 11 | REBEKA RODRIGUEZ, | Case No. 24STCV13149 |
| 12 | Plaintiff, | ASSIGNED FOR ALL PURPOSES TO THE HONORABLE GAIL KILLEFER, DEPT. 37 |
| 13 | v. | |
| 14 | AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM, | **NOTICE OF CASE MANAGEMENT CONFERENCE** |
| 15 | | |
| 16 | Defendants. | Complaint Filed: May 24, 2024 Trial Date:  Not Assigned |

17

18

19

20

21

22

23

24

25

26

27

28

1    TO ALL PARTIES TO THIS ACTION AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that the court has scheduled a Case Management Conference for

3    October 3, 2024, at 8:30 a.m., in Department 37, of the above-entitled court located at 111 North Hill

4    Street, Los Angeles, CA 90012.

5    A true and correct copy of the Court's Notice of Case Management Conference is attached hereto

6    as Exhibit A.

7

8    Dated: September 18, 2024                    PACIFIC TRIAL ATTORNEYS, APC

9

10                                               By: _____

11                                               Scott. J. Ferrell
                                                 Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

**FILED**
Superior Court of California
County of Los Angeles

05/29/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ E. Avena _____ Deputy

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Rebeka Rodriguez

DEFENDANT:
Autotrader.com, Inc.

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
24STCV13149

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 10/03/2024 | Time: 8:30 AM | Dept.: 37 |

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 05/29/2024

_____
Judicial Officer
Gail Killefer / Judge

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Scott J. Ferrell
4100 Newport Place Drive
Suite 800
Newport Beach, CA 92660

David W. Slayton, Executive Officer / Clerk of Court

By E. Avena _____
Deputy Clerk

Dated: 05/29/2024

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place, Suite 800, Newport Beach, CA 92660.

On September 18, 2024, I served the foregoing document described as **NOTICE OF CASE MANAGEMENT CONFERENCE** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐      (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐      (BY OVERNIGHT FEDERAL EXPRESS)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐      (BY HAND DELIVERY)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addresse(s) designated.

☐      (BY ELECTRONIC SERVICE)  I am causing the document(s) to be served by email from the electronic notification address of mgreenfield@pacifictrialattorneys.com the document described above on the date shown below to the email addresses of the persons listed in the attached service list.

☒      (BY ELECTRONIC SERVICE via USA Legal) I am electronically serving the document described above and a copy of this declaration to the person, on the date shown below, to the email addresses of the persons listed in the attached service list.  I am readily familiar with the business' practice for filing electronically, and that the document would be electronically served the same day in the ordinary course of business following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 18, 2024, at Newport Beach, California.

_____
Melojean Greenfield

1
2

**SERVICE LIST**

3   Jacob M. Heath                          Attorneys for Defendant,
    ORRICK, HERRINGTON &                    AUTOTRADER.COM, INC.
4   SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA 94025-1015
    Telephone: +1 650 614 7400
6   Facsimile: +1 650 614 7401
    Email: jheath@orrick.com
7
    Thomas Fu                              Attorneys for Defendant,
8   ORRICK, HERRINGTON &                   AUTOTRADER.COM, INC.
    SUTCLIFFE LLP
9   355 So. Grand Avenue, Suite 2700
    Los Angeles, CA 90071
10  Telephone: +1 213 629 2020
    Facsimile: +1 213 612 2499
11  Email: tfu@orrick.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY**  STATE BAR NUMBER: 238959

NAME: Jacob M. Heath

FIRM NAME: Orrick, Herrington & Sutcliffe LLP

STREET ADDRESS: 1000 Marsh Road

CITY: Menlo Park    STATE: CA    ZIP CODE: 94025-1015

TELEPHONE NO.: (650) 614-7400    FAX NO.: (650) 614-7401

EMAIL ADDRESS: jheath@orrick.com

ATTORNEY FOR (name): Autotrader.com, Inc.

*FOR COURT USE ONLY*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
9/19/2024 2:54 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

STREET ADDRESS: 111 N. Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Rebeka Rodriguez

DEFENDANT/RESPONDENT: Autotrader.com, Inc.

