1   JACOB M. HEATH (SBN 238959)
    jheath@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
3   Menlo Park, CA 94025-1015
    Telephone:  +1 650 614 7400
4   Facsimile:  +1 650 614 7401

5   THOMAS FU (SBN 325209)
    tfu@orrick.com
6   ORRICK, HERRINGTON & SUTCLIFFE LLP
    355 So. Grand Avenue
7   Suite 2700
    Los Angeles, CA 90071
8   Telephone:  +1 213 629 2020
    Facsimile:  +1 213 612 2499
9
    Attorneys for Defendant,
10  AUTOTRADER.COM, INC.

11                      UNITED STATES DISTRICT COURT

12                    CENTRAL DISTRICT OF CALIFORNIA

13

14

15  REBEKA RODRIGUEZ,                    Case No. 2:24-cv-08735-RGK-JC

16              Plaintiff,               **AUTOTRADER.COM, INC's
                                         MOTION TO DISMISS
17       v.                              PLAINTIFF'S AMENDED CLASS
                                         ACTION COMPLAINT**
18  AUTOTRADER.COM, INC., a
    Delaware corporation, d/b/a          Hearing Date:  December 16, 2024
19  WWW.AUTOTRADER.COM,
                                         Time:  9:00 a.m.
20              Defendant.
                                         Dept:  Courtroom 850
21
                                         Judge:  Hon. R. Gary Klausner
22

23

24        <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

25       **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

26       PLEASE TAKE NOTICE that on December 16, 2024, at 9:00 a.m., or as soon

27  thereafter as is available, in the courtroom of the Honorable R. Gary Klausner,

28  located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th

Floor, Defendant Autotrader.com, Inc. d/b/a www.autotrader.com ("Autotrader") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims asserted against it in Plaintiff's Amended Class Action Complaint (ECF 1-1 at 68-98) ("FAC"), with prejudice, on the grounds that Plaintiff lacks standing to bring the FAC's claim under Cal. Penal Code § 631(a) and the FAC's allegations fail to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the complete files and records in this action, any reply papers Autotrader may file, any matters of which the Court may take judicial notice, any such materials or arguments as may be presented to the Court in conjunction with a hearing on this Motion, and any other matter that the Court may properly consider.

This Motion is brought following a conference between counsel pursuant to L.R. 7-3. On November 11, 2024, the parties met and conferred regarding the FAC, discussed the grounds for the Motion, but were unable to reach resolution of any issue.

Dated:        November 18, 2024            JACOB M. HEATH
                                           THOMAS K. FU
                                           Orrick, Herrington & Sutcliffe LLP


                                           By: _/s/ Jacob M. Heath_
                                                JACOB M. HEATH
                                             Attorneys for Defendant
                                           AUTOTRADER.COM, INC.

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................ 2

III.  LEGAL STANDARD ............................................................................... 4

IV.  LEGAL ARGUMENT ............................................................................. 5

    A.    The FAC Fails To State a Claim Under Cal. Penal Code
§ 638.51(a). ..................................................................................... 5

        1.    Merely collecting IP addresses, as required to operate a
website, does not constitute an illegal pen register or trap
and trace device. .................................................................. 5

        2.    The only consent required for "installation" of software is
Autotrader's, which it concededly provided. ...................... 7

        3.    Plaintiff consented to the recording of her IP address in any
event. .................................................................................... 8

    B.    Plaintiff Lacks Standing To Sue Under Cal. Penal Code § 631(a) ........ 9

    C.    The FAC Fails To State a Claim Under Cal. Penal Code § 631(a). .... 10

        1.    Plaintiff fails to plead that any service provider fell outside
CIPA's party exception. ..................................................... 11

        2.    Plaintiff fails to plead that any service provider intercepted
her search bar communications "in transit." ..................... 14

        3.    In any event, Plaintiff consented to the alleged involvement
of third parties. .................................................................. 16

    D.    The Court Should Dismiss Plaintiff's Lawsuit With Prejudice. .......... 16

V.  CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................4, 10, 13, 14

*Byars v. Hot Topic, Inc.*,
   656 F. Supp. 3d 1051 (C.D. Cal. 2023)..................................1, 2, 4, 12

*Byars v. Sterling Jewelers, Inc.*,
   2023 WL 2996686 (C.D. Cal. 2023) ...........................................9, 10

*Capitol Recs. Inc. v. Thomas-Rasset*,
   2009 WL 1664468 (D. Minn. 2009).....................................................5

*Cody v. Ring LLC*,
   718 F. Supp. 3d 993 (N.D. Cal. 2024) ...............................................15

