**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

REBEKA RODRIGUEZ,

                Plaintiff,

    v.

AUTOTRADER.COM, INC., a Delaware
corporation, d/b/a
WWW.AUTOTRADER.COM,

                Defendant.

Case No. 2:24-cv-08735-RGK-JC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

[Pl.'s Response to Def.'s Request for Judicial Notice filed concurrently herewith; [Proposed] Order lodged concurrently herewith]

Date:        December 16, 2024
Time:        10:00 a.m.
Courtroom:  850
Judge:      Hon. R. Gary Klausner

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    ARGUMENT ............................................................................................................. 1

      A.    The Court Has Article III Standing. ............................................................ 1

            1.    The FAC Has Sufficiently Alleged an Injury In Fact to Plaintiff's
                  Privacy Interest, Which Harms Her Dignity..................................... 1

                  a.    CIPA Was Established to Protect Plaintiff's Substantive
                        Privacy Interest. ...................................................................... 1

                  b.    The Alleged CIPA Violation Alleged in This Case Actually
                        Harm or Present a Material Risk of Harm to Plaintiff's
                        Privacy Interest and Dignity. ................................................. 1

                  c.    *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive................... 2

            2.    The FAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity
                  That Is "Fairly Traceable" to Defendant's Conduct. ...................... 3

      B.    The FAC Plausibly Alleges that Defendant Violated Section 631(a) of the
            California Penal Code. ................................................................................. 4

            1.    The Third Party Collection of Search Terms of Website Users Is
                  Actionable Under Section 631(a) of the Penal Code. ...................... 4

            2.    Defendant Is Not Subject to a Party Exemption Under the First
                  Clause of Section 631(a). ................................................................. 5

            3.    It Is Premature to Decide Whether Defendant's Search Bar Provider
                  Is Entitled to the Party Exemption Under the Second Clause of
                  Section 631(a) as a Matter of Law. .................................................. 6

            4.    The FAC Plausibly Alleges that Plaintiff's Search Terms Were
                  Intercepted While In Transit. ............................................................ 7

            5.    The FAC Plausibly Alleges Lack of Consent, Which Is Premature
                  for the Court to Decide..................................................................... 7

                  a.    Numerous Federal Court Decisions Reject Deciding the Issue
                        of Consent at the Pleadings Stage.......................................... 9

C.  The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the
    California Penal Code. ................................................................................9

    1.  An IP Address Constitutes a Consumer's Personal Information in
        California................................................................................................9

        a.  Multiple Decisions Support Plaintiff's Position. ...................11

        b.  *United States v. Forrester* Is Distinguishable and
            Unpersuasive..........................................................................13

    2.  Defendant's Consent Argument Is Without Merit. .........................16

**CERTIFICATE OF COMPLIANCE** .......................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Backer ex rel. Freedman v. Shah*,
    788 F.3d 341 (2d Cir. 2015)................................................................................4

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ..............................................................5

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................9

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................................4

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.) ......................2, 3

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 4195768 (C.D. Cal. May 18, 2023) ................................................2, 3

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024) ........................................................................7

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................................8

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .........................................................................2

*Capitol Records Inc. v. Thomas-Rasset*,
    2009 WL 1664468 (D. Minn. June 11, 2009)................................................14

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
    867 F.3d 1093 (9th Cir. 2017) .........................................................................3

*Esparza v. Kohl's, Inc.*,
    723 F. Supp. 3d 934 (S.D. Cal. 2024)...............................................................9

*Federal Election Comm'n v. Cruz*,
    142 S. Ct. 1638 (2022)......................................................................................3

*Garcia v. Yeti Coolers, LLC*,
    2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) (Klausner, J.) ...........................6, 7

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)............................................. 8, 11, 12, 13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).......................................................................................3

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................14

*Heerde v. Learfield Communications, LLC*,
    2024 WL 3573874 (C.D. Cal. July 19, 2024) (Aenlle-Rocha, J.) .......................4

*In re Certified Question of Law*,
    858 F.3d 591 (FISCR 2016)...........................................................................15

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................2, 8, 9

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021).........1, 2, 4, 5

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ..............................................................8

