JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 So. Grand Avenue
Suite 2700
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant,
AUTOTRADER.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,<br><br>Defendant. | Case No. 2:24-cv-08735-RGK-JC<br><br>**AUTOTRADER.COM, INC's REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: December 16, 2024<br><br>Time: 10:00 a.m.<br><br>Dept: Courtroom 850<br><br>Judge: Hon. R. Gary Klausner |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL ARGUMENT ........ 1

A. The FAC Fails To State a Claim Under Cal. Penal Code § 638.51(a). ........ 1

1. The only consent required for "installation" of software is Autotrader's, which it concededly provided. ........ 1

2. Merely collecting IP addresses, as required to operate a website, does not constitute an illegal pen register or trap and trace device. ........ 2

3. Plaintiff consented to the recording of her IP address in any event. ........ 4

B. Plaintiff Lacks Standing To Sue Under Cal. Penal Code § 631(a). ........ 6

C. The FAC Fails To State a Claim Under Cal. Penal Code § 631(a). ........ 6

1. Plaintiff fails to plead that any service provider fell outside CIPA's party exception. ........ 7

2. Plaintiff fails to plead that any service provider intercepted her search bar communications "in transit." ........ 9

3. In any event, Plaintiff consented to the alleged involvement of third parties. ........ 10

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................6

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. 2023)....................6

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. 2009)....................2, 3

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020)....................6

*Garcia v. Build.com, Inc.*,
2024 WL 1349035 (S.D. Cal. 2024)....................9

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. 2023)....................8, 9, 10

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................2, 3

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................4, 5

*In re Innovatio IP Ventures, LLC Patent Litigation*,
886 F. Supp. 2d 888 (N.D. Ill. 2012)....................2, 3

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)....................8, 9

*Lefkowtiz v. Scytl USA*,
2016 WL 537952 (N.D. Cal. 2016)....................1, 3

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)....................9

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 7, 9

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. 2023) .......... 6

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. 2013) .......... 4, 5

*Moody v. C2 Educational Systems Inc.*,
2024 WL 3561367 (C.D. Cal 2024) .......... 3

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 7, 8

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. 2024) .......... 3

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. 2021) .......... 4

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) .......... 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) .......... 4, 5

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. 2024) .......... 7, 8

**Statutes**

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 638.50 .......... 5

Cal. Penal Code § 638.51 .......... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's claims under Cal. Penal Code §§ 638.51 and 631(a) each fail as a matter of law on several independent grounds. Her opposition brief ("Opposition"), a rough cut and paste job from other cases, does not even dispute all grounds for dismissal identified in Autotrader's motion to dismiss ("Motion"). And to the extent Plaintiff attempts to address certain grounds, she ignores virtually all of the Motion's cited authority in favor of distinguishable or entirely inapt case law. None of that is surprising, but all of it is fatal. Worse still, Plaintiff improperly attempts to evade this Court's word limit by filing a second brief styled as an opposition to Autotrader's one-page request for judicial notice, ECF No. 16, but containing ***thousands*** of words of additional argument on the merits of Autotrader's Motion rather than the propriety of judicial notice. The Court should disregard and strike that entire filing as violating Section 6 of its Standing Order, regardless of the fact that the additional arguments there do nothing to rescue Plaintiff's legally deficient claims.

## II. LEGAL ARGUMENT

### A. The FAC Fails To State a Claim Under Cal. Penal Code § 638.51(a).

#### 1. The only consent required for "installation" of software is Autotrader's, which it concededly provided.

Autotrader's Motion identified three independent reasons to dismiss Plaintiff's § 638.51 claim. First, even if Plaintiff had pleaded the existence of a "pen register" or "trap and trace device," her claim would still fail because § 638.51 permits the installation of such a device with "the consent of the ***user of that service***." Cal. Penal Code § 638.51(b) (emphasis added). Here, the "user of that service" is Autotrader, which concededly consented. Mot. § IV.A.2. Plaintiff "fails to respond to this argument" because there is no response, "and therefore concedes it through silence." *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. 2016) (citation omitted). The Court should dismiss on that basis alone.

### 2. Merely collecting IP addresses, as required to operate a website, does not constitute an illegal pen register or trap and trace device.

