**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ, | Case No. 2:24-cv-08735-RGK-JC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO RECONSIDERATION OR CERTIFICATION FOR INTERLOCUTORY APPEAL** |
| v. | |
| AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM, | |
| Defendant. | [Request for Judicial Notice; [Proposed] Order lodged concurrently herewith] |
| | Date:        February 24, 2025 |
| | Time:        10:00 a.m. |
| | Courtroom:   850 |
| | Judge:       Hon. R. Gary Klausner |

# TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................... 1

  A.   Applicable Standard .................................................................... 1

  B.   Defendant Has Failed to Satisfy Its Burden of Showing Why
       Reconsideration of the Portion of the Order Denying the Original Motion
       Regarding Plaintiff's Claim Alleging the Violation of Section 638.51 of
       the Penal Code Is Warranted. ...................................................... 1

  C.   Defendant Has Failed to Satisfy Its Burden of Showing Why
       Reconsideration of the Portion of the Order Granting Leave to Amend the
       First Amended Complaint to Allege Standing to Sue to Support Plaintiff's
       Claim Alleging the Violation of Section 631(a) of the Penal Code Is
       Warranted. ................................................................................... 7

       1.   Defendant Has Never Presented to the Court a Legible Version of
            Its Cookie Banner In Existence at the Time of Plaintiff's 2024 Visit
            to the Website, Which Was Before May 24, 2024. ......................... 7

       2.   There Is Nothing to Indicate that Paragraph 101 of the FAC
            "Squarely Contradicts" Paragraph 112 of the FAC. ....................... 8

  D.   Defendant Has Failed to Satisfy Its Burden of Showing Why Certification
       of the Portion of the Order Denying the Original Motion Regarding
       Plaintiff's Claim Alleging the Violation of Section 638.51 of the Penal
       Code For an Interlocutory Appeal Is Warranted. ......................... 11

       1.   There Is No "Controlling Question of Law" as Narrowly Framed by
            Defendant. .......................................................................... 12

       2.   Defendant Has Failed to Show Substantial Grounds for Difference
            of Opinion. ......................................................................... 13

            a.   *Plivo* Provides No Guidance of California Law. .................. 14

            b.   *Mirmalek v. Los Angeles Times Comms. LLC* Provides
                 Additional Support for Plaintiff's Position. ......................... 15

       3.   Defendant Has Failed to Show that an Immediate Appeal May
            Materially Advance the Ultimate Termination of the Litigation. .... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barker v. Riverside County Office of Education*,
584 F.3d 821 (9th Cir. 2009) .................................................................................6

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................12

*Danford v. City of Syracuse*,
2012 WL 4006240 (N.D.N.Y. Sept. 12, 2012)....................................................15

*Este-Green v. Astrue*,
2009 WL 2473509 (N.D.N.Y. Aug. 7, 2009) ......................................................15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)...................................................... *passim*

*Hagerty v. Azar*,
488 F. Supp. 3d 958 (D. Mont. Sept. 23, 2020)..................................................15

*ICTSI Or., Inc. v. International Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ..............................................................................12

*In re Cement Antitrust Litig. (MDL No. 296)*,
673 F.2d 1020 (9th Cir. 1981), *aff'd*, 459 U.S. 1190, 103 S. Ct. 1173
(1983) ...................................................................................... 11, 12, 13

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012).................................................................5

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) (Morrow, J.).........................................15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..................................................................2, 3, 16

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) ....................... *passim*

*Moffit v. Berryhill*,
2018 WL 276770 (D. Kan. Jan. 3, 2018)............................................................15

*Moody v. C2 Educ. Systems Inc.*,
 - F. Supp. 3d -, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (Klausner, J.)................................................................................................................16

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ............................................................10

*Reese v. BP Exploration (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011) .............................................................14

*Safari Club v. Rudolph*,
 No. 8:13-cv-01989-JVS-AN, Doc. 60, Page ID #770 (C.D. Cal. May 14, 2014) (Selna, J.) .............................................................................15

*Scheuer v. Rhodes*,
 416 U.S. 232 (1974).............................................................................6

*Segovia v. Fuelco Energy LLC*,
 2024 WL 1161730 (W.D. Tex. Mar. 18, 2024)..................................15

*Shah v. Fandom, Inc.*,
 - F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .................. *passim*

*Shurance v. Planning Control Int'l, Inc.*,
 839 F.2d 1347 (9th Cir. 1988) ...........................................................17

*Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*,
 760 F.3d 307 (3d Cir. 2014)...............................................................15

*United States v. Philip Morris USA Inc.*,
 793 F. Supp. 2d 164 (D.D.C. 2011)...................................................15

*United States v. Forrester*,
 512 F.3d 500 (9th Cir. 2008) .....................................................2, 3, 16

*Wilson v. Huuuge, Inc.*,
 944 F.3d 1212 (9th Cir. 2019) ...........................................................10

**California Cases**

*Budrow v. Dave & Buster's of Cal., Inc.*,
 171 Cal. App. 4th 875 (2009), *rev. denied* (June 17, 2009) ...............14

*Crab Addison, Inc., v. Superior Court*,
 169 Cal. App. 4th 958 (2008), *rev. denied* (Mar. 18, 2009)...............14

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .............................................................10

*Neary v. Regents of the University of California*,
    3 Cal. 4th 273 (1992) ...........................................................................14

*Rodriguez v. Plivo Inc.*,
    24STCV08972 (Cal. Super. Ct. Oct. 3, 2024) (Windham, J.).......................2, 14

*Santa Ana Hospital Medical Center v. Belshe*,
    56 Cal. App. 4th 819 (1997) ...............................................................14

*Sellers v. Just Answer LLC*,
    73 Cal. App. 5th 444 (2021) ...........................................................10, 11

**Federal Statutes**

28 U.S.C.
    § 1292(b) ........................................................................................11, 13

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub.
    L. No. 90-351, 82 Title III Stat. 197 (1968) .........................................5

**California Statutes**

Penal Code
    § 631.......................................................................................................5
    § 631(a) .................................................................................... *passim*
    § 638.50...............................................................................................16
    § 638.50(b).....................................................................................2, 3, 4
    § 638.50(c).....................................................................................2, 3, 4
    § 638.51 .................................................................................... *passim*
    California Invasion of Privacy Act ...................................................15

**Federal Rules**

L.R. 7-18 ................................................................................... *passim*

**Other Authorities**

Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice (2025)
    ¶ 2:160.1 .............................................................................................12
    ¶ 2:160.10 .....................................................................................13, 14
    ¶ 2:160.16 ...........................................................................................17

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    ARGUMENT**

**A.    Applicable Standard**

L.R. 7-18 provides in relevant part:

"A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) *a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered*, or (b) the emergence of new material facts or a change of law occurring after the  Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.  *No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion*."

(L.R. 7-18) (emphasis added).

**B.    Defendant Has Failed to Satisfy Its Burden of Showing Why Reconsideration of the Portion of the Order Denying the Original Motion Regarding Plaintiff's Claim Alleging the Violation of Section 638.51 of the Penal Code Is Warranted.**

Defendant has failed to satisfy its burden of showing why reconsideration of the portion of the Order denying the dismissal of Plaintiff's claim alleging the violation of section 638.51 of the Penal Code[1] in the First Amended Complaint ("FAC") (Doc. 1-1) is warranted.

Defendant contends that the Order entered on January 9, 2025 (Doc. 25) (the "Order") in this action granting in part and denying in part Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint (Doc. 15) (the "Original Motion") "*strayed* from the bounds of the FAC, and the underlying statute, by allowing the § 638.51 claim to proceed based on the supposed collection of *additional* information that played no role

---

[1] All references herein to the "Penal Code" are to the California Penal Code.

in routing communications," and that the "ruling impermissibly endorsed a legal theory that Plaintiff never advanced—and could not possibly make as a matter of law." (Def.'s Mem. at 2:4-10) (first emphasis added; second emphasis in original). Not so.

First, Defendant's argument regarding why the Court should reconsider the portion of its Order denying the dismissal of the claim alleging a violation of section 638.51 of the Penal Code improperly seeks to repeat Defendant's written argument made in support of its Original Motion in violation of L.R. 7-18 ("No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."). For example, Defendant relies heavily upon a state trial court order, *Rodriguez v. Plivo Inc.*, 24STCV08972 (Cal. Super. Ct. Oct. 3, 2024) (Windham, J.), in support of the instant Motion, (Def.'s Mem. at 1:28-2:3; 5:12-14), which is the same order that Defendant heavily relied upon in support of its Original Motion in both its initial Memorandum and in its Reply. (Doc. 15 at 5:7-11; 6:25-7:1; Page ID #188-#190; Doc. 19 at 2:3-6; 2:20; Page ID #304.) Defendant even requested that the Court take judicial notice of the *Plivo* order in support of the Original Motion. (Doc. 16, 16-1; Page ID #206-#217.)