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* [x] **UNLIMITED CASE** (Amount demanded exceeds $35,000)    [ ] **LIMITED CASE** (Amount demanded is $35,000 or less) | 24STCV13149 |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: October 3, 2024    Time: 8:30 A.M.    Dept.: 37    Div.:    Room:

Address of court *(if different from the address above):*

[x] **Notice of Intent to Appear by Telephone,** by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [x] This statement is submitted by party *(name):* Autotrader.com, Inc.
   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*

      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*

      (3) [ ] have had a default entered against them *(specify names):*

   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in [x] complaint    [ ] cross-complaint    *(Describe, including causes of action):*
      Plaintiff alleges that Defendant's operation of its website violates Cal. Penal Code sec. 638.51(a) (first cause of action) and sec. 631(a) (second cause of action).

Page 1 of 5

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2024] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

**CM-110**

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER:  Rebeka Rodriguez | |
| DEFENDANT/RESPONDENT:  Autotrader.com, Inc. | 24STCV13149 |

4.  b.  Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*
Plaintiff, representing a putative class, alleges that Defendant's website used third-party software that constitutes an unlawful "pen register" in violation of Cal. Penal Code sec. 638.51(a) and unlawfully intercepts user communications in violation of Cal. Penal Code sec. 631(a). Plaintiff seeks statutory damages, punitive damages, reasonable attorneys' fees and any and all other relief that may be appropriate.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**

The party or parties request   ☒ a jury trial   ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**

a.  ☐ The trial has been set for *(date):*

b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a.  ☒ days *(specify number):* 3-5

b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial   ☒ by the attorney or party listed in the caption   ☐ by the following:

a.  Attorney:

b.  Firm:

c.  Address:

d.  Telephone number:   f.  Fax number:

e.  Email address:   g.  Party represented:

☐ Additional representation is described in Attachment 8.

9.  **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

   (1)  For parties represented by counsel: Counsel ☐ has   ☒ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

   (2)  For self-represented parties: Party ☐ has   ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER:  Rebeka Rodriguez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Autotrader.com, Inc. | 24STCV13149 |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for  *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for  *(date):*<br>☐ Agreed to complete neutral evaluation by  *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for  *(date):*<br>☐ Agreed to complete judicial arbitration by  *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for  *(date):*<br>☐ Agreed to complete private arbitration by  *(date):*<br>☐ Private arbitration completed on  *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for  *(date):*<br>☐ Agreed to complete ADR session by  *(date):*<br>☐ ADR completed on  *(date):* |

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER:  Rebeka Rodriguez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Autotrader.com, Inc. | 24STCV13149 |

**11. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

     (1) Name of case:

     (2) Name of court:

     (3) Case number:

     (4) Status:

     ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

   ☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Defendant expects to file demurrers to the First Amended Complaint.

**16. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. January 1, 2024]  **CASE MANAGEMENT STATEMENT**  Page 4 of 5

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Rebeka Rodriguez | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Autotrader.com, Inc. | 24STCV13149 |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*
Plaintiff filed her First Amended Complaint on September 10, 2024.  Defendant's responsive pleading is due on or before October 14, 2024.  Defendant plans to file demurrers and so requests a continuance of the CMC.

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
The parties did not have time to meet and confer before submitting case management statements.

   b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:  September 19, 2024

| | |
|---|---|
| Jacob M. Heath | ▶ /s/ Jacob M. Heath |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ▶ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached.

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]  [ Save this form ]  [ Clear this form ]

## PROOF OF SERVICE

1.    I am over eighteen years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is Orrick, Herrington & Sutcliffe LLP, 355 South Grand Avenue, Suite 2700, Los Angeles, CA 90071.

2.    On September 19, 2024, I served the following document(s):

**CASE MANAGEMENT STATEMENT**

3.    ☒  I served the document(s) on the following person(s):

Scott J. Ferrell                                              Counsel for Plaintiff
sferrell@pacifictrialattorneys.com
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660

☐  The names, addresses, and other applicable information about the person served is included in the attached Service List.