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................11

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021)...............................................11

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................7

*Guardia v. CitiMortgage*,
   2021 WL 3811028 (C.D. Cal. 2021) ..................................................16

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020)......................................2, 3, 9

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   886 F. Supp. 2d 888 (N.D. Ill. 2012)...................................................5

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ............................................................14

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023)..................................11, 14, 15

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

*Licea v. Vitacost.com, Inc.*,
  683 F. Supp. 3d 1118 (S.D. Cal. 2023) ....................................................... 11, 12, 13

*Malibu Media, LLC v. Pontello*,
  2013 WL 12180709 (E.D. Mich. 2013) ............................................................... 9

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. 2023) ................................................................... 15

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................ 16

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................... 14

*Pena v. GameStop, Inc.*,
  670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) ..................................................... 5

*Rodriguez v. Ford Motor Co.*,
  722 F. Supp. 3d 1104 (S.D. Cal. 2024) ............................................................. 12

*Rodriguez v. Plivo, Inc.*,
  No. 24STCV08972 (Cal. Super. Ct.) ................................................................ 5, 6

*S. Bell Tel. & Tel. Co. v. Hamm*,
  306 S.C. 70 (1991) ............................................................................................... 8

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. 2021) ................................................................... 8

*Sparshott v. Feld Ent., Inc.*,
  311 F.3d 425 (D.C. Cir. 2002) ............................................................................. 7

*Torres v. Nutrisystem, Inc.*,
  289 F.R.D. 587 (C.D. Cal. 2013) ......................................................................... 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................................................... 4, 5, 9

*Underhill v. Kornblum*,
  2017 WL 2869734 (S.D. Cal. 2017) .................................................................. 14

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) .......................................................................... 2, 9

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

*Valenzuela v. Kroger Co.*,
    2024 WL 1336959 (C.D. Cal. 2024) ........................................................... 12, 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................... 14, 15

**Statutes**

Cal. Penal Code § 631 ................................................................................*passim*

Cal. Penal Code § 638.50(b)-(c) ....................................................................... 3

Cal. Penal Code § 638.51 .............................................................................*passim*

Cal. Penal Code § 638.52(c) ............................................................................. 6

Cal. Penal Code § 638.52(d)(3) ........................................................................ 6

18 U.S.C. § 3121 ............................................................................................... 5

**Other Authorities**

California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) .................................. 5, 6

California Bill Analysis, A.B. 929 Assem. (Apr. 21, 2015) .................................... 6

2015 California Assembly Bill No. 929, California 2015-2016
    Regular Session, Committee Report ................................................................ 7

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Over the last several years, Plaintiff's counsel has earned a reputation as a

4    "serial litigant[] bringing numerous 'cookie cutter' lawsuits under [the California

5    Invasion of Privacy Act ('CIPA')] against various businesses that operate websites."

6    *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023). As Judge

7    Bernal has explained, counsel "appears to work with multiple 'tester' plaintiffs to

8    drum up these lawsuits," which he then files in staggering numbers. *Id.* at 1059-60.

9    "[T]he goal" of this enterprise is not to "[i]nitiat[e] legitimate litigation," but rather

10   "to file as many lawsuits as possible in the least amount of time," in hopes of

11   obtaining "quick cash settlement[s]." *Id.* at 1060. Accordingly, Plaintiff's counsel

12   recycles the same allegations "over and over again," drafting them "at such a high

13   level of generality that [they] could apply word-for-word to the dozens of other

14   businesses this law firm is suing." *Id.* Indeed, these generic pleadings typically "never

15   mention[] the name of the company Plaintiff is suing after the caption page, because

16   doing so might take more than a few seconds to alter when filing a new lawsuit." *Id.*

17       This lawsuit against Defendant Autotrader.com, Inc. ("Autotrader") is just the

18   latest in this scheme, and the vague claims in the Amended Class Action Complaint

19   ("FAC") fail on multiple grounds. Plaintiff asserts that Autotrader violated California

20   Penal Code § 638.51's criminal prohibition on "pen registers" and "trap and trace

21   devices" simply by receiving and recording Plaintiff's IP address—a ubiquitous act

22   required to establish *any* internet connection. Although the FAC alleges that

23   Plaintiff's IP address was subsequently used for marketing efforts, that is legally

24   beside the point: Plaintiff's theory is that § 638.51 criminalizes any exchange of IP

25   addresses, effectively outlawing the internet. Not surprisingly, that theory is not

26   viable. Courts have long held—and the language and legislative history of § 638.51

27   make clear—that merely collecting IP addresses of incoming website visitors does

28   not constitute an illegal "pen register" or a "trap and trace device." Even if it did,

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

§ 638.51 specifically permits the installation of a pen register or trap and trace device with the consent of the "user" (singular) on whose premises the device is installed—in this case, Autotrader, which allegedly gave that consent. And even if **Plaintiff's** consent were relevant, she provided it by navigating to Autotrader's website with the knowledge that doing so would convey her IP address.