*In re Google RTB Consumer Privacy Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ............................................................10

*In re Google*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.)..................................8, 9

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................11

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)............................................5

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..........................................................................4

*Javier v. Assurance IQ, LLC*,
    2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ......................................................8

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) .....................................................7, 8

*Langer v. Kiser*,
  57 F.4th 1085 (9th Cir. 2023) .............................................................................3

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. Mar. 7, 2023) ................................................5

*Moody v. C2 Educational Systems Inc.*,
  2024 WL 3561367 (C.D. Cal July 25, 2024).....................................................13

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ..............................................................................7

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ............................................................................1

*Prescott v. Bayer Healthcare LLC*,
  2020 WL 4430958 (N.D. Cal. July 31, 2020) ...................................................11

*R.C. v. Walgreen Co.*,
  - F. Supp. 3d -, 2024 WL 2263395 (C.D. Cal. May 9, 2024) (Bernal, J.)............4

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................................................2

*Shah v. Fandom, Inc.*,
  - F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ...................12, 13

*Smith v. Maryland*,
  442 U.S. 735 (1979)................................................................... 14, 15, 16

*Tourgeman v. Collins Financial Servs., Inc.*,
  755 F.3d 1109 (9th Cir. 2014) ............................................................................3

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...............................................................................................2

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2007) ........................................................ 13, 14, 15, 16

*United States v. Staves*,
  383 F.3d 977 (9th Cir. 2004) ..............................................................................9

OPP'N TO MTD FAC

*Valenzuela v. The Kroger Co.*,
   2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) (Gee, J.) ......................................9

*Vizcarra v. Michaels Stores, Inc.*,
   710 F. Supp. 3d 718 (N.D. Cal. 2024) ...............................................................11

**California Cases**

*Forest E. Olson, Inc. v. Superior Court*,
   63 Cal. App. 3d 188 (1976) .............................................................................5, 6

*Friddle v. Epstein*,
   16 Cal. App. 4th 1649 (1993) ..............................................................................1

*People v. Guzman*,
   11 Cal. App. 5th 184 (2017) ................................................................................2

*Ribas v. Clark*,
   38 Cal.3d 355 (1985) ........................................................................................2, 5

*Sanders v. Am. Bd. Co., Inc.*,
   20 Cal. 4th 907 (1999) .........................................................................................8

*Shulman v. Group W Productions, Inc.*,
   18 Cal. 4th 200 (1998) .........................................................................................8

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) .........................................................................................5

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ..................................................................................6

**U.S. Constitution**

Article III................................................................................................................1

**Federal Statutes**

Electronic Communications Privacy Act of 1986
   § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986).......................................15, 16

USA Patriot Act of 2001, Pub. L. No. 107–56
   § 216, 115 Stat. 272 (2001)..........................................................................15, 16

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Title III Stat. 197 (1968) ..............................................5, 11, 15

**California Statutes**

Civil Code
   § 1798.100 *et seq.* ............................................................................10
   § 1798.100(a) ...................................................................................10
   § 1798.100(c) ...................................................................................10
   § 1798.105(a) ............................................................................10, 11
   § 1798.120(a) ...................................................................................11
   § 1798.140 .........................................................................................10
   § 1798.140(v)(1)(A) ........................................................................10
   California Consumer Privacy Act of 2018. .......................... 10, 11, 14
   California Consumers Legal Remedies Act .....................................11

Penal Code
   § 630 *et seq.* .......................................................................................1
   § 631 .................................................................................. 2, 5, 6, 11
   § 631(a) ...................................................................................... *passim*
   § 632.....................................................................................................6
   § 633.5..............................................................................................5, 6
   § 638.50.......................................................................................12, 13
   § 638.50(b)........................................................................................12
   § 638.51................................................................... 9, 11, 12, 13
   § 638.52.......................................................................................12, 13
   § 1546 *et seq.* .....................................................................................9
   § 1546(d) ............................................................................................9
   § 1546(h) ............................................................................................9
   § 1546.1(a)(1).....................................................................................9
   § 1546.1(b).........................................................................................9
   § 1546.4(a) .........................................................................................9
   California Electronic Communications Privacy Act ..............9, 10, 14
   California Invasion of Privacy Act ...................................... *passim*