Plaintiff does not dispute that a California court just dismissed this same claim—in a nearly identical suit brought by this same Plaintiff—on the separate ground that an "IP address is not the type of information that parties are prohibited from collecting by CIPA." ECF No. 16, Ex. A, at 7. Nor does she seriously confront the wealth of case law on which that recent California decision built, which likewise holds that criminal pen register prohibitions do not apply to the collection of IP addresses. *See, e.g.*, *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. 2009); *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012).[1] Instead, she seeks only to distract with a pair of irrelevant and incorrect assertions, none of which moves the needle.

*First*, Plaintiff insists (at some length) that "an IP address constitutes a consumer's personal information." Opp. 9 (capitalization altered). That is wholly beside the point. The issue here is not whether an IP address can be described as "personal information," but rather whether Penal Code § 638.51 governs its collection. And on that crucial issue Plaintiff is silent. Indeed, while she walks through a series of *other* statutes not at issue here, *see* Opp. 9-11, she conspicuously makes no mention of § 638.51 itself. Plaintiff's primary argument is thus wholly irrelevant, while the state court's holding in *Plivo* is well-reasoned and applicable.

*Second*, Plaintiff argues (again, at some length) that *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), "support[s] that collection of IP addresses violates § 638.51." Opp. 11-12. But as Autotrader already explained—in a discussion Plaintiff simply ignores—*Greenley* "did not involve allegations of software that merely collected a website visitor's IP address." Mot. 7, n.1. Instead, as Plaintiff

---

[1] Plaintiff does not mention *Innovatio* at all, and all she has to say about *Capitol Records* is that it was decided "before the CECPA and CCPA"—two statutes not at issue here—"were enacted into law." Opp. 14 & n.3.

admits, *Greenley* assessed liability for "the collection of geolocation data," not merely IP addresses. Opp. 11; *accord* 684 F. Supp. 3d at 1037. Just as important, *Greenley* did not grapple with any of the longstanding authorities running contrary to its position (discussed above and in Autotrader's Motion) and instead believed itself—incorrectly—to be writing on a clean slate. *See id.* at 1050 ("[I]t seems no court has interpreted this provision of CIPA."). Because "Plaintiff fails to respond to th[ese] argument[s] [she] therefore concedes [them] through silence." *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. 2016).

These same defects plague the two *Greenley* follow-on cases that Plaintiff cites as well. Opp. 12 (citing *Moody v. C2 Educational Systems Inc.*, 2024 WL 3561367, *2 (C.D. Cal 2024); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *4 (N.D. Cal. 2024)). Just like *Greenley* itself, neither of those cases actually presents—much less rules on—the question of whether collection of IP addresses violates § 638.51. In *Moody*, the plaintiff "d[id] not allege that the TikTok Software records only IP addresses," but rather claimed that it "recorded various other types of information" as well. *Moody*, 2024 WL 3561367, *2. And in *Shah*, the court considered only an argument that "IP addresses are the 'contents' of [a] communication," and therefore beyond § 638.51's coverage—not the argument advanced here (and adopted in cases like *Plivo*, *Innovatio*, and *Capitol Records*) that pen register laws like § 638.51 simply do not apply to collection of IP addresses at all. *Shah* and *Moody* also fail to acknowledge any of the applicable caselaw which had already long held that pen register laws like § 638.51 do not apply to the collection of IP addresses.

Plaintiff thus offers no persuasive reason for departing from the path charted by cases like *Plivo*—the only California state court decision that either side has cited on this question of state law. And while the Court should not consider the improper merits arguments in Plaintiff's purported opposition to judicial notice, they rehash the same faulty logic. This Court should dismiss for that reason alone.

**3. Plaintiff consented to the recording of her IP address in any event.**

Plaintiff does not dispute that even if her consent were required here, which it is not, such consent exists if Plaintiff proceeded in circumstances where she either "actually expected the [communication] to be recorded," *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013), or where "a reasonably prudent user would have been aware" that their information was being recorded, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. 2021); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013). *Compare* Mot. § IV.A.3, *with* Opp. 16. Nor does she seriously dispute that both of those conditions (either of which alone would be enough to defeat her claim) were met here. Plaintiff does not deny that she actually expected her IP address to be recorded upon visiting Autotrader's website. *See* Opp. 16. Nor does she deny that—as numerous courts have held—a reasonably prudent user who visits a website "consensually engaged in [an internet] transaction" with a website implicitly consents to "communicate[] h[er] IP address as part of" that transaction, such that the laws prohibiting pen registers and trap and trace devices "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. 2013); *see also United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020).[2] Instead, Plaintiff once again seeks to sidestep that caselaw