In addition, although Defendant implicitly characterizes subdivisions (b) and (c) of section 638.50 as limited to "routing communications," (Def.'s Mem. at 2:6-7; *id.* at 4:14), Defendant ignores that such subdivisions also refer to "addressing" information. As Plaintiff explained in opposition to the Original Motion, in *Shah v. Fandom, Inc.*, - F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), the court held that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information." *Id.* at *3 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)); (Doc. 18 at 7-9; Page ID #263). Similarly, in *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (Breyer, J.), the court explained:

"As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication

than do phone numbers.' ' "

*Id.* at *4 (quoting *In re Zynga Priv. Litig.*, 750 F.3d at 1108 (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008))).  The FAC alleged that the spyware beacons on the website at:  www.autotrader.com (the "Website") collected the IP address of Plaintiff's device.  (FAC ¶ 70.)  That, alone, was sufficient to justify the Order's denial of the Original Motion seeking the dismissal of the section 638.51 claim.  After all, the Ninth Circuit's holding that IP addresses constitute "addressing" information is binding on this Court.

Instead of making any attempt to address the foregoing, Defendant goes off on a tangent in the instant Motion by contending that the Court erred by "mistakenly conclud[ing] that Plaintiff's § 638.51 claim could proceed by virtue of ["operating system information, browser information, geolocation data, and email addresses" as stated on page 7 of the Order].  (Def.'s Mem. at 5:18-19.)  In other words, Defendant's current position is that "operating system information, browser information, geolocation data, and email addresses" cannot as a matter of law constitute "routing, addressing, or signaling information" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code.  But, Defendant's Original Motion sought to distinguish the decision in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), from the instant action by arguing instead that "*Greenley*—unlike this case—did not involve allegations of software that merely collected a website visitor's IP address."  (Doc. 15 at 7 n.1; Page ID #190.)  By negative inference, Defendant's Original Motion argued that *Greenley* involved allegations of software that collected data beyond a website visitor's IP address.  In Defendant's Reply, Defendant repeated that same argument by arguing that Plaintiff ignored that "*Greenley* 'did not involve allegations of software that merely collected a website visitor's IP address.'"  (Doc. 19 at 2:23-25; Page ID #304.)  Thus, Defendant's current position is inconsistent with its position asserted in the Original Motion.  Defendant's current argument is unlike its argument set forth in the Original Motion.

Notably, Defendant's Original Motion ignored that Plaintiff, in analyzing what

- 3 -

constitutes a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code, quoted *Greenley* for the following crucial proposition:

> "'A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***'"

(Doc. 18 at 12:17-19) (emphasis in original) (quoting *Greenley*, 684 F. Supp. 3d at 1050). Indeed, in *Greenley*, the defendant's software developer kits ("SDKs") intended for use in third-party software applications for the defendant's corporate clients such as Airbnb, Disney, and Kroger allegedly collected the IP address of app users as well as other user data. Although *Greenley* does not expressly address the collection of IP addresses in addressing the allegations of the first amended complaint at issue therein, a review of the first amended complaint filed in *Greenley* clearly shows the existence of such allegation as follows:

> "This data collection includes all sorts of website information, as well as Plaintiffs' and Class Members' respective ***IP addresses***, browser and device information, user IDs, geolocation data, and other data, [and] are used by Defendant to 'fingerprint' individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties."

(First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55; Page ID.107; RJN Ex. 1) (emphasis added). Thus, *Greenley*'s reference to software constituting a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code that "identifies consumers," "gathers data" and "correlates that data through unique 'fingerprinting,'" is intended to refer to a ***combination*** of IP addresses ***and other user data*** in order to "fingerprint" individuals across the internet.

In *Shah*, the court quoted *Greenley* as follows:

> "As Plaintiffs allege, the Trackers are 'at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.'"