4.    The documents were served by the following means:

☒    **By Electronic Service (E-mail)**. Based on a court order or an agreement of the parties to accept service by electronic transmission, I transmitted the document(s) and an unsigned copy of this declaration to the person(s) at the electronic notification address(es) listed in Item 3 on September 19, 2024, before 5:00 p.m. PST.

   ☒    I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒    **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 19, 2024                    Signature: */s/ Mallory McCarty*

                                                         Type or Print Name: Mallory McCarty

1   JACOB M. HEATH (SBN 238959)
     jheath@orrick.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/19/2024 2:07 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk

2   ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road

3   Menlo Park, CA  94025-1015
     Telephone:    +1 650 614 7400

4   Facsimile:    +1 650 614 7401

5   THOMAS FU (SBN 325209)
     tfu@orrick.com

6   ORRICK, HERRINGTON & SUTCLIFFE LLP
     355 So. Grand Avenue

7   Suite 2700
     Los Angeles, CA 90071

8   Telephone:    +1 213 629 2020
     Facsimile:    +1 213 612 2499

9

10  Attorneys for Defendant,
     AUTOTRADER.COM, INC.

11

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                  COUNTY OF LOS ANGELES

14

15  REBEKA RODRIGUEZ,           Case No. 24STCV13149

16           Plaintiff,

17      v.                     **NOTICE OF WITHDRAWAL OF**
                               **DEFENDANT AUTOTRADER.COM,**

18  AUTOTRADER.COM, INC., a Delaware  **INC'S DEMURRERS TO PLAINTIFF'S**
     corporation, d/b/a                 **COMPLAINT**

19  WWW.AUTOTRADER.COM

20           Defendant.        Date: September 23, 2024
                                Time: 8:30 am

21                                  Dept: 37
                                Judge: Hon. Gail Killefer

22                                  Date Action Filed: May 24, 2024

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT AUTOTRADER.COM, INC.'S NOTICE OF WITHDRAWAL OF DEMURRERS

1     **TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

2     Defendant Autotrader.com, Inc. ("Autotrader") demurred to Plaintiff's Complaint on July

3 31, 2024 (the "Demurrers"), which is currently scheduled to be heard at 8:30 a.m. on September

4 23, 2024, in Department 37 of the above-captioned court, the Hon. Gail Killefer presiding.

5     On September 10, 2024, Plaintiff filed a First Amended Complaint ("FAC"). The filing of

6 the FAC moots the Demurrers. *State Compensation Ins. Fund v. Superior Court*, 184 Cal. App. 4th

7 1124, 1130 (2010) ("[T]he filing of an amended complaint moots a motion directed to a prior

8 complaint.").

9     Autotrader accordingly hereby **WITHDRAWS** the Demurrers without prejudice to

10 Autotrader addressing the pleading deficiencies in the FAC via further demurrers or motions to

11 strike, and respectfully requests that the Demurrers set for hearing on September 23, 2024 be taken

12 **OFF CALENDAR**.

13

14 Dated: September 19, 2024            JACOB M. HEATH

15                                   THOMAS FU

                                  Orrick, Herrington & Sutcliffe LLP

16

17                            By: */s/ Jacob M. Heath*

18                                 JACOB M. HEATH

                                  Attorneys for Defendant

19                                 AUTOTRADER.COM, INC.

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

1.    I am over eighteen years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is Orrick, Herrington & Sutcliffe LLP, 355 South Grand Avenue, Suite 2700, Los Angeles, CA 90071.

3

4

2.    On September 19, 2024, I served the following document(s):

5

**NOTICE OF WITHDRAWAL OF DEFENDANT AUTOTRADER.COM, INC'S DEMURRERS TO PLAINTIFF'S COMPLAINT**

6

7

3.    ☒  I served the document(s) on the following person(s):

8

Scott J. Ferrell                                    Counsel for Plaintiff
sferrell@pacifictrialattorneys.com
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660

9

10

11

12

☐  The names, addresses, and other applicable information about the person served is included in the attached Service List.