Plaintiff also claims that Autotrader violated California Penal Code § 631(a)'s prohibition on wiretapping by operating a search bar on its website. The FAC asserts that third-party service providers directly violated the statute by intercepting users' search queries, and that Autotrader bears liability for aiding and abetting those violations. But these allegations, which embody the same excessive generality that Judge Bernal called out in *Byars*, also fail on several independent grounds. As an initial matter, Plaintiff lacks standing to assert the claim. And on the merits, the FAC does not adequately allege that any service provider accessed search queries for **its own** purposes rather than Autotrader's, as required to violate § 631(a). Nor does the FAC allege that any service provider accessed search queries while they were "in transit"—a separate statutory mandate. Finally, the FAC establishes that Plaintiff consented to third-party access in any event.

Put simply, the FAC is not the basis for "legitimate litigation." *Byars*, 656 F. Supp. 3d at 1060. The Court should dismiss all claims with prejudice.

## II.    BACKGROUND

"[E]very computer or server connected to the Internet has a unique IP address." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (quoting *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008)). An IP address is the internet equivalent of a telephone number: It is a "numerical identifier" assigned to "each computer or network connected to the Internet." *Id.* And, like a telephone number, it is "provided" and "used … for the specific purpose of directing the routing of information." *Id.* An internet user who wishes to visit a website must "voluntarily turn[] over" their IP address "in order to direct" the routing used to make that

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

connection. *Id.* Because an individual's IP address ***must be provided*** in order to facilitate a connection to a website, it is "inevitable that [a website] learns a [visitor's] IP address." *Id.* at 1190; *see* FAC ¶ 35. That is how the internet works.

In this case, Plaintiff alleges that this basic process of collecting IP addresses is not only illegal, but criminal. Specifically, Plaintiff—a self-described "tester" who seeks to generate lawsuits by visiting companies' websites with the intent of incurring supposed privacy violations, *id.* ¶ 4—claims that she visited Autotrader's website and, as a part of that process, revealed her IP address to Autotrader. *Id.* ¶¶ 69-70; *see also id.* ¶ 35. In particular, Plaintiff alleges that Autotrader's website "cause[s] at least one PR/TT beacon to be installed on a Website user's Internet browser"— software that collects the user's IP address, among other information, and relays it to a third-party "company" that "provides analytics and marketing services." *Id.* ¶ 33. The FAC alleges that six types of beacons are "deployed by the Website." *Id.* ¶ 54; *see* ¶¶ 57-64. According to Plaintiff, Autotrader's receipt and recording of an IP address constitutes a violation of § 638.51's prohibition on "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." *Id.* ¶ 10.

The FAC also asserts that third-party companies use information received through the beacons to perform various services, like "identity resolution efforts." *Id.* ¶ 75; *see id.* ¶¶ 20-30. But Plaintiff's § 638.51 claim is premised solely on Autotrader's initial "captur[ing]" of "IP address[es]"—not how that information is later used. *Id.* ¶ 134. Nor could it be otherwise. CIPA defines pen registers and trap and trace devices as "record[ing]" or "captur[ing]" "routing, addressing, or signaling information," without regard to how that information may be used. Cal. Penal Code § 638.50(b)-(c).

Separately, Plaintiff alleges that Autotrader violated § 631(a) by offering a search bar on its website. *Id.* ¶ 86. Plaintiff added this claim in her most recent amendment to the pleadings, and its allegations—including the obviously inapplicable mention of searches for "depression" on a website for new and used

vehicles, *id.* at p. 2—illustrate Plaintiff counsel's "cookie cutter" approach to litigation. *Byars*, 656 F. Supp. 3d at 1059. Evincing the telltale "high level of generality," *id.* at 1060, the FAC alleges that an unknown thirty party, "the 'Third Party Search Engine Provider,'" "developed" the "search engine" incorporated into Autotrader's website. FAC ¶ 86. According to Plaintiff, Autotrader's website would "collect[ ] users' data" entered into the search bar and "send[ ] it to its search engine software developer," and search results would somehow then be generated which "appear to be limited to the specific site on which the search is run." *Id.* ¶¶ 88, 96. Plaintiff also alleges that user searches are "added to [a] URL," which Autotrader's website "then reports … to several third-party websites that track visitor activity on the Website." *Id.* ¶ 100; *see id.* ¶¶ 102-07. The FAC claims that "one or more" of these "third parties" directly violated § 631(a)'s second clause by reading the contents of search queries without consent, *id.* ¶ 145, and that Autotrader aided and abetted those violations, *id.* ¶ 147.