**Federal Rules**

Rules of Civil Procedure
   Rule 9(b) ...........................................................................................7

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5...............................................................................................3
n.61....................................................................................................3
n.70.................................................................................................3, 4
n.73....................................................................................................3

S. Freiwald, *Uncertain Privacy:  Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949 (1996).............................15, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ARGUMENT

**A.    The Court Has Article III Standing.**

Defendant challenges the First Amended Complaint ("FAC") for lack of standing to sue for a violation of section 631(a) of the California Penal Code regarding the existence of a cognizable injury in fact.  (Def.'s Mem. at 9:21-10:25.)  Not so.

**1.    The FAC Has Sufficiently Alleged an Injury In Fact to Plaintiff's Privacy Interest, Which Harms Her Dignity.**

The Ninth Circuit has "adopted a two-step approach to determine whether the violation of a statute causes a concrete injury."  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019).  Such inquiry asks "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests."  *Id.* at 1270-71.

**a.    CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest.**

The Ninth Circuit has held that claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*., protect concrete, substantive privacy interests, which is sufficient to confer standing.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*In re Facebook*").

**b.    The Alleged CIPA Violation Alleged in This Case Actually Harm or Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity.**

The violation of section 631(a) of the Penal Code alleged in the FAC, if proven, actually harms or present a material risk of harm to Plaintiff's privacy interest and dignity. Plaintiff's dignitary interest is intended to be protected by the CIPA statutes at issue here. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any invasion of privacy involves an affront to human dignity***") (emphasis added).

- 1 -

Although Defendant implies that section 631(a) imposes a confidential information requirement, Defendant is wrong. Section 631 of the California Penal Code does not impose any confidentiality requirement. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 n.3 (N.D. Cal. Oct. 23, 2019) (citing *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7 (2017)). As held by the California Supreme Court decision in *Ribas v. Clark*, 38 Cal.3d 355 (1985), the fundamental harm that Plaintiff and all other similarly situated individuals experienced is having an "unannounced second auditor" intercept her search bar communication. *Ribas*, 38 Cal.3d at 360-61. Thus, whether or not Plaintiff communicated confidential information such as her social security number, date of birth, or similar types of sensitive information about Plaintiff is irrelevant to section 631(a). What does matter to such claim is having an "unannounced second auditor" intercept Plaintiff's search bar communication without her consent. That is highly offensive and, thus, conduct that the Legislature made actionable under California law.

"To say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious enough to warrant the attention of the federal courts is to disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019); *see In re Facebook*, 956 F.3d at 598.

### c. *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive.

Defendant's reliance upon *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.) ("*Sterling Jewelers I*"), is misplaced because the Court therein subsequently abandoned reliance upon the defendant's facial challenge and relied solely upon the defendant's factual challenge in a subsequent order that was limited to its unique facts. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023) ("*Sterling Jewelers II*") ("the Court need not decide whether *Campbell* states the absolute rule advanced by Plaintiff or whether such a rule survives *TransUnion*") ("Because Plaintiff has not shown that dismissal based on Zale's factual challenge constituted manifest error of law or fact, it is immaterial whether Zale's facial

challenge presented an independent basis for dismissal."). Thus, Defendant's implicit argument that *Sterling Jewelers I* correctly decided the facial challenge to standing is misleading because the Court was unwilling to stand by such decision in *Sterling Jewelers II*.

### 2. The FAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct.

Although Defendant argues that Plaintiff suffered a self-inflicted injury, a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing. It is clear, however, that no rigid lines are drawn on this basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper"). That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* § 3531.5 & n.70. "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Notably, such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61. *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

Also, the Ninth Circuit has repeatedly cited *Havens*. *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*"); *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014).

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions." Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). Rather, the FAC makes it clear that Defendant's and its third-party spyware developers' unlawful conduct contributed to causing Plaintiff's intangible injury either solely or almost entirely on their own.