---

[2] Plaintiff devotes more than two pages of her brief running through a litany of reasons for why *Forrester* is supposedly "distinguishable." Opp. 14-16. Plaintiff's belabored quibbling with *Forrester* is baffling, however, given that Plaintiff ultimately agrees with the part of *Forrester* that is relevant here—that by visiting a website a user "implicitly agree[s]" to "the disclosure of [her] device's IP address," Opp. 14—making this discussion wholly irrelevant. What is more, most of Plaintiff's attacks on *Forrester* do not so much seek to distinguish it as to argue that it is no longer—and indeed, never was—good law. *See* Opp. 14-16 (suggesting that *Forrester*'s holding is somehow inconsistent with various statutes—despite *Forrester* itself not implicating any of those statutes—such as the CECPA, the CCPA, ECPA, and the Patriot Act). It goes without saying, though, that this Court is the wrong forum for Plaintiff to press arguments that the Ninth Circuit should

through a series of spurious and irrelevant arguments.

*First*, Plaintiff's primary response is simply to block quote her FAC, which seems to suggest that consent is impossible because a user's IP address is recorded before the user "consent[s] to or decline[s] the Website's privacy policy or cookie banner." Opp. 16. But, as explained above (and in Autotrader's Motion), the consent here comes not from a cookie banner or privacy policy, but from (1) Plaintiff's subjective expectation that Autotrader's website would record her IP address; and (2) the fact that any prudent internet user would understand that every website necessarily records the IP address of every internet visitor, *see Heeger*, 509 F. Supp. 3d at 1190; *Forrester*, 512 F.3d at 510. Plaintiff does not dispute those points.

*Second*, after much hemming and hawing, Plaintiff finally acknowledges (as she must) that a website user does, in fact, "agree[] … [to] the disclosure of [her] devices IP address." Opp. 16. But Plaintiff insists that her "consent to the use of [her] IP address" was "limited to communicating with the website that the user wants to visit," and did not extend to collection "with the goal of de-anonymizing such website visitors." Opp. 16. Once again, Plaintiff's argument bears no relation to the relevant inquiry. To the extent § 638.51 requires consent from Plaintiff at all (and as explained above and in Autotrader's Motion, it does not), that consent is related solely to the *collection* of data, not its subsequent *use*. That is because § 638.51 governs only the "record[ing]" or "captur[ing]" of data; it imposes no restriction on how that captured data is subsequently used. Cal. Penal Code § 638.51(a) (regulating a "pen register" or "trap and trace device"); *id.* § 638.50(b)-(c) (defining a "pen register" and "trap and trace device" by reference to how data is "record[ed]" or "captur[ed]"). If the

---

reconsider its own precedent. Finally, it is worth noting that *Forrester* is not nearly an outlier; *Malibu Media* and *Heeger* (to name just two recent cases) stand for the same proposition. Plaintiff does not contest *Malibu Media*'s application here at all; and as to *Heeger*, all Plaintiff says is that it "failed to address either the CECPA or the CCPA," Opp. 14, n.3.—two statutes that were not at issue in the case (or in this one). Ultimately, then, Plaintiff's discussion of *Forrester* is nothing but a distraction.

data collection itself is lawful, then § 638.51 has no more role to play. And Plaintiff undisputedly consented to the *collection* of her IP address.

**B. Plaintiff Lacks Standing To Sue Under Cal. Penal Code § 631(a).**

Plaintiff mistakenly suggests that ***any*** violation of § 631(a) implicates a "dignitary interest" that automatically confers Article III standing. Opp. 1-3. That equates a "statutory violation" with a "concrete injury" in precisely the way the Supreme Court has rejected. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Instead, the information must be sufficiently "sensitive" to establish a "material," rather than merely nominal, "risk of harm"—a test the FAC fails. *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4-5 (S.D. Cal. 2023) (flight pricing information insufficiently sensitive to confer standing); *see Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. 2023) (no standing absent allegations of sensitive information); *cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) (conferring standing, even before *TransUnion*, only because defendant allegedly collected information "no matter how sensitive"). It makes no difference that the *Byars* court later denied reconsideration. Opp. 2-3. That simply confirms the cited opinion is valid. Plaintiff also cannot dispute that Autotrader's cookie banner informed her of information sharing in a way that dispelled any expectation of privacy. Mot. 10. Her attempt to recast this as a traceability issue, Opp. 3-4, is simply a distraction.