2024 WL 4539577, at *2 (quoting FAC ¶¶ 39, 49, 59 (quoting *Greenley*, 684 F. Supp. 3d at 1050)).

Similarly, in *Mirmalek*, the court quoted *Greenley* as follows:

> "Plaintiff alleges that the third-party Trackers are 'at least a process' because they are ' 'software that identifies consumers, gathers data, and correlates that data.' ' "

2024 WL 5102709, at *3 (quoting Compl. ¶ 32 (quoting *Greenley*, 684 F. Supp. 3d at 1050)).  Thus, two other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data.  That is precisely what the FAC in the instant action alleges as substantiated by a computer expert who has assessed Defendant's Website.  (FAC ¶¶ 55-64.)  Plaintiff's position should come as no surprise because Plaintiff's Opposition to the Original Motion argued:

> "Like the allegations at issue in *Greenley*, the FAC's allegations allege that numerous spyware on the Website engage in precisely the same type of unique 'fingerprinting' to de-anonymize visitors to the Website."

(Doc. 18 at 12:22-24) (citing FAC ¶¶ 57-64).  Defendant's implicit argument that "operating system information, browser information, geolocation data, and email addresses" are completely irrelevant to fingerprinting Website visitors is unsubstantiated.  At minimum, Defendant's argument raises factual questions that are premature to be decided as a matter of law at the pleadings stage of this case.

Thus, Defendant's current argument that Plaintiff "never advanced" a legal theory that Defendant obtained a combination of user data besides an IP address to fingerprint visitors to the Website is simply wrong.  Indeed, the FAC expressly references "geolocation data"[2] as amongst the information tracked by Defendant's beacons.  (FAC

---

[2] Defendant's argument that geolocation data cannot constitute record information that constitutes part of the "routing, addressing or signaling information" is unsubstantiated.  As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act).

¶¶ 21, 70.)  The Nexxen software geolocates users, which is precisely why "[t]he Nexxen platform is used for businesses to ***identify and segment visitors for marketing campaigns***."  (FAC ¶ 57) (emphasis added).  That is a reasonable inference to be drawn from the de-anonymization and "fingerprinting" of Website users.  *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Thus, in reality, Defendant is now making an argument that is either inconsistent with its position stated in the Original Motion or is making an argument rejected by the Court because it incorrectly characterized the FAC's allegations.  Either way, the instant Motion's contention that the Order "strayed" "from" "the underlying statute," (Def.'s Mem. at 2:4-5), is simply wrong.

Finally, Defendant's implicit consent argument with respect to the claim alleging the violation of section 638.51 was squarely rejected by the Court, which noted that:

> "Indeed, Plaintiff alleges that the software was installed immediately upon loading the Website before she had any opportunity to consent to Defendant's Privacy Policy."

(Order of 1/8/25 at 8; Doc. 25; Page ID #337.)  The Court was relying upon paragraph 56 of the FAC, which alleged in relevant part:

> "Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner."

(FAC ¶ 56.)  Thus, the Court did consider Defendant's implicit consent argument, but determined that it did not warrant the dismissal of the first claim as a matter of law via the Original Motion.  The Court did not commit any error in doing so.

Defendant has failed to satisfy its burden of showing "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

(L.R. 7-18.)  Thus, reconsideration of the portion of the Order denying the dismissal of the first claim for relief for violation of section 638.51 should be denied.

**C.    Defendant Has Failed to Satisfy Its Burden of Showing Why Reconsideration of the Portion of the Order Granting Leave to Amend the First Amended Complaint to Allege Standing to Sue to Support Plaintiff's Claim Alleging the Violation of Section 631(a) of the Penal Code Is Warranted.**

Defendant has failed to satisfy its burden of showing why reconsideration of the portion of the Order granting leave to amend the FAC to allege standing to sue to support Plaintiff's statutory claim alleging the violation of section 631(a) of the Penal Code is warranted.

**1.    Defendant Has Never Presented to the Court a Legible Version of Its Cookie Banner In Existence at the Time of Plaintiff's 2024 Visit to the Website, Which Was Before May 24, 2024.**