13

14

4.    The documents were served by the following means:

15

☒  **By Electronic Service (E-mail)**. Based on a court order or an agreement of the parties to accept service by electronic transmission, I transmitted the document(s) and an unsigned copy of this declaration to the person(s) at the electronic notification address(es) listed in Item 3 on September 19, 2024, before 5:00 p.m. PST.

16

17

☒    I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19

☒    **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20

Dated: September 19, 2024                    Signature: _/s/ Mallory McCarty_

21

Type or Print Name: Mallory McCarty

22

23

24

25

26

27

28

JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

**Electronically FILED by
Superior Court of California,
County of Los Angeles
10/02/2024 7:23 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Kim, Deputy Clerk**

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 So. Grand Avenue
Suite 2700
Los Angeles, CA 90071
Telephone:    +1 213 629 2020
Facsimile:    +1 213 612 2499

Attorneys for Defendant,
AUTOTRADER.COM, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

|  |  |
|---|---|
| REBEKA RODRIGUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>AUTOTRADER.COM, INC., a Delaware<br>corporation, d/b/a<br>WWW.AUTOTRADER.COM<br><br>        Defendant. | Case No. 24STCV13149<br><br>**NOTICE OF DEPOSIT OF JURY FEES**<br><br>Judge: Hon. Gail Killefer<br>Date Action Filed: May 24, 2024 |

1    **TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

2         PLEASE TAKE NOTICE that Defendant Autotrader.com, Inc hereby submits a jury fee

3    deposit in the amount of $150.00 in the above-entitled action pursuant to California Code of Civil

4    Procedure Section 631(b).

5

6    Dated: October 2, 2024                           JACOB M. HEATH

7                                                     THOMAS FU
                                                      Orrick, Herrington & Sutcliffe LLP

8

9                                                     By: */s/ Jacob M. Heath*

10                                                         JACOB M. HEATH
                                                           Attorneys for Defendant

11                                                      AUTOTRADER.COM, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT AUTOTRADER.COM, INC.'S NOTICE OF DEPOSIT OF JURY FEES

## PROOF OF SERVICE

1.   I am over eighteen years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is Orrick, Herrington & Sutcliffe LLP, 355 South Grand Avenue, Suite 2700, Los Angeles, CA 90071.

2.   On October 2, 2024, I served the following document(s):

**NOTICE OF DEPOSIT OF JURY FEES**

3.   ☒  I served the document(s) on the following person(s):

Scott J. Ferrell                                    Counsel for Plaintiff
sferrell@pacifictrialattorneys.com
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660

☐  The names, addresses, and other applicable information about the person served is included in the attached Service List.

4.   The documents were served by the following means:

☒  **By Electronic Service (E-mail)**. Based on a court order or an agreement of the parties to accept service by electronic transmission, I transmitted the document(s) and an unsigned copy of this declaration to the person(s) at the electronic notification address(es) listed in Item 3 on October 2, 2024.

   ☒   I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒   **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: October 2, 2024                    Signature: /s/ Rachelle Esquivel

                                          Type or Print Name: Rachelle Esquivel

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 37

**24STCV13149**                                                    October 3, 2024
**REBEKA RODRIGUEZ vs AUTOTRADER.COM, INC., A**                            8:30 AM
**DELAWARE CORPORATION**


Judge: Honorable Gail Killefer              CSR: None
Judicial Assistant: J. Jones                ERM: None
Courtroom Assistant: E. Avena               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Victoria C. Knowles for Scott J. Ferrell via LACourtConnect

For Defendant(s): Jacob M. Heath via LACourtConnect


**NATURE OF PROCEEDINGS:** Case Management Conference

The matter is called for hearing.

Pursuant to oral stipulation, the Case Management Conference scheduled for 10/03/2024 is continued to 12/05/2024 at 08:30 AM in Department 37 at Stanley Mosk Courthouse.

Plaintiff to give notice.