Plaintiff initially filed the FAC in California court. Autotrader timely removed the action to this Court on October 10, 2024. ECF No. 1.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

To survive a motion to dismiss for lack of standing under Rule 12(b)(1)—on which grounds Plaintiff's second claim should also be dismissed—"a plaintiff must show," among other things, "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). "[A]n injury in law is not an injury in fact. Only those

plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427.

## IV.    LEGAL ARGUMENT

### A.    The FAC Fails To State a Claim Under Cal. Penal Code § 638.51(a).

#### 1.    Merely collecting IP addresses, as required to operate a website, does not constitute an illegal pen register or trap and trace device.

Just recently, in *Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct.), a California court dismissed with prejudice Plaintiff's effectively identical § 638.51 claim, agreeing that "Plaintiff's IP address is not the type of information that parties are prohibited from collecting by CIPA." Def.'s Request for Judicial Notice ("RJN"), Ex. A, at 10. That decision is built on more than a decade of case law making the same fundamental point about the federal prohibition on pen registers and trap and trace devices, which likewise "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. 2009) (discussing Pen Register Act, 18 U.S.C. § 3121). After all, if these laws "did apply" to the mere collection of incoming IP addresses, "then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the internet." *Id.*; *accord In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012).

That same conclusion applies to § 638.51, which is not just analogous to, but indeed specifically modeled on, the federal prohibition. *See* California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015); *see also, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (explaining that California courts routinely look to analogous federal laws when interpreting CIPA). The California Legislature, like Congress, stopped well short of criminalizing the basic functioning of the internet. Indeed, the legislative history of § 638.51 makes crystal clear that the Legislature

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

was concerned with "telephone surveillance"—not collection of non-telephone information like IP addresses. *See* California Bill Analysis, A.B. 929 Assem. (Apr. 21, 2015). That makes sense: In enacting § 638.51, the Legislature worked from definitions of "'pen register' [a]s an electronic device which records all numbers called from (outgoing) a … particular *telephone line*," and a "'trap and trace device' [as a device that] records what numbers had called a specific *telephone*, *i.e.* all incoming phone numbers." California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) (quoting Los Angeles District Attorney's Office) (emphasis added).

The Legislature wrote that understanding into the text of the law itself. CIPA requires any court order authorizing the installation of a pen register or trap and trace device to specify "[t]he number" and "physical location of the *telephone line* to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(3) (emphasis added); *see also id.* § 638.52(c) (providing that a "pen register or trap and trace device shall not" collect the physical location of the subscriber "except to the extent that the location may be determined from the *telephone number*" (emphasis added)). These provisions make clear that CIPA conceives of a "pen register or trap and trace device" as devices that will be "attached" to a "telephone line" with a "physical location." Cal. Penal Code § 638.52(d)(3).

Plaintiff's attempt to apply § 638.51 to software that collects website visitors' IP addresses cannot be squared with any of that. In direct contrast to the statutory text, the software at issue here is alleged to be installed on a website (not a "telephone line"), which has neither an associated phone "number" nor a "physical location." Indeed, it has nothing to do with telephone lines, telephone numbers, or telephone surveillance at all. Accordingly, it falls well outside the scope of § 638.51's prohibition, as *Plivo* soundly recognized when dismissing indistinguishable

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

1  allegations. RJN Ex. A, at 10-11.[1]

2  ## 2. The only consent required for "installation" of software is Autotrader's, which it concededly provided.

3  Even if Plaintiff had pleaded the existence of a "pen register" or "trap and trace

4  device," her claim would still fail because § 638.51 permits the installation of such a

5  device with "the consent of the ***user of that service***"—and here, that is Autotrader.

6  Cal. Penal Code § 638.51(b)(5) (emphasis added); *see* FAC ¶ 75 (alleging Autotrader

7  "knowingly and intentionally" installed the accused software). The Legislature's use

8  of the singular "user" for § 638.51's consent requirement is a notable departure from

9  other provisions of CIPA (such as § 631's prohibition on wiretapping), which require

10 consent of *all* parties. As the Legislature explained when enacting § 638.51, "[u]nlike

11 a wiretap," "pen registers and track and trace devices do not provide [access to] the

12 content of the messages which are transmitted." 2015 California Assembly Bill No.