**B.    The FAC Plausibly Alleges that Defendant Violated Section 631(a) of the California Penal Code.**

**1.    The Third Party Collection of Search Terms of Website Users Is Actionable Under Section 631(a) of the Penal Code.**

Multiple federal courts have recognized that the unlawful collection of search terms of website users by third parties who are not the owners or operators of the website violates section 631(a) of the California Penal Code. *Heerde v. Learfield Communications, LLC*, 2024 WL 3573874, at *4-*8 (C.D. Cal. July 19, 2024) (Aenlle-Rocha, J.); *R.C. v. Walgreen Co.*, - F. Supp. 3d -, 2024 WL 2263395, at *16 (C.D. Cal. May 9, 2024) (Bernal, J.) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA") (citing *In re Facebook*, 956 F.3d at 605).

Federal courts have recognized that a consumer has a reasonable expectation of privacy in search terms used in search bars on websites. *Heerde*, 2024 WL 3573874, at *10 ("Here, Plaintiffs allege plausibly a reasonable expectation of privacy in their search terms. As pleaded, a reasonable factfinder could determine the Search Terms were sensitive and confidential because they revealed the specific content Plaintiffs consumed.") (citing *In re Facebook*, 956 F.3d at 603 and *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014); *In re Facebook*, 956 F.3d at 605.

The Ninth Circuit has recognized that the federal "Wiretap Act's legislative history

evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook*, 956 F.3d at 608. Numerous federal court decisions construe statutory language in CIPA consistent with the Wiretap Act's construction. *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. Mar. 7, 2023) ("[C]ourts have looked at cases analyzing the Wiretap Act as informative of section 631(a)."); *In re Vizio*, *Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.). "'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted). The California Supreme Court, interpreting section 631(a) of the California Penal Code, held that, "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). "As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361 (citation omitted), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021). "Partly because of this factor, the [CIPA] has been read to require the assent of all parties to a communication before another may listen." *Ribas*, 38 Cal. 3d at 361. The Legislature's express objective in enacting section 631 is to protect a person's communications "from a situation where the other person on the other end of the line permits an outsider" to monitor the communication. *Id.* at 363 (citation omitted).

> **2. Defendant Is Not Subject to a Party Exemption Under the First Clause of Section 631(a).**

Defendant is not subject to a party exemption under the first clause of section 631(a) of the Penal Code. Indeed, section 633.5 of the Penal Code supports Plaintiff's interpretation. In *Forest E. Olson, Inc. v. Superior Court*, 63 Cal. App. 3d 188 (1976),

1  the Court of Appeal, interpreting the then-applicable version of section 633.5, which is
2  materially identical to the current version for purposes of the instant Motion, held:
3  "Clearly there would be no need for this exception were it not the rule under ***sections 631***
4  and 632 that ***a participant to a telephonic communication cannot record that***
5  ***communication without the knowledge of the other participant or participants***." *Id.* at
6  192 (emphasis added).  In other words, *Forest E. Olson, Inc.* construed section 631 as
7  imposing liability for participant recording of telephonic communications.  In *Warden v.*
8  *Kahn*, 99 Cal. App. 3d 805 (1979), the Court of Appeal cited with approval *Forest E.*
9  *Olson, Inc.*'s analysis of section 633.5:

10      "As the appellate court noted in *Forest E. Olson*, *supra*, the presence of section
11      633.5 in the Invasion of Privacy Act is inexplicable except on the assumption that
12      the Legislature intended at least some portion of the Act to apply to participant
13      recording."

14  *Warden*, 99 Cal. App. 3d at 813 (citing *Forest E. Olson*, 63 Cal. App. 3d at 192).

15      The only reasonable way to construe *Warden*, which held that the second clause of
16  section 631(a) is subject to a party exemption, is that the first clause is not subject to such
17  party exemption.

18      **3.    It Is Premature to Decide Whether Defendant's Search Bar Provider**
19          **Is Entitled to the Party Exemption Under the Second Clause of Section**
20          **631(a) as a Matter of Law.**

21      Defendant curiously ignores *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006 (C.D.
22  Cal. Sept. 5, 2023) (Klausner, J.), which deferred deciding whether a third party chat
23  provider was "more similar to a tape recorder or an eavesdropper" because it "is a question
24  of fact best resolved by a jury." *Id.* at *4.  The Court noted that "Plaintiff has sufficiently
25  pleaded that [the third party chat provider] is not entitled to the party exemption." *Id.*
26  *Garcia* is directly on point.  The FAC here has plausibly alleged that Defendant's

27
28

undisclosed third party search bar provider[1] is not entitled to the party exemption as it is *capable* of using users' search terms for marketing purposes.  (FAC ¶¶ 86-122; 97.) Whether it, in fact, does so is irrelevant.