**C. The FAC Fails To State a Claim Under Cal. Penal Code § 631(a).**

Plaintiff also fails to salvage her § 631(a) claim on the merits. The FAC alleges only that Autotrader is ***vicariously*** liable for third-party service providers who violated § 631(a)'s ***second*** clause. *See* FAC ¶¶ 145-46. Thus, her entire argument that Autotrader could be ***directly*** liable for violating § 631(a)'s ***first*** clause is immaterial. Opp. 6. And, in any event, it is wrong. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023). Plaintiff's actual theory fails because the FAC does not plead that any service provider directly violated § 631(a)'s second clause, for three

independent reasons. Mot. 10-17. Plaintiff fails to rebut any of them.

**1. Plaintiff fails to plead that any service provider fell outside CIPA's party exception.**

First, the FAC does not plead facts showing that any service provider fell outside CIPA's party exception. Plaintiff does not dispute that a service provider is entitled to that exception, and cannot violate § 631(a)'s second clause, when it acts as "an extension of" the website itself, like the manufacturer of a "tape recorder." *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) (collecting cases); Mot. 11. Nor does Plaintiff contest that several recent decisions, including one dismissing her complaint in another case, have invoked that rule at the pleading stage and applied the party extension to service providers who powered a website's chat feature. *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *3-4 (C.D. Cal. 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024); Mot. 12. The plaintiffs there alleged that service providers "'captur[ed]' data" in order to operate chat services on ***the websites' behalf***, but they did not adequately allege that the providers exceeded the bounds of the party exception, and committed "a Section 631(a) violation," by using the data for ***their own*** purposes. *Valenzuela*, 2024 WL 1336959, at *4; *see Rodriguez*, 722 F. Supp. 3d at 1124.

Plaintiff's allegations fail to state a claim for the same reason. The FAC pleads no facts showing that any service provider went beyond "capturing" search queries as an extension of Autotrader, which is legal, and used data for their own independent purposes, which could violate § 631(a). Mot. 12-14. Indeed, Plaintiff now admits (Opp. 7 n.1) that she filed this suit without even ***identifying*** the supposed "Third Party Search Engine Provider." FAC ¶ 94. No surprise, then, that she pleads no facts about how that unknown company might employ data for its own unknown "products and services." Mot. 12-13 (quoting FAC ¶ 97). The FAC likewise pleads no facts showing that "tracking tools" independently used search queries—just conclusory legal assertions entitled to no weight. *Id.* at 11-13 (citing FAC ¶¶ 88, 96, 100, 118).

Plaintiff's brief response (Opp. 6-7) fails to address any of those defects, arguing simply that this Court should echo its prior decision in *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006 (C.D. Cal. 2023), which declined to dismiss a § 631(a) claim. But *Yeti* differs from this case in ways that highlight the FAC's inadequacies. For one thing, the plaintiff in *Yeti* waited to file suit until she had actually identified the service provider at issue—a vendor of chat software called Ada Support Inc. *Id.* at *1. So the *Yeti* complaint, unlike the FAC here, was able to allege specific facts about how that vendor's software worked—including that it nearly instantaneously saved "recordings of chats between Defendant and consumers" to its "servers" and subsequently transmitted those recordings to "social media platforms." *Id.* at *1, 4. The *Yeti* plaintiff also pleaded more specific facts about how those platforms used data for their own purposes—namely, by "bombard[ing] the unsuspecting Website visitors with targeted advertising based upon the user's Website visits and interactions." *Id.* at *1. The FAC pleads no comparable facts; it alleges merely that Autotrader's website "reports the URL containing the user's search term" to various entities, without any mention of how (if at all) any particular entity used the information. FAC ¶¶ 102-07. All of that puts this case in line with the dismissal orders in *Valenzuela* and *Rodriguez*, not *Yeti*.