Although Defendant contends that the Court "overlooked" paragraph 101 of the FAC, (Def.' Mem. at 2:18-20), Defendant's position is remarkable because Defendant has never attempted to submit to the Court a legible copy of the alleged cookie banner that existed at the time of Plaintiff's 2024 visit to the Website.  Given that Plaintiff commenced the initial Complaint against Defendant on May 24, 2024 as clearly stated on the caption page of the FAC, (Doc. 1-1; Page ID #75), Defendant knew before it even filed the Original Motion that Plaintiff's 2024 visit to the Website preceded May 24, 2024.  And, the FAC alleges that Plaintiff visited the Website in 2024.  (FAC ¶ 108.)  Thus, if Defendant was relying upon its cookie banner on its Website in support of the Original Motion, then why did Defendant omit it from the Original Motion for the Court's consideration?  Indeed, while Defendant filed a Request for Judicial Notice in support of the Original Motion, (Doc. 16), Defendant neglected to seek judicial notice of any version of its cookie banner on its Website.  Under these circumstances, how can Defendant credibly argue that "a manifest showing of a failure to consider material facts presented

to the Court before the Order was entered," (L.R. 7-18), exists? Indeed, Defendant has also failed to provide the Court with a legible version of its cookie banner on its Website at the time of Plaintiff's 2024 visit to the Website in support of the instant Motion. Under these circumstances, Defendant has failed to provide any tenable basis to seek reconsideration of the portion of the Order granting leave to amend regarding Plaintiff's standing to sue for the section 631(a) claim.

**2. There Is Nothing to Indicate that Paragraph 101 of the FAC "Squarely Contradicts" Paragraph 112 of the FAC.**

Defendant's bald contention that paragraph 101 of the FAC "squarely contradicts" paragraph 112 of the FAC, (Def.'s Mem. at 2:18-22), is unsubstantiated. Although Defendant purported to quote the contents of the cookie banner depicted in paragraph 101 as stating that such banner "(1) informed Plaintiff that the website 'uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website' and 'share[s] information about your use of our site with our social media, advertising, and analytics partners,' then (2) provided her the option to 'opt-out,'" (Def.'s Mem. at 7:6-9); (Doc. 15 at 10:17-20), such disclosure fails to disclose that a Website visitor's use of the search bar function on the Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. At minimum, such cookie banner language is open to interpretation as to whether it sufficiently notified Website users that their use of the search bar function on the Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. Based thereon, it would be inappropriate for the Court to decide the propriety of such disclosure as a matter of law with no evidence of how a reasonable person would respond to such disclosure.

Notably, Plaintiff previously argued in response to Defendant's Request for Judicial Notice (seeking judicial notice of Exhibit B attached thereto) the foregoing issue:

"Defendant has failed to point to anything specific in its cookie banner depicted in

paragraph 101 of the FAC or in Exhibit B stating that a Website visitor's use of the search bar function on its Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. Indeed, Defendant does not even cite to any specific portion of its alleged online Privacy Policy, which is attached as Exhibit B, disclosing such interception of a Website visitor's search terms entered in the Website's search bar function."

(Doc. 18-1 at 10:23-11:2; Page ID #285-#286.) Thus, Plaintiff expressly challenged the sufficiency of the content of the purported cookie banner in Plaintiff's Opposition to the Original Motion.

Notably, Defendant's Original Motion relied heavily upon its online Privacy Policy (with an effective date of December 31, 2023), which Defendant attached as Exhibit B to its Request for Judicial Notice, (Doc. 16-2; Page ID #219-#240), in support of its consent-related argument, but the instant Motion is bereft of any attempt to rely upon such Privacy Policy, which speaks volumes. After all, Defendant presumably relied heavily upon such Privacy Policy because Defendant expected the ***combination*** of the purported cookie banner ***and*** such Privacy Policy to establish Plaintiff's prior consent before conducting a search on the search bar of the Website. But, Defendant has apparently now abandoned any and all reliance upon such Privacy Policy to support its consent-related argument. Defendant's apparent position makes no sense. After all, it is beyond dispute that the purported cookie banner cited by Defendant contained a hyperlink to the Privacy Policy. In other words, Defendant sought to convince the Court via the Original Motion that the terms and conditions of its Privacy Policy disclosed the third party interception of Website users' search terms inputted into the search bar of the Website. Simply put, if Defendant's Privacy Policy fails to sufficiently disclose the third party interception of Website users' search terms inputted into the search bar of the Website, then why should a mere cookie banner that is equally vague and ambiguous as to such topic be treated as dispositive of the consent issue?