13 929, California 2015-2016 Regular Session, Committee Report at 11. Accordingly,

14 "[w]iretap[s]" under CIPA are "subject to a much higher standard of scrutiny than"

15 the pen registers and trap and trace devices at issue here. *Id.*

16 That makes sense. If the law required the consent of ***all*** parties before installing

17 a pen register, then "it is hard to see how any caller ID system, even that used for

18 emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432

19 (D.C. Cir. 2002) (interpreting identical provision of federal law on which § 638.51

20 was modeled). After all, a caller ID system allows the recipient of an inbound wire

21 communication to learn and record the identity of the initiating party. *See id.*

---

[1] The Complaint suggests that *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), "denied a Motion to Dismiss in a materially identical case." Compl. ¶ 19. As an initial matter, however, *Greenley*—unlike this case—did not involve allegations of software that merely collected a website visitor's IP address. Instead, the *Greenley* plaintiff alleged that the software at issue collected (among other things) his "geolocation." 684 F. Supp. 3d at 1037. What is more, *Greenley* did not grapple with any of the cases, legislative history, or textual provisions discussed in text above. *See id.* at 1050 (stating that the defendant "provide[d] no caselaw in support" of its position on Section 638.51, and observing that "it seems no court has interpreted this provision of CIPA"). *Greenley* is thus of little help in resolving the issues and arguments presented here.

Accordingly, if laws like § 638.51 were interpreted (contrary to their text) as requiring the consent of *all* parties to any communication, then all caller ID users would be criminals (since such users do not first obtain consent of incoming callers before obtaining their identity from the caller ID system). *See id.* Section 638.51 avoids that absurd result by requiring only the consent of one party (the "user," singular)—*i.e.*, the "subscriber to the service," *see S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70, 73 (1991) (interpreting materially identical provision of South Carolina law)—before allowing installation of the pen register or trap and trace device.

Fundamentally, then, Plaintiff's lawsuit misunderstands the operation of § 638.51. That provision is designed to protect the person on whose premises the trap and trace device is installed. Here, the provider of accused software—that is, a "provider of electronic … communication service," Cal. Penal Code § 638.51(b)— installed the software on Autotrader's website. Had the provider done so without ***Autotrader's*** knowledge or consent, then ***Autotrader*** would have a cause of action against that provider—just as a homeowner would have a cause of action against a police officer who installs a pen register on that person's home phone without that person's (or a court's) permission. But § 638.51 does not prohibit Autotrader from installing software to determine incoming IP addresses ***on its own website*** without first obtaining permission from every website visitor—just as it does not prohibit every person from installing a caller ID device ***in their own home*** without first obtaining permission from every incoming caller.

### 3. Plaintiff consented to the recording of her IP address in any event.

Moreover, even if Plaintiff's consent were required here, which it is not, Plaintiff unquestionably gave it when she voluntarily navigated to Autotrader's website. Consent to recording exists under CIPA where a plaintiff proceeds in circumstances where "a reasonably prudent user would have been aware" that their information was being recorded. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752,

at *4 (N.D. Cal. 2021); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (individual who "actually expected the [communication] to be recorded" can be deemed to "have implicitly consented to the recording by the very act of" initiating the communication).

That is undoubtedly the case here. As courts have explained, any reasonable website user who voluntarily navigates to a website would understand in advance that her IP address "information [would be] provided" as part of that interaction. *Heeger*, 509 F. Supp. 3d at 1190 (quoting *Forrester*, 512 F.3d at 510). After all, any such website user ***must*** "voluntarily turn[] over" their IP address "in order to direct" the routing used to access the website—it is "inevitable that [a website] learns a [visitor]'s IP address" when they navigate to it. *Id.* at 1189-90. Indeed, for precisely this reason, courts have long held that Internet users do not have any expectation of privacy in their IP addresses or the IP addresses of the websites they visit. *Id.* at 1190; *Forrester*, 512 F.3d at 510. That is particularly true of Plaintiff, a self-described "tester" well-versed in internet protocols. FAC ¶ 4.

Because Plaintiff "consensually engaged in [an internet] transaction" and "communicated h[er] IP address as part of" that transaction, the laws prohibiting pen registers and trap and trace devices "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. 2013).