**4.    The FAC Plausibly Alleges that Plaintiff's Search Terms Were Intercepted While In Transit.**

Defendant curiously ignores *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) (Klausner, J.), which rejected a similar motion to dismiss arguing that the operative pleading's "in transit" allegations were conclusory.  *Id.* at *4.  *Garcia* relied upon the "factual allegations regarding the routing of her chat messages through ASI's servers that occurred simultaneously with her use of the Website's chat function."  *Id.* That is analogous to what the FAC here alleges.  (FAC ¶ 109.)  To the extent that the Court disagrees, leave to amend should be granted to clarify such allegation.

**5.    The FAC Plausibly Alleges Lack of Consent, Which Is Premature for the Court to Decide.**

Defendant's argument that the FAC fails to sufficiently allege lack of consent, (Def.'s Mem. at 16:8-23), is without merit for numerous reasons.  First, consent is a defense to privacy-related claims, and, as the party seeking the benefit of the exception, it is the defendant's burden to prove consent.  *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

Second, assuming *arguendo* that Plaintiff must allege lack of consent in the FAC, it does so.  (FAC ¶¶ 90, 94, 112-113, 115-117, 145, 148, 151.)  Thus, the lack of Plaintiff's consent to Defendant's wrongdoing has been affirmatively alleged, which the Court is required to take as true for purposes of deciding the instant Motion.

Notably, in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31,

---

[1] Although Defendant contends that the FAC is defectively pled because the precise identity of Defendant's search term provider is not mentioned in the FAC, Defendant ignores that such information is within Defendant's knowledge.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (noting that the particularity requirements under rule 9(b) may be "relaxed as to matters within the opposing party's knowledge") (citation omitted).  Such information shall be obtained in discovery from Defendant.

2022), the Ninth Circuit interpreted section 631(a) of the California Penal Code as requiring "prior consent," and predicted that the California Supreme Court would interpret such statute in such manner.  *Id.* at *2.

Third, "'[c]onsent is … generally limited to the specific conduct authorized.'" *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023) (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data disclosure).  As the California Supreme Court has explained:

> "[W]e adhere to the view suggested in *Shulman[ v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic.  There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."

*Sanders v. Am. Bd. Co., Inc.*, 20 Cal. 4th 907, 915-16 (1999) (recognizing an "expectation of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.)).

"Consent is frequently evaluated using principles of contract to determine "whether the user 'agreed' " to the specific use or collection."  *Javier*, 2021 WL 940319, at *2 (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 789).  "Courts have cautioned that implied consent applies only in a narrow set of cases." *In re Google*, 2013 WL 5423918, at *12.  "The critical question with respect to implied consent is whether the parties whose communications were intercepted had ***adequate notice*** of the interception."  *Id.* (emphasis added).  "That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to

1  establish implied consent." *Id.* (emphasis in original); *United States v. Staves*, 383 F.3d
2  977, 981 (9th Cir. 2004) ("foreseeability of monitoring is insufficient to infer consent").
3  "The disclosures must have only one plausible interpretation for a finding of consent."
4  *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021).  "[I]f a reasonable
5  … user could have plausibly interpreted the contract language as not disclosing that [the
6  defendant] would engage in particular conduct, then [the defendant] cannot obtain
7  dismissal of a claim about that conduct (at least not based on the issue of consent)."  *Id.*
8  (quoting *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at
9  794).

10         **a.    Numerous Federal Court Decisions Reject Deciding the Issue of**
11                 **Consent at the Pleadings Stage.**

12         The Court should follow the numerous similar federal court decisions that have
13  rejected deciding the issue of consent as a matter of law at the pleadings stage in privacy-
14  related actions.  *Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar.
15  28, 2024) (Gee, J.); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024).