Plaintiff also contends that the party exception cannot apply to Autotrader's unknown search engine provider because the FAC "plausibly alleged" that it is "***capable*** of using users' search terms for marketing purposes." Opp. 7. As explained, however, Plaintiff has not plausibly alleged anything about that provider's capability for independent use; she did not bother identifying the provider before suing and so offers only conclusory allegations that an unknown company somehow employs search queries for unknown "products and services." FAC ¶ 97. That is just not enough to state a claim. Even if a service provider's mere capability for independent use were enough to escape the party exception, *see Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023), the FAC would not meet that standard—the

mere fact that the provider receives search queries does not suffice. *See, e.g.*, *Garcia v. Build.com, Inc.*, 2024 WL 1349035, at *6 (S.D. Cal. 2024). And *Javier*'s standard is wrong in any event. The proper inquiry, as many courts have held, is whether the service provider ***actually used*** data for its own independent purposes—something Plaintiff does not even purport to allege. *Licea*, 683 F. Supp. 3d at 1123 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)).

### 2. Plaintiff fails to plead that any service provider intercepted her search bar communications "in transit."

Even if the service providers here were not entitled to the party exception, the FAC separately fails to plead that they violated § 631(a) by unlawfully intercepting Plaintiff's search queries "in transit." Mot. 14-16. Plaintiff does not dispute that merely alleging interception was "contemporaneous" with the "transit" of search queries, FAC ¶ 145, is too conclusory to plead this statutory element. Mot. 14-15. Nor does she contest that, as the Motion explained, the remainder of the FAC's pleadings are at best ambiguous as to whether any service provider accessed search queries during or only after their transmission to Autotrader's website. Mot. 15-16. The FAC thus leaves the "timeline" of the service providers' access "unclear," which means Plaintiff has not pled any provider's § 631(a) violation. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023).

Plaintiff's only response is to invoke *Yeti*. Opp. 7. Once more, the contrast between the cases underscores the FAC's deficiencies. As noted, the *Yeti* plaintiff actually identified, and described in some detail, the service provider at issue and how its chat software functioned. *Supra* 7. It was those details, all of which are absent here, that led the Court to deem the "in transit" allegations more than "conclusory." *Yeti*, 2023 WL 5736006, at *4. Indeed, *Yeti* emphasized that the plaintiff "Plaintiff does not merely recite the elements of her claim by stating that [the chat provider] read her messages while they were in transit," *id.*—precisely the sort of conclusory allegation that the FAC relies on. "Instead, [the *Yeti* plaintiff] sets forth factual

allegations regarding the routing of her chat messages through [the chat provider's] servers that occurred simultaneously with her use of the Website's chat function." *Yeti*, 2023 WL 5736006, at *4. The FAC offers nothing of the kind.

#### 3. In any event, Plaintiff consented to the alleged involvement of third parties.

Plaintiff does not dispute that by continuing to use Autotrader's website (including its search bar) after being presented with Autotrader's cookie banner, she consented to the disclosed terms—namely, that Autotrader "uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website" and "share[s] information about your use of our site with our social media, advertising, and analytics partners." FAC ¶ 101. Plaintiff's only response is to suggest that those disclosures did not clearly inform her that Autotrader would ***actually*** share her "communication" with third parties, because they could "plausibl[y]" have meant merely that Autotrader had the "***capacity***" to do so but would not act on it. Opp. 8-9 (citations omitted). That is nonsensical. The banner did not inform Plaintiff that Autotrader "could" or "might" use cookies or share information about her use of the website. It expressly disclosed that Autotrader in fact "uses" cookies and "shares" information in those ways. Plaintiff consented to those activities and cannot now bring suit under § 631(a), which prohibits interception only "without the consent of all parties."

## III. CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC with prejudice.

Dated: December 2, 2024

JACOB M. HEATH
THOMAS K. FU
Orrick, Herrington & Sutcliffe LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
Attorneys for Defendant
AUTOTRADER.COM, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Autotrader, certifies that this Memorandum of Points and Authorities is no more than 10 pages and otherwise complies with the Court's Standing Order.

By: */s/ Jacob M. Heath*
JACOB M. HEATH
Attorneys for Defendant
AUTOTRADER.COM, INC.