Plaintiff previously argued in response to Defendant's Request for Judicial Notice (seeking judicial notice of Exhibit B attached thereto) other reasons why such Privacy Policy should not be relied upon as dispositive of the consent issue:

"Additionally, assuming *arguendo* that Defendant's 'Privacy Policy' is even relevant to Defendant's Motion to Dismiss, it raises serious factual questions that should not be decided as a matter of law.  For example, it is black letter law that electronic contracts of adhesion must be evaluated for their conspicuousness to determine whether a consumer has assented to it.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).  'In the absence of actual knowledge, a reasonably prudent user must be on constructive notice of the terms of the contract for a browsewrap agreement to be valid.'  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019).  'Users are put on constructive notice based on the conspicuousness and placement of the terms and conditions, as well as the content and overall design of the app.'  *Id.*

Notably, the underlined hyperlink that a user can click at the words 'Privacy Policy' in Defendant's cookie banner is in the same color, blue, as is 'Privacy Policy' text above such underlining used for the hyperlink.  Plaintiff submits that such color is inconspicuous because there is no color contrast with the surrounding text.

For example, the Ninth Circuit in *Nguyen* discussed 'placement,' color, and contrast of hyperlinks (*i.e.*, 'color-contrasting text') and 'the website's general design.'  *Nguyen*, 763 F.3d at 1177-78.  Similarly, *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 866 (2016), relied upon the 'placement, color, size and other qualities [of the terms of service hyperlinks] relative to the . . . [website's] overall design'.  *Id.*  'Federal courts relying on *Long* and *Nguyen* have generally considered similar criteria when determining whether a textual notice is sufficiently conspicuous under California law.  These criteria include: 1) the size of the text; 2) the color of the text as compared to the background it appears against; 3) the

location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; 4) ***the obviousness of any associated hyperlink***; and 5) whether other elements on the screen clutter or otherwise obscure the textual notice.' *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 473 (2021) (citing cases) (emphasis added).

Given that Defendant's Memorandum is bereft of any non-conclusory analysis as to the conspicuousness of Defendant's hyperlink to its purported Privacy Policy, (Def.'s Mem. at 16:18-21), it is entirely premature for the Court to decide such factual issue as a matter of law."

(Doc. 18-1 at 11:3-12:6; Page ID #286-#287.)  Defendant's refusal to rely upon its Privacy Policy to support its consent-related argument as to the second claim alleging the violation section 631(a) is indicative of the frailty of Defendant's reliance upon its purported cookie banner.

**D.    Defendant Has Failed to Satisfy Its Burden of Showing Why Certification of the Portion of the Order Denying the Original Motion Regarding Plaintiff's Claim Alleging the Violation of Section 638.51 of the Penal Code For an Interlocutory Appeal Is Warranted.**

Defendant has failed to satisfy its burden of showing why certification of a portion of the Order denying the Original Motion regarding Plaintiff's claim alleging the violation of section 638.51 of the Penal Code for an interlocutory appeal is warranted under 28 U.S.C. § 1292(b).[3]

The statutory "certification requirements are:

(1)    that there be a controlling question of law,

(2)    that there be substantial grounds for difference of opinion, and

(3)    that an immediate appeal may materially advance the ultimate termination of the litigation."

---

[3] Notably, Defendant does not seek certification of the Order for interlocutory appeal of the portion of the Order addressing the second claim alleging the violation of section 631(a) of the Penal Code.

*In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981), *aff'd*, 459 U.S. 1190, 103 S. Ct. 1173 (1983).  These requirements are jurisdictional.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

### 1.    There Is No "Controlling Question of Law" as Narrowly Framed by Defendant.

Defendant has narrowly framed the alleged "controlling question of law" at issue in its prospective interlocutory appeal by stating that the question presented on appeal is "whether a claim may lie based on the collection or sharing of data that the plaintiff has not alleged, and the district court has not held, constitutes routing information under the statute."  (Def.'s Mem. at 2:26-28.)

"An order that is based on the facts of the specific case may not be a question of law subject to certification."  Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice ¶ 2:160.1 (2025) ("Rutter Group") (citing *ICTSI Or., Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125, 1132 (9th Cir. 2022)).

Simply put, Defendant has framed the question presented in an inaccurate manner by inexplicably ignoring the fact that the Ninth Circuit has held that IP addresses constitute "addressing" information, which is binding on this Court.  Given the foregoing, Defendant's contention that "plaintiff has not alleged" the collection of ***any*** user data beyond the user's IP address is beside the point.

In addition, Defendant has mischaracterized the holding of the Court's Order.  There is nothing in the Court's Order that deviates from *Greenley*'s holding that:

> "A process can take many forms.  ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***"

*Greenley*, 684 F. Supp. 3d at 1050 (emphasis added); *Shah*, 2024 WL 4539577, at *2 (quoting *Greenley*, 684 F. Supp. 3d at 1050)); *Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050)).