## B.    Plaintiff Lacks Standing To Sue Under Cal. Penal Code § 631(a).

To show that Plaintiff was "concretely harmed" by the alleged interception of search queries, and thus has standing to sue under § 631(a), the FAC must adequately allege "harm to her privacy" by identifying what "sensitive information" she disclosed that "implicates a protectable privacy interest." *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. 2023) (quoting *TransUnion*, 594 U.S. at 427). The FAC flunks that test. It asserts in conclusory fashion that Plaintiff's search on Autotrader's website somehow implicated "highly confidential" and "sensitive

information." FAC ¶¶ 108, 122. But Plaintiff pleads no facts to support those "conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). The FAC merely notes Plaintiff's "search for 'Cars for Sale in Los Angeles, CA,'" *id.* ¶ 101, which lacks "any specific personal information … that implicates a protectable privacy interest," *Sterling Jewelers*, 2023 WL 2996686, at *3 (dismissing for lack of standing on this ground).

The FAC also fails to plead that Plaintiff "reasonably expected" that her searches "were not being recorded" by third parties. *Id.* at *4. Again, Plaintiff offers conclusory assertions to that effect, alleging that she "reasonably believed that communications to the Website were made in confidence" because she "was not provided an opportunity to review or consent to sharing of Plaintiff's information with any third party." FAC ¶¶ 111-12. But the FAC pleads facts that conclusively show otherwise. As a "tester," *id.* ¶ 4, Plaintiff "fully expected that her [searches] would be recorded so that she could file this action," *Sterling Jewelers*, 2023 WL 2996686, at *4. And the FAC's "user search" screenshot of Autotrader's website includes a conspicuous cookie banner that (1) informed Plaintiff that the website "uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website" and "share[s] information about your use of our site with our social media, advertising, and analytics partners," then (2) provided her the option to "opt-out." FAC ¶ 101. That is exactly the "opportunity to review or consent to sharing of Plaintiff's information with any third party" that the FAC elsewhere misleadingly denies. *Id.* ¶ 112.

"Because Plaintiff fails to allege or otherwise demonstrate an injury sufficient to confer on her Article III standing," her § 631(a) claim should be "dismissed for lack of subject matter jurisdiction." *Sterling Jewelers*, 2023 WL 2996686, at *4.

### C.    The FAC Fails To State a Claim Under Cal. Penal Code § 631(a).

Plaintiff's § 631(a) claim fares no better on the merits. She does not contend that Autotrader directly violated the statute's first two clauses, for obvious reasons:

Autotrader was "the intended recipient" of Plaintiff's search queries, FAC ¶ 108, and those clauses do not cover "a participant" who "record[s]" communications. *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020) (citation omitted). Instead, Plaintiff's sole theory is that "one or more third parties other than Defendant"—specifically, service providers that worked with Autotrader—directly violated § 631(a)'s second clause when they "willfully read or attempted to read or learn the contents or meaning of" search queries for their own independent "benefit." FAC ¶¶ 145-46. Plaintiff then tries to hold Autotrader liable for aiding and abetting that "wrongful conduct" by third parties. *Id.* ¶ 147. But the FAC fails to establish that any service provider violated § 631(a)—let alone that Autotrader could be vicariously liable.

### 1. Plaintiff fails to plead that any service provider fell outside CIPA's party exception.

To begin with, the service providers that Plaintiff describes fall within CIPA's party exception. When a website operator shares user communications with a service provider, the provider does not automatically qualify as an independent third party under § 631(a). Rather, when a "service provider" records communications "for [the website's] own purposes," the provider acts as "an extension of" the website itself, like the manufacturer of a "tape recorder." *Licea v. Vitacost.com, Inc.,* 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) (collecting cases). In those circumstances, the service provider, no less than the website operator, is entitled to § 631(a)'s party exception and does not qualify as a "third-party eavesdropper" capable of directly violating the statute. *Id.* (quoting *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)). Service providers may face liability only where they make their own "independent use of" recorded communications, such as by "reselling" them. *Licea v. Am. Eagle Outfitters, Inc.,* 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023).

Plaintiff has not adequately pled that any service provider working with Autotrader made independent use of search queries. Although the FAC gestures

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

toward that legally required point, it does so only in conclusory fashion, with transparently cut-and-pasted allegations that include no specific facts about the service providers in this case. Specifically, the FAC first alleges that Autotrader's website used "a search engine developed by a third party." FAC ¶ 86. Which third party? Plaintiff does not say. She instead uses the generic term "Third Party Search Engine Provider." *Id.* While that "high level of generality" enables Plaintiff's counsel to "apply" the same allegations "word-for-word to the dozens of other businesses this law firm is suing," *Byars*, 656 F. Supp. 3d at 1060, it also makes for fatally conclusory pleadings. The FAC does not allege a single fact about how the unknown search engine provider's technology or broader business operates, beyond vague assertions that it somehow facilitates "searches" that "appear to be limited to the specific site on which the search is run," FAC ¶ 88, and somehow "assist[s] companies like Defendant to run targeted advertising campaigns," *id.* ¶ 96.