16  **C.    The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the**
17         **California Penal Code.**

18         **1.    An IP Address Constitutes a Consumer's Personal Information in**
19                 **California.**

20         Defendant argues that collecting a website user's IP address is not actionable under
21  California law because no reasonable expectation of privacy exists therein.  Defendant is
22  wrong.

23         Over the past decade, California law has expressly recognized a legally protected
24  privacy interest in IP addresses.  For example, in 2015, California's Legislature enacted
25  California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code §
26  1546 *et seq.*, which precludes the government from compelling internet service providers
27  to provide a user's IP addresses without a warrant or other limited exception.  (Penal Code
28  §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's

- 9 -

1  violation of CECPA by compelling production of or access to IP address of individual or
2  device participating in electronic communication without warrant or other limited
3  exception can result in suppression of evidence at trial).

4      More recently, in 2018, the California Legislature enacted into law the California
5  Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which
6  recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a
7  consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)).   The CCPA's
8  recognition supports a reasonable expectation of privacy in such personal information.
9  *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal.
10 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as***
11 ***plaintiff's IP address***….Google argues that such information is routinely shared and thus
12 cannot support a reasonable expectation of privacy.  Not so.  First, ***such information is***
13 ***personal information under California law and parties generally maintain a reasonable***
14 ***expectation in their personal information***.") (emphasis added) (citing Civ. Code §
15 1798.140).    Notably, Defendant's analysis omits such decision and section
16 1798.140(v)(1)(A), which identifies an IP address as a consumer's "personal
17 information."

18      In addition, the CCPA, which provides consumers with the right to know when a
19 business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)),
20 also provides:

21      "A business' collection, use, ***retention***, and sharing of a consumer's personal
22      information shall be reasonably necessary and proportionate to achieve the
23      purposes for which the personal information was collected or processed, or for
24      another disclosed purpose that is compatible with the context in which the personal
25      information was collected, and not further processed in a manner that is
26      incompatible with those purposes."

27 (Cal. Civ. Code § 1798.100(c)) (emphasis added).  And, the CCPA provides a consumer
28 with "the right to request that a business ***delete*** any personal information about the

- 10 -

consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)).  If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot **retain** personal information like a consumer's IP address in perpetuity if:  (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention. Clearly, Plaintiff has opted-out of such retention here.  Indeed, Plaintiff sent a pre-filing letter to Defendant on March 28, 2024, before Plaintiff filed suit on May 24, 2024.  If the Court would like such circumstances to be expressly pled, leave to amend should be granted.  Any confusion about Plaintiff's basis was dispelled when Plaintiff actually filed suit.  *Cf. Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (initial complaint's allegations provided CLRA notice for purposes of amended complaint); *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) (same).  Defendant is mistakenly acting as though it can ignore Plaintiff's opt-out with impunity.

### a.    Multiple Decisions Support Plaintiff's Position.

Multiple federal or California decisions support that collection of IP addresses violates § 638.51.  For example, the Court should follow the persuasive reasoning of *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d at 1050, which involved, *inter alia*, the collection of geolocation data by website data collectors.[2]  *Id.* at 1037.  *Greenley* explained:

> "***Today, pen registers take the form of software***. As a result, private companies and

---

[2] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act).

persons have the ability to hack into a person's telephone and gather the same information as law enforcement. Perhaps for this reason, ***the California legislature does not limit its prohibition on installing pen registers to law enforcement***. *Compare* Cal. Penal Code § 638.51 ("[A] *person* may not install or use a pen register ..." (emphasis added)), *with id.* § 638.52 ("A *peace officer* may make an application to a magistrate for an order ... authorizing ... the installation and use of a pen register ..." (emphasis added))."

684 F. Supp. 3d at 1050 (first and second emphasis added). *Greenley* added:

"Moreover, the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.' *See* Cal. Penal Code § [6]38.50(b). ***This indicates courts should focus less on the form of the data collector and more on the result***. Thus, the Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'*** (Am. Compl. ¶¶ 67, 74.) ***Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'***"

*Id.* (emphasis added). Like the allegations at issue in *Greenley*, the FAC's allegations allege that numerous spyware on the Website engage in precisely the same type of unique "fingerprinting" to de-anonymize visitors to the Website. (FAC ¶¶ 57-64.)