Just as an order that is based on the facts of the specific case may not be a "question

of law" subject to certification, the proposed appeal here would be equally limited in scope because it would be entirely contingent upon the precise content and scope of the allegations in the FAC. Because of the narrowly framed question presented, which does not comport with either the FAC's allegations or the Order, Defendant's "controlling question of law" is effectively the equivalent of a question of fact because the Ninth Circuit would need to decide such question presented narrowly based on the precise allegations in the FAC, which the parties in the instant action have disputed. That is, Defendant contends that the FAC only alleges the collection of user IP addresses; whereas, Plaintiff contends that the FAC alleges the collection of more than just user IP addresses. Any such appeal would provide only limited guidance at best to both the bench and bar because of the narrowly focused nature of such proposed appeal. Indeed, Defendant appears to frame its proposed appeal narrowly because it seems to implicitly concede that if the FAC alleges more than the collection of user IP addresses, then Plaintiff would be able to state a viable claim. Thus, the proposed appeal does not present a "controlling" question of law.

Under these circumstances, Defendant has failed to satisfy its burden of showing *exceptional circumstances*, as required. *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d at 1026 ("While Congress did not specifically define what it meant by 'controlling,' the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.").

## 2. Defendant Has Failed to Show Substantial Grounds for Difference of Opinion.

Defendant's argument that there is a "substantial ground for difference of opinion" regarding the merits of the first claim alleging the violation of section 638.51 is unpersuasive.

"Substantial grounds for difference of opinion exist where reasonable jurists might disagree on an issue's resolution. This factor can be satisfied by demonstrating that *either*

(a) the appeal presents a novel issue on which fair-minded jurists might differ *or* (b) courts that have considered the issue are divided." Rutter Group, *supra*, ¶ 2:160.10 (emphasis in original) (citing *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

### a. *Plivo* Provides No Guidance of California Law.

Defendant relies exclusively upon *Rodriguez v. Plivo Inc.*, *supra*, which is a California Superior Court order that would, in all likelihood, not be considered if the case was still pending in the Superior Court. In *Neary v. Regents of the University of California*, 3 Cal. 4th 273 (1992), the California Supreme Court stated:

> "[T]he Court of Appeal decision incorrectly suggests that a trial court judgment provides guidance to other courts and litigants. Not so."

*Id.* at 282. Indeed, the California Court of Appeal has declined to consider a trial court ruling that is not part of a compilation. *Santa Ana Hospital Medical Center v. Belshe*, 56 Cal. App. 4th 819, 830-31 (1997).

Other California Court of Appeal decisions have denied requests for judicial notice seeking to consider California trial court rulings. *See, e.g.*, *Crab Addison, Inc., v. Superior Court*, 169 Cal. App. 4th 958, 963 n.3 (2008), *rev. denied* (Mar. 18, 2009) ("judicial notice cannot be used to impart to [a trial court order] value it does not have"); *Budrow v. Dave & Buster's of Cal., Inc.*, 171 Cal. App. 4th 875, 884-85 (2009), *rev. denied* (June 17, 2009) (declining to take judicial notice of "a number of rulings by state and federal trial courts").

And, *Plivo* clearly states that it was unopposed. (*Plivo*, *supra*, at 1) ("No opposition has been filed to date."). It was unopposed not because of the strength of the Demurrer therein, but rather because of a calendaring error by Plaintiff's counsel's law firm, which served as counsel for Plaintiff in the *Plivo* action, after the case was transferred from a judge assigned to it for all purposes in Unlimited Jurisdiction to a different judge assigned to the case in Limited Jurisdiction, which affected hearing date for such Demurrer and consequently the due date for Plaintiff's opposition brief.

As such, *Plivo* provides zero guidance here because it is not a ruling on a contested

- 14 -

motion. *Segovia v. Fuelco Energy LLC*, 2024 WL 1161730, at \*7 (W.D. Tex. Mar. 18, 2024); *see also Hagerty v. Azar*, 488 F. Supp. 3d 958, 970 (D. Mont. Sept. 23, 2020) ("An order is not 'on the merits' where it merely 'rubber stamp[s]' an **uncontested** motion prepared and submitted by the movant's counsel.") (emphasis added) (citing *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 318-19 (3d Cir. 2014)); *Moffit v. Berryhill*, 2018 WL 276770, at \*2 n.1 (D. Kan. Jan. 3, 2018); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1121 (C.D. Cal. 2015) (Morrow, J.); *Safari Club v. Rudolph*, No. 8:13-cv-01989-JVS-AN, Doc. 60 at pg. 10 of 16, Page ID #770 (C.D. Cal. May 14, 2014) (Selna, J.); *Danford v. City of Syracuse*, 2012 WL 4006240, at \*9 (N.D.N.Y. Sept. 12, 2012); *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 169 n.3 (D.D.C. 2011); *Este-Green v. Astrue*, 2009 WL 2473509, at \*2-\*3 (N.D.N.Y. Aug. 7, 2009).