Critically, those vague allegations describe (at most) a service provider using search information for ***Autotrader's*** "own purposes." *Vitacost.com*, 683 F. Supp. 3d at 1123. A provider whose software simply powers a website's search capability is just as much "an extension of" the website, *id.*, as a provider whose software powers a website's "chat" archive, *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *3-4 (C.D. Cal. 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024). That does not suffice to plead the provider's violation of § 631(a). *See Valenzuela*, 2024 WL 1336959, at *4 (dismissing aiding-and-abetting § 631(a) claim against website and noting "chat feature" provider's act of "'capturing' data is not necessarily a Section 631(a) violation"); *Rodriguez*, 722 F. Supp. 3d at 1124 (similar, in case brought by Plaintiff).

When it comes to showing that the unknown search engine provider used information for ***its own*** purposes—required for direct liability under § 631(a)—the FAC pleads no facts whatsoever. It merely states, in a single sentence, that "the Third Party Search Engine Provider is capable of using the Search Terms for its own

advertising purposes and does so to benefit its own products and services separate from the services it renders to Defendant." FAC ¶ 97. Plaintiff never specifies what those "products and services" are, how the search engine provider engages in its own "advertising," or how it could deploy search queries from Autotrader's website for any of those purposes. That is the definition of "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). These sparse allegations are plainly designed to cover, through sheer vagueness, the wide range of cases in which Plaintiff's counsel reuses them. The FAC's "mere conclusory statements" regarding the unknown search engine provider's purported independent use of search information "do not suffice" to allege a § 631(a) violation that Autotrader could conceivably have aided and abetted. *Id.*

The FAC also alleges that "the search engine used on the Website would feed visitors' Search Terms to the tracking tools implemented by Defendant on the Website." FAC ¶ 94. Again, however, Plaintiff pleads no facts showing that any such third-party tracking tools used search information for their "own purposes." *Vitacost.com*, 683 F. Supp. 3d at 1123. If anything, the FAC is even more conclusory on this front. It asserts that Autotrader's website sends search queries to tracking tools "that track visitor activity on the Website," FAC ¶ 100, and somehow "conduct targeted advertising" to "boost" Autotrader's "revenue," *id.* ¶ 118. But that, too, describes a service provider using search information for ***Autotrader's*** "own purposes," *Vitacost.com*, 683 F. Supp. 3d at 1123, akin to maintaining a chat "archive," *Valenzuela*, 2024 WL 1336959, at *4. Beyond that, the FAC simply names a few supposed tracking tools that received "search term" information, without any further allegation about how they used it. FAC ¶¶ 102-07. Nothing in these minimal allegations establishes that any tracking tool uses information for its own purposes and was even capable of violating § 631(a). That is no surprise; Autotrader's privacy policy, which the FAC mentions several times, expressly states that Autotrader requires any third-party service provider to use consumer "information only to

DEFENDANT AUTOTRADER'S MOTION TO DISMISS

perform the services specified by us," "*on our behalf*." RJN Ex. B, at 19.

**2.    Plaintiff fails to plead that any service provider intercepted her search bar communications "in transit."**

The FAC separately fails to plead that any service provider violated § 631(a) by unlawfully intercepting Plaintiff's search queries "in transit," as the statute requires. Cal. Penal Code § 631(a). Courts interpret that requirement consistent with its federal analog, the Wiretap Act, which demands "acquisition of a communication contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002); *see, e.g.*, *Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017) (dismissing claim that insufficiently alleged contemporaneous acquisition). This requirement is especially difficult to satisfy regarding text-based internet communications, as "[t]here is only a narrow window" during which interception of an internet-based text message may occur—namely, "the seconds or milli-seconds before which a newly composed message is saved to any temporary location following a send command." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014). If the pleadings leave the "timeline" of a service provider's recording "unclear, as it could occur during transit or it can take place after [defendant's] receipt of the message," then there is no § 631(a) violation. *Am. Eagle*, 659 F. Supp. 3d at 1085 (dismissing § 631(a) claim on this basis).