Notably, *Greenley*'s conclusion that tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51 has been cited with approval by two recent decisions. *Shah v. Fandom, Inc.*, - F. Supp. 3d -, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024) ("Based on the expansive statutory definition of a pen register, 'tracking

- 12 -

software could plausibly constitute a pen register under §§ 638.50 and 638.51.'") (quoting
*Moody v. C2 Educational Systems Inc.*, 2024 WL 3561367, *2 (C.D. Cal July 25, 2024)
(citing *Greenley*, 684 F. Supp. 3d at 1050)).

In addition, *Shah* and *Moody* recently denied motions to dismiss civil claims
alleging violations of § 638.51 based upon websites using tracking software. *Shah*, 2024
WL 4539577, at *2-*6; *Moody*, 2024 WL 3561367, at * 2-*4. *Shah* held that "the
Trackers operate as a 'process' under the meaning of the statute." *Id.* at *2. *Shah* also
held that "the IP addresses collected by the Trackers fall within the statutory definition of
'addressing' information." *Id.* at *3. "Nothing in the statutory definition limits pen
registers to those that operate the same way as a traditional phone pen register." *Id.*
Although *Shah* considered the same legislative materials cited by Defendant here (and
even more), *Shah* noted, "Nowhere in those materials did the Legislature state an intent
to add a statutory requirement limiting pen registers to those traditional [telephone-based]
forms." *Id.* at *4 n.2. "All that is required is that the Trackers record addressing
information transmitted by the user's computer or smartphone in connection with the
outgoing HTTP request to Fandom's website, regardless of whether that addressing
information pertains to the sender or the recipient of the communication at issue." *Id.* at
*3. "Giving effect to CIPA's broad statutory language is consistent with the California
Legislature's stated intent to protect privacy interests, as well as the California courts'
approach when applying statutes to new technologies." *Id.* at *4 (citing cases).

Similarly, *Moody* held that "software may qualify as a pen register or trap and trace
device under California law, at least at the motion to dismiss stage." *Id.* at *2 ("Though
§ 638.52 refers to pen registers and trap and trace devices as physically attached to
telephone lines, the definitions set forth under § 638.50 do not state any such
requirement."); *id.* at *3 ("Plaintiff's allegations that the TikTok Software is embedded in
the Website and collects information from visitors plausibly fall within the scope of §§
638.50 and 638.51.").

        **b.**    ***United States v. Forrester* Is Distinguishable and Unpersuasive.**

Defendant's reliance upon *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), is misplaced as it is distinguishable. First, *Forrester* had no occasion to consider whether an Internet user has a reasonable expectation of privacy as to the user's IP addresses on the user's devices.

Second, *Forrester* was decided in 2008, well before the CECPA and CCPA were enacted into law.[3]

Third, *Forrester* treated the "IP addresses of websites visited," as "unprotected addressing information," 512 F.3d at 510, because the Ninth Circuit viewed the "IP addresses of websites visited," as irrelevant to "know[ing] the particular pages on the websites the person viewed." *Id.* at 510. If the government could "know the particular pages on the websites the person viewed" by learning the "IP addresses of websites visited," then the outcome in *Forrester* may have been different. *Id.* at 510 n.6.

Fourth, *Forrester* was decided more than 15 years ago, before the identity resolution industry existed and before tracking software embedded into websites as "cookies" to track the specific webpages visited by Internet users became technically feasible amongst websites. Given that it is currently technically feasible to track the specific webpages visited by Internet users via tracking software code embedded into websites by learning the users' IP addresses on their computerized devices, *Forrester* is predicated upon outdated assumptions about computer technology, which is precisely why the Legislature enacted the CCPA and indicated that users' IP address constitutes personal information.

Finally, *Forrester* relied heavily upon *Smith v. Maryland*, 442 U.S. 735 (1979), the latter of which narrowly defined a "pen register" in relevant part as "a ***mechanical device*** that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released." 442 U.S. at 736 n.1 (emphasis added);

---

[3] Defendant's reliance upon *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), is misplaced for the same reason. And, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020), is unpersuasive because *Heeger* failed to address either the CECPA or the CCPA.