      **b.**    ***Mirmalek v. Los Angeles Times Comms. LLC* Provides Additional Support for Plaintiff's Position.**

Indeed, subsequent to the parties' submission of their briefs to this Court, the federal case law favoring Plaintiff's position has only strengthened. For example, in *Mirmalek*, *supra*, which was decided on December 12, 2024, the court denied a similar motion to dismiss a claim alleging the violation of section 638.51 based upon third-party software trackers installed on website visitors' Internet browsers. *Mirmalek*, 2024 WL 5102709, at \*3-\*5. *Mirmalek* explained:

      "As the *Shah* and *Greenley* courts held, 'the Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register],' which is 'specific as to the type of data [collected],' but 'vague and inclusive as to the form of the collection tool' (i.e. 'device or process')."

*Id.* at \*3. As mentioned above, *Mirmalek* then held:

      "Here, Plaintiff adequately alleges that the Trackers are a 'device or process' as required by CIPA's definition of a pen register. Plaintiff alleges that the third-party Trackers are 'at least a process' because they are ' 'software that identifies

consumers, gathers data, and correlates that data.' '  Compl. ¶ 32 (quoting *Greenley*, 684 F. Supp. 3d at 1050)."

*Mirmalek*, 2024 WL 5102709, at *3 (citing Cal. Penal Code § 638.50).  *Mirmalek* also held:

> "Further, Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses….As CIPA states, a 'pen register...records...addressing...information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.' § 638.50. As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' '  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Here, Plaintiff alleges that the 'IP address is a unique identifier for a device...contain[ing] geographic[ ]' information regarding a 'device's state, city, and zip code.' … Thus, Plaintiff sufficiently alleges that the Trackers record addressing information in the form of IP addresses."

*Id.* at *4.

Thus, besides the Order, there are at least four other federal district court decisions that support Plaintiff's position.  *See, e.g.*, *Mirmalek*, 2024 WL 5102709, at *3-*5; *Shah*, 2024 WL 4539577, at *4; *Moody v. C2 Educ. Systems Inc.*, - F. Supp. 3d -, 2024 WL 3561367, at *2 (C.D. Cal. July 25, 2024) (Klausner, J.); *Greenley*, 684 F. Supp. 3d at 1050.  Such decisions are persuasive.

### 3.    Defendant Has Failed to Show that an Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation.

Defendant has failed to satisfy its burden of showing that an immediate appeal may "materially advance" the ultimate termination of the action.  First, as mentioned above, Defendant does not seek certification of the portion of the Order addressing the second claim alleging the violation of section 631(a) of the Penal Code.  Thus, regardless of

whether the portion of the Order denying the Original Motion regarding the first claim alleging the violation of section 638.51 is reversed on appeal, the instant action would continue to proceed on the second claim alleging the violation of section 631(a).

Second, the Court has already set a jury trial in the instant action for September 9, 2025. (Doc. 29; Page ID #342.) Thus, an interlocutory appeal is likely to impede or delay the timely completion of such trial. Rutter Group, *supra*, ¶ 2:160.16 (citing *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) ("an interlocutory appeal might well have the effect of delaying the resolution of this litigation, for an appeal probably could not be completed before [five months later], when trial is currently scheduled")). Defendant knew this crucial fact at the time that they filed the instant Motion, but Defendant ignored it in the instant Motion. Defendant's silence speaks volumes.

Dated:  February 3, 2025              PACIFIC TRIAL ATTORNEYS, P.C.

                                      By:  */s/ Scott J. Ferrell*
                                      Scott. J. Ferrell
                                      Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,584 words, which complies with the word limit of Doc. 11 at 3:26-4:1.

Dated:  February 3, 2025

                                        */s/ Scott J. Ferrell*
                                        Scott J. Ferrell