The FAC's sparse allegations fall well short of that pleading standard. Plaintiff asserts in conclusory fashion that "one or more third parties" performed "interception" that was "contemporaneous with the communications transit." FAC ¶¶ 90, 145. But that bare assertion is merely "a legal conclusion couched as a factual allegation," which carries no force at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 678 (citation omitted). Courts thus routinely dismiss comparably conclusory allegations for failing to satisfy § 631(a)'s "in transit" requirement. *See Am. Eagle*, 659 F. Supp. 3d at 1085 (dismissing § 631 claim because "using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

plausible [the defendant] is intercepting [the plaintiffs'] data in transit"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing § 631(a) claim because allegations that defendant "intercepted the[] communications … 'during transmission'" were too conclusory); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (dismissing "conclusory allegations restating the pleading requirement of real-time interception" because they "fail to provide specific factual allegations" that any interception occurred in transit); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. 2023) (similar).

The remainder of the FAC offers no further "clarity" about exactly when, or how, any service provider "supposedly intercepted the[] communications" in real time. *Vizio*, 238 F. Supp. 3d at 1228. For example, Plaintiff pleads no facts about *when* the unknown search engine provider accessed search queries, creating fatal ambiguity about whether such access occurred "during transit" to Autotrader's website or instead "after receipt of the message" by Autotrader. *Am. Eagle*, 659 F. Supp. 3d at 1085. If anything, the pleadings suggest the latter. The FAC asserts that "[c]ompanies like Defendant are *collecting* users' data *and sending it* to its search engine software developer," FAC ¶ 96 (emphasis added), meaning search queries first arrive at Autotrader for "collection" and are only later "sent" to the unknown search engine provider. The allegation that Autotrader "re-routed" user searches to the search engine provider, *id.* ¶ 109, is entirely consistent with that understanding; Autotrader could re-route information *after* it lands on the website just as easily as *before* transmission from the user is complete. This is exactly the sort of ambiguity regarding the "timeline" of third-party access that dooms a § 631(a) claim. *Am. Eagle*, 659 F. Supp. 3d at 1085.

Plaintiff encounters the same problem in alleging that search queries are "harvested and shared with" the supposed third-party tracking tools. FAC ¶ 99. Once more, the FAC pleads no facts about *when* those tracking tools accessed the information—whether before or after it reaches Autotrader. And all indications again

suggest the latter. Plaintiff alleges that when a user enters a search, "the search phrase is added to [a] URL," and "[t]he Website *then* reports the URL containing the user's search term to several third-party websites that track visitor activity on the Website." FAC ¶ 100 (emphasis added); *see id.* ¶¶ 102 ("The Website *then* reports the URL containing the user's search term to Google Analytics." (emphasis added)), 103-07 (similar allegations for other third parties). Those allegations suggest that the tracking tools access search queries only *after* they have been in transit to Autotrader.

### 3. In any event, Plaintiff consented to the alleged involvement of third parties.

On top of these failings, the FAC also establishes that Plaintiff consented to Autotrader sharing her search queries with third parties, which independently forecloses liability under § 631(a)'s second clause. *See* Cal. Penal Code § 631(a) (prohibiting interception only "without the consent of all parties"). Indeed, Plaintiff never disputes that she saw Autotrader's "cookie banner," and she concedes that it provided an "opportunity for visitors to consent to or decline the Website's" sharing of information with third parties. FAC ¶ 56. As explained above, that banner expressly informed Plaintiff that Autotrader would share information with third parties. *Supra* 10; *see* FAC ¶ 101. And the banner's "conspicuousness and placement," blocking part of the screen with high-contrast text, made it unmistakable to any "reasonably prudent user." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). By electing to proceed with her "tester" searches after encountering those disclosures, *id.* ¶ 4, Plaintiff consented to the very sharing of information for which she now seeks to hold Autotrader liable.

### D. The Court Should Dismiss Plaintiff's Lawsuit With Prejudice.

As demonstrated above, Plaintiff's lawsuit is doomed by legal flaws that amended pleadings could not remedy, like her overbroad misreading of § 638.51 and lack of standing under § 631(a). In light of those "fundamental legal flaws," the Court should deny leave to amend as "futile." *Guardia v. CitiMortgage*, 2021 WL 3811028,

at *6 (C.D. Cal. 2021).

## V.    CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's FAC with prejudice.


Dated:        November 18, 2024            JACOB M. HEATH
                                           THOMAS K. FU
                                           Orrick, Herrington & Sutcliffe LLP


                                    By: */s/ Jacob M. Heath*
                                           JACOB M. HEATH
                                           Attorneys for Defendant
                                           AUTOTRADER.COM, INC.

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Autotrader, certifies that this

Memorandum of Points and Authorities contains 5587 words, which complies with

the Court's Standing Order.

By: */s/ Jacob M. Heath*

JACOB M. HEATH
Attorneys for Defendant
AUTOTRADER.COM, INC.

DEFENDANT AUTOTRADER'S
MOTION TO DISMISS