*Forrester*, 512 F.3d at 509-10.  As a law review article points out, however, *Smith* relied upon a definition of a "pen register" that was later significantly modified by the enactment of the Electronic Communications Privacy Act of 1986 ("ECPA"), § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986), which amended Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ("Wiretap Act").[4]  S. Freiwald, *Uncertain Privacy:  Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996).  Significantly, such 1986 enactment "omitted the Supreme Court's reference to the 'mechanical' nature of the pen register device, and it did not limit the pen register to something that acquired information about a telephone…."  *Id.*  The "final version of the ECPA omitted references to 'wire communications' that likely would have limited the use of pen registers to the interception of the numbers dialed in traditional telephone conversations."  *Id.*  "The ECPA's pen register could capture 'other impulses' besides electronic impulses and did not necessarily produce a paper record."  *Id.*  "The broadly worded ECPA pen register definition was clearly designed to handle the electronic communications that the ECPA brought under legislative protection."  *Id.*  Significantly, the ECPA "***omitt[ed] language limiting the types of information a pen register could acquire***."  *Id.* (emphasis added).  Indeed, even at the time that such law review article was published in 1996, courts had already "regarded as pen registers devices that incorporate computer hardware and software."  *Id.* at 987 & n.183 (citing cases).  The subsequent enactment of the federal USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56, § 216, 115 Stat. 272 (2001), further modified the "pen register" definition to cover software processes that collect information.  Notably, *Forrester* considered the "pre-October 2001 version of the pen register statute" because

---

[4] "Prior to 1986, there was no federal statute that governed the use of pen registers and trap-and-trace devices.…Title III [of the Wiretap Act] was silent … as to the use of pen registers or other devices that could intercept non-content information.…In *Smith*…, … the Court held that pen registers…could be installed and operated without the need for a court order.  In 1986, Congress changed that regime with the enactment of the [ECPA]. That statute added a provision authorizing the government to install and use pen registers and trap-and-trace devices, but only upon obtaining a court order."  *In re Certified Question of Law*, 858 F.3d 591, 600-01 (FISCR 2016).

the surveillance at issue took place in May-July 2001. *Id.* at 512 & n.7. Thus, *Forrester* did not consider the effect of the Patriot Act's amendment to the "pen register" definition on its decision. Nor did *Forrester* recognize that the version of the "pen register" definition in the ECPA applicable to that appeal had significantly changed from the version of the definition considered decades earlier by the Supreme Court in *Smith* before any federal statute governed the use of pen registers and trap-and-trace devices.

## 2. Defendant's Consent Argument Is Without Merit.

Defendant's consent argument is without merit for the reasons set forth above in section II.B.5, *supra*.

In addition, Defendant conveniently ignores paragraph 56 of the FAC, which alleges in relevant part:

> "56. Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services ***immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner***. In addition, ***the Website is designed so that a visitor can navigate through the various webpages of the Website without having to make any cookie-related preferences. In other words, a visitor to the Website can read the content of various webpages without having to make any cookie-related preferences.***"

(FAC ¶ 56) (emphasis added).

Moreover, if anything, the specific use of an Internet user's IP address for the user's computerized device implicitly agreed upon by the user is the disclosure of the device's IP address solely to communicate with the website visited by the Internet user. Any such limited and narrow consent to the use of the Internet user's IP address, however, is limited to communicating with the website that the user wants to visit. Users do not expect the IP address on their device to be collected by surreptitious tracking software code embedded into the websites that they visit with the goal of de-anonymizing such website visitors so that their website history can be tracked and monetized by those involved in

the identity resolution industry.

Dated:  November 25, 2024          PACIFIC TRIAL ATTORNEYS, P.C.

By:  */s/ Scott J. Ferrell*

Scott. J. Ferrell
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,597 words, which complies with the word limit of Doc. 11 at 3:26-4:1.

Dated:  November 25, 2024

*/s/ Scott J. Ferrell*
Scott J. Ferrell