ARAVIND SWAMINATHAN (*Pro Hac Vice*)
aswaminathan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: +1 206 839 4340
Facsimile: +1 206 839 4301

JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 So. Grand Avenue
Suite 2700
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant,
AUTOTRADER.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

REBEKA RODRIGUEZ,

Plaintiff,

v.

AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,

Defendant.

Case No. 2:24-cv-08735-RGK-JC

**AUTOTRADER.COM, INC's MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Hearing Date: March 10, 2025

Time: 9:00 a.m.

Dept: Courtroom 850

Judge: Hon. R. Gary Klausner

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 10, 2025, at 9:00 a.m., or as soon thereafter as is available, in the courtroom of the Honorable R. Gary Klausner, located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Defendant Autotrader.com, Inc. d/b/a www.autotrader.com ("Autotrader") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims asserted against it in Plaintiff's Second Amended Class Action Complaint (ECF No. 34) ("SAC"), with prejudice, on the grounds that Plaintiff lacks standing to bring the SAC's claim under California Penal Code § 631(a) and the SAC's allegations fail to state any claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the complete files and records in this action, any reply papers Autotrader may file, any matters of which the Court may take judicial notice, any such materials or arguments as may be presented to the Court in conjunction with a hearing on this Motion, and any other matter that the Court may properly consider.

This Motion is brought following a conference between counsel pursuant to L.R. 7-3. On January 31, 2025, the parties met and conferred regarding the SAC, discussed the grounds for the Motion, but were unable to reach resolution of any issue.

Dated: February 6, 2025

ARAVIND SWAMINATHAN
JACOB M. HEATH
THOMAS K. FU
Orrick, Herrington & Sutcliffe LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant
AUTOTRADER.COM, INC.

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 5

IV. LEGAL ARGUMENT ........ 6

- A. Plaintiff Lacks Standing To Sue Under California Penal Code § 631(a). ........ 6
- B. The SAC Fails To State a Claim Under California Penal Code § 631(a). ........ 8
- C. The SAC Fails To State a Claim Under California Penal Code § 638.51(a). ........ 9
  - 1. A website's collection of IP addresses does not constitute a pen register under § 638.51(a). ........ 10
  - 2. Plaintiff consented to Autotrader's collection of her IP address in any event. ........ 12
  - 3. The alleged collection or sharing of additional data is not alleged to, and could not, violate § 638.51(a). ........ 13
- D. The Court Should Dismiss Plaintiff's Lawsuit With Prejudice. ........ 15

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 5

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. 2023) .... 6, 7, 8

*Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. 2009) .... 2, 11

*Guardia v. CitiMortgage*, 2021 WL 3811028 (C.D. Cal. 2021) .... 15

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .... 4, 13

*In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888 (N.D. Ill. 2012) .... 11

*Malibu Media, LLC v. Pontello*, 2013 WL 12180709 (E.D. Mich. 2013) .... 13

*Massie v. Gen. Motors LLC*, 2022 WL 534468 (D. Del. 2022) .... 6

*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023) .... 3

*Negro v. Superior Ct.*, 230 Cal. App. 4th 879 (2014) .... 8, 9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .... 8, 9

*S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70 (1991) .... 10

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. 2021) .... 12

*Smith v. Maryland*,
442 U.S. 735 (1979) .................................................................. 10

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002) .................................................................. 10

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) .................................................................. 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................................. 5, 6

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .................................................................. 4, 13

*United States v. Hart*,
2023 WL 10352443 (E.D.N.C. 2023) .................................................................. 14

*United States v. Keel*,
2017 WL 9477638 (N.D. Ga. 2017) .................................................................. 14

*United States v. Turner*,
2021 WL 3009810 (E.D. Tenn. 2021) .................................................................. 14

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. 2024) .................................................................. 9

**Statutes**

Cal. Penal Code § 631(a) .................................................................. 1, 2, 3, 6, 7

Cal. Penal Code § 638.50 .................................................................. 4, 10, 14

Cal. Penal Code § 638.51(a) .................................................................. *passim*

Cal. Penal Code § 638.51(b)(5) .................................................................. 12

Cal. Penal Code § 638.52(c) .................................................................. 12

Cal. Penal Code § 638.52(d)(3) .................................................................. 12

**Other Authorities**

California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) .......................... 10, 11, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After three attempts, Plaintiff still has not stated a claim against Autotrader under the California Invasion of Privacy Act ("CIPA"). The reason is simple: There was no privacy violation here, and the time has come to dismiss this misguided lawsuit with prejudice.

To begin with, the Second Amended Class Action Complaint ("SAC") still fails to establish Plaintiff's standing to sue under California Penal Code § 631(a). To carry that burden, Plaintiff would need to make two distinct showings: (1) that the content of her searches on Autotrader's website was particularly sensitive, and (2) that she had a reasonable expectation Autotrader would not share it. The Court previously ruled that the First Amended Class Action Complaint ("FAC") failed at the first step because it alleged no sensitive search content. The SAC tries to fix that problem by alleging a new search phrase. But even assuming that phrase contains sufficiently sensitive content about Plaintiff, the SAC still flunks the second step of the standing analysis. Plaintiff affirmatively acknowledges that Autotrader's website notified her (and every other website user) that it "share[s] information about your use of our site with our social media, advertising, and analytics partners." SAC ¶ 101. That disclosure eliminated any reasonable expectation of privacy in her searches.

The SAC also fails to state a claim under either § 631(a) or § 638.51(a). The Court held otherwise when assessing the FAC's nearly identical allegations. But as Autotrader explained in its pending motion for reconsideration of that order, the Court overlooked several critical facts about the scope of Plaintiff's allegations and the underlying statutes. To ensure that those arguments are preserved and the Court has the opportunity to rule on them, Autotrader also makes them here regarding the matching allegations in the SAC, which Plaintiff filed after Autotrader submitted its reconsideration motion.

First, Plaintiff's § 631(a) claim fails on the merits because of the same express

disclosure just mentioned: Autotrader's statement that it "share[s] information about your use of our site with our social media, advertising, and analytics partners." SAC ¶ 101. In addition to defeating Plaintiff's standing, that disclosure also demonstrates that Plaintiff implicitly consented to the sharing of her search queries. So there could be no violation of § 631(a), which does not apply to the sharing of information with "the consent of all parties." Cal. Penal Code § 631(a). The Court previously rejected this argument only by overlooking the details of Autotrader's disclosures alleged in the pleadings.

Second, Plaintiff's § 638.51(a) claim is premised entirely on something the statute does not criminalize: a website's collection of its own visitor's "IP address." SAC ¶ 134. That is the only data alleged to be "routing" information subject to § 638.51(a). *Id.* ***But every website must collect each visitor's IP address in order to establish a connection with them; otherwise, the internet "could not function."*** *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. 2009) (emphasis added). Courts have sensibly read both § 638.51(a) and the federal Pen Register Act on which it is closely modeled not to "prevent individuals who receive electronic communications from recording the IP information sent to them," as the internet requires. *Id.* Section 638.51(a)'s text and history show that it serves a narrower function: It generally prohibits ***third parties*** from collecting routing information regarding communications not sent to them. The Court previously allowed Plaintiff's § 638.51(a) claim to proceed on the theory that Autotrader's collection of "additional data" beside her IP address violated § 638.51(a). But the SAC does not—and could not—make any such allegation.

There is no fix for these fundamental legal flaws. The Court should therefore dismiss all claims in the SAC without leave to amend.

## II. BACKGROUND

Plaintiff initially filed the FAC in California court, asserting claims under California Penal Code §§ 631(a) and 638.51(a). ECF No. 1-1. Autotrader timely

removed the action to this Court on October 10, 2024 (ECF No. 1) and moved to dismiss on November 18, 2024 (ECF No. 15). The Court granted that motion in part on January 8, 2025, dismissing the § 631(a) claim for lack of Article III standing. ECF No. 25. Autotrader filed a timely motion for reconsideration of that decision on January 21, 2025, which remains pending and is scheduled for a hearing on February 24, 2025. ECF No. 31. Meanwhile, Plaintiff filed the SAC on January 23, 2025. ECF No. 34. It is nearly identical to the FAC and again asserts claims under §§ 631(a) and 638.51(a).

**Plaintiff's § 631(a) claim.** Plaintiff alleges that Autotrader violated § 631(a) by offering a search bar on its website. SAC ¶ 86. The SAC's vague pleadings on this issue are virtually identical to the FAC's. Plaintiff again alleges that an unknown thirty party, "the 'Third Party Search Engine Provider,'" "developed" the "search engine" incorporated into Autotrader's website. *Id.* ¶ 86. Autotrader's website would then purportedly "collect[ ] users' data" entered into the search bar and "send[ ] it to its search engine software developer," and search results would somehow be generated which "appear to be limited to the specific site on which the search is run." *Id.* ¶¶ 88, 96. Plaintiff also alleges that user searches are "added to [a] URL," which Autotrader's website "then reports … to several third-party websites that track visitor activity on the Website." *Id.* ¶ 100; *see id.* ¶¶ 102-07. The SAC claims that "one or more" of these "third parties" directly violated § 631(a)'s second clause by reading the contents of search queries without consent, *id.* ¶ 145, and that Autotrader aided and abetted those violations, *id.* ¶ 147. All of those allegations are carried over verbatim from the FAC.

The Court dismissed the FAC's § 631(a) claim because the foregoing allegations did not suffice to establish Plaintiff's standing to sue. The Court explained that Plaintiff could plead an "injury in fact" premised on her "right to privacy" only by, among other things, alleging a search query "sufficiently personal or sensitive that its disclosure is harmful." ECF No. 25, at 3 (citing *Mikulsky v. Noom, Inc.*, 682

F. Supp. 3d 855, 864 (S.D. Cal. 2023)). But the FAC did not "describe the contents of her query" and so failed "to demonstrate that she suffered an injury in fact." *Id.* at 4. The SAC adds a single clause on that front, alleging that Plaintiff ran a search for "White SUV's safe for autistic 4 year old." SAC ¶ 108.

**The SAC's § 638.51 Claim.** Plaintiff separately seeks to bring a claim under § 638.51(a), which criminalizes select uses of two specific devices: a "pen register" and a "trap and trace device." Cal. Penal Code § 638.51(a). A device meets those definitions, and thus could conceivably violate the statute, only to the extent that it "records," "decodes" or "captures" one particular type of data: "dialing, routing, addressing, or signaling information" identifying the source of a "communication." *Id.* § 638.50(b)-(c). If a device is not capturing that sort of data, it is not operating as a pen register or trap and trace device and § 638.51 has no possible application.

In light of the statute's narrow scope, the SAC alleges that Autotrader operated a "pen register" in violation of § 638.51 ***exclusively*** by "captur[ing]" ***just one*** purported form of "routing, addressing, or signaling information"—namely, "the ***IP address*** … from the electronic communications transmitted by Plaintiff's computer or smartphone" to Autotrader's website. SAC ¶ 134 (emphasis added); *see id.* ¶ 136. An IP address is a "numerical identifier" assigned to "each computer or network connected to the Internet." As courts have long recognized, capturing a visitor's IP address is how websites function. "[E]very computer or server connected to the Internet has a unique IP address." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (quoting *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008)). And, like a telephone number, that IP address is "provided" and "used … for the specific purpose of directing the routing of information." *Id.* An internet user who wishes to visit a website must "voluntarily turn[] over" their IP address "in order to direct" the routing used to make that connection, making it "inevitable that [a website] learns a [visitor]'s IP address." *Id.* at 1190; *see* SAC ¶ 35.

The Court previously held that the FAC stated a claim under § 638.51(a). ECF

No. 25, at 8. It so ruled solely because it considered the "collection" of several forms of "additional data" separate from Plaintiff's IP address to be within the ambit of § 638.51: "operating system information, browser information, geolocation data, and email addresses." *Id.* at 7-8. Autotrader has moved for reconsideration of that decision on the ground that the FAC's § 638.51(a) claim was not (and could not have been) premised on the collection of those other forms of data, which are not alleged to be routing information, and that the collection of an IP address cannot violate § 638.51. ECF No. 31. The SAC's § 638.51(a) claim is likewise premised exclusively on collection of Plaintiff's "IP address," SAC ¶ 134, which is the sole type of routing information mentioned anywhere in the pleadings.

## III. LEGAL STANDARD

To survive a motion to dismiss for lack of standing under Rule 12(b)(1), "a plaintiff must show," among other things, "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). "[A]n injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

## IV. LEGAL ARGUMENT

### A. Plaintiff Lacks Standing To Sue Under California Penal Code § 631(a).

To show that Plaintiff was "concretely harmed" by the alleged interception of her search queries, and thus has standing to sue under § 631(a), the SAC must adequately allege "harm to her privacy." *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. 2023) (quoting *TransUnion*, 594 U.S. at 427). That requires two showings. First, Plaintiff must point to particularly "sensitive information" within her search queries, *id.*—information whose undisclosed interception could be sufficiently "harmful," ECF No. 25, at 3. The Court dismissed the FAC's § 631(a) claim because Plaintiff failed to make even that initial showing regarding "the contents of her query." *Id.* at 4. Second, Plaintiff must additionally plead facts establishing that she "reasonably expected" her allegedly sensitive search was "not being recorded" by third parties, such that she retained "a protectable privacy interest." *Sterling Jewelers*. 2023 WL 2996686, at *3-4; *see Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. 2022) (no "concrete injury" absent "reasonable expectation of privacy").

The SAC makes one small change to the FAC in an effort to address the first part of the standing test: Plaintiff alleges that she searched the phrase "White SUV's safe for autistic 4 year old." SAC ¶ 108. Even assuming that qualifies as her own sensitive information—although it is not tied to her specifically—the SAC still fails to make the second required showing: that she had a reasonable expectation of privacy regarding the search. The SAC offers conclusory assertions to that effect, alleging that she "reasonably believed that communications to the Website were made in confidence" because she "was not provided an opportunity to review or consent to sharing of Plaintiff's information with any third party." *Id.* ¶¶ 111-12. But the SAC pleads facts that conclusively show otherwise. For one thing, as a "tester," *id.* ¶ 4, Plaintiff "fully expected that her [searches] would be recorded so that she

could file this action." *Sterling Jewelers*, 2023 WL 2996686, at *4. That alone has been held sufficient to undercut a plaintiff's reasonable expectation of privacy under § 631(a). *Id.*

On top of that, the SAC makes clear that Autotrader conspicuously disclosed to Plaintiff that her communications with the website could be shared with third parties. The SAC includes a screenshot of the "user search" page that Plaintiff purportedly used to perform her searches. SAC ¶ 101. The page contains a large "banner," highlighted below, that takes up the bottom quarter of the screen:




*Id.* ¶ 101.

As that screenshot demonstrates, the banner made several disclosures to Plaintiff that eliminated any reasonable expectation of privacy. It first informed her that Autotrader's website "uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website." *Id.* The banner then expressly stated that Autotrader "***share[s] information about your use***

***of our site with our social media, advertising, and analytics partners***." *Id.* (emphasis added). Having disclosed third-party sharing, the banner provided Plaintiff the option to "opt-out," *id.*, which the SAC characterizes as an "opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner," *id.* ¶ 56. All of that squarely contradicts Plaintiff's conclusory claim that she had no "opportunity to review or consent to sharing of Plaintiff's information with any third party." *Id.* ¶ 112. Any reasonable website visitor would have seen those conspicuous disclosures, and Plaintiff—whose pleadings repeatedly acknowledge the banner—never alleges that she did not in fact read them before conducting her searches.

"Because Plaintiff fails to allege or otherwise demonstrate an injury sufficient to confer on her Article III standing," her § 631(a) claim should be "dismissed for lack of subject matter jurisdiction." *Sterling Jewelers*, 2023 WL 2996686, at *4.

### B. The SAC Fails To State a Claim Under California Penal Code § 631(a).

Autotrader has moved for reconsideration of the Court's decision not to dismiss the FAC's § 631(a) claim with prejudice, on the ground that the prior order overlooked material facts showing Plaintiff consented to the sharing of her information with third parties. ECF No. 31, at 6-8; *see* Cal. Penal Code § 631(a) (prohibiting interception only "without the consent of all parties"). To ensure that those arguments are preserved and the Court has the opportunity to rule on them, Autotrader also makes them here regarding the SAC's identical allegations.

The Court's prior order acknowledged that Plaintiff would have "implicitly consented" to the sharing of her search queries if the banner on Autotrader's website "sufficiently disclosed how Defendant would use her data." ECF No. 25, at 6. That is because courts imply user consent to a website's sharing of information where the website disclosed it, as long as the "conspicuousness and placement" of the disclosures ensured that any "reasonably prudent user" would see them. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see Negro v. Superior Ct.*,

230 Cal. App. 4th 879, 892 (2014) ("The typical case involves the user's continued use of a communication device or system after receiving notice that his or her communications may be intercepted.").

The Court previously ruled that the FAC did not establish Plaintiff's implied consent only because it concluded that "Plaintiff does not allege any details about the banner." ECF No. 25, at 6. On that basis, the Court drew an analogy to *Valenzuela v. Kroger Co.*, 2024 WL 1336959 (C.D. Cal. 2024), which declined to find implied consent solely because the pleadings there did "not reference" the disclosures at issue or provide any detail about their "context and placement." *Id.* at *3; *see* ECF No. 25, at 6.

But, as explained above, Plaintiff affirmatively provides a screenshot of the banner (in the SAC, as in the FAC). The image demonstrates that the banner conspicuously occupied the bottom quarter of the screen and expressly disclosed that Autotrader "share[s] information about your use of our site with our social media, advertising, and analytics partners." SAC ¶ 101. Any "reasonably prudent user" would thus have understood that Autotrader could perform such sharing. *Nguyen*, 763 F.3d at 1177. Plaintiff's "continued use" of Autotrader's website after receiving that "notice" constitutes implied consent to the interception alleged here. *Negro*, 230 Cal. App. 4th at 892.

### C. The SAC Fails To State a Claim Under California Penal Code § 638.51(a).

Autotrader has also moved for reconsideration of the Court's decision not to dismiss the FAC's § 638.51(a) claim, on the ground that the prior order overlooked material facts about the limited scope of Plaintiff's allegations and the underlying statute. ECF No. 31, at 3-6. Autotrader likewise incorporates those arguments here to ensure the Court has the opportunity to rule on them.

**1. A website's collection of IP addresses does not constitute a pen register under § 638.51(a).**

As noted, Plaintiff's § 638.51(a) claim is premised solely on the alleged collection of her "IP address" by Autotrader's website. SAC ¶ 134. That is the only type of data that purportedly constitutes "'routing, addressing, or signaling information' … from the electronic communications transmitted by Plaintiff's computer or smartphone." *Id.* (quoting Cal. Penal Code § 638.50(b)). Her IP address is thus the sole alleged basis for a § 638.51(a) violation. The SAC accuses Autotrader of operating an illegal "pen register" solely to the extent that its software collected "the IP address." *Id.*

Plaintiff's legal theory fundamentally misunderstands § 638.51. That statute (just like its federal analog, the Pen Register Act) was enacted to address the specific problem of ***third parties*** installing pen registers to obtain routing information about ***others'*** communications. Specifically, § 638.51 (like the Pen Register Act) seeks to fill a gap left by the Supreme Court's holding in *Smith v. Maryland*, 442 U.S. 735 (1979), which held that the Fourth Amendment does not require police to seek a warrant before installing a pen register to track a suspect's phone calls. *See* California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015). To that end, § 638.51 creates a statutory requirement that police (and indeed, any third party) must "first obtain[] a court order" before installing a pen register. Cal. Penal Code § 638.51(a).

Critically, though, courts have made clear that the prohibitions in § 638.51 and the Pen Register Act do not apply to a person who seeks only to record routing information associated with ***their own*** communications—i.e., to someone who is not a third party to the communications. As the D.C. Circuit has explained, if recording routing information about ***one's own*** communication was illegal, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002); *see also S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70, 73 (1991) (recognizing the same when

interpreting South Carolina's materially identical law).

Indeed, when it comes to IP addresses, applying § 638.51 in the way that Plaintiff seeks—i.e., to outlaw a party's recording of routing information for ***their own*** communications—would criminalize the entire internet. Websites function only by collecting the IP addresses of their visitors; no collection, no connection. Unsurprisingly, courts have avoided that ruinous outcome by holding—consistent with the statutes' animating purpose—that a website recording incoming IP addresses does not violate pen register laws. Indeed, just recently, in *Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct.), a California court dismissed with prejudice Plaintiff's effectively identical § 638.51(a) claim, agreeing that "Plaintiff's IP address is not the type of information that parties are prohibited from collecting by CIPA." ECF No. 16, Ex. A, at 10. And federal courts interpreting the Pen Register Act have long reached the same conclusion, holding that the statute "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them," since the internet otherwise "could not function." *Capitol Recs.*, 2009 WL 1664468, at *3; *accord In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012).

Section 638.51(a)'s legislative history underscores this same understanding. The Legislature was expressly concerned with the "use [of] pen register and trap and trace devices" by third parties—and in particular, "law enforcement officers." California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015). In fact, § 638.51 was a compromise between "the Los Angeles District Attorney's Office and the American Civil Liberties Union (ACLU)," with its focus trained specifically on the "circumstances [under] which law enforcement officers can request" an order authorizing the use of a pen register. *Id.* Nowhere in the legislative history did the Legislature suggest that it was seeking to regulate the circumstances under which a participant in a call could record the routing information related to their own communication.

Just as important, certainly nowhere did the Legislature suggest that it was seeking to enact a law that would outlaw the internet. To the contrary, despite enacting § 638.51(a) in 2015—when the internet was well known, and would certainly have been mentioned had the Legislature meant to target it—the Legislature focused its language (in both the statutory text and legislative history) ***exclusively on "telephone" technologies***. *See*, *e.g.*, Cal. Penal Code § 638.52(d)(3) (requiring any court order authorizing the installation of a pen register or trap and trace device to specify "[t]he number" and "physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached" (emphasis added)); *id.* § 638.52(c) (providing that a "pen register or trap and trace device shall not" collect the physical location of the subscriber "except to the extent that the location may be determined from the ***telephone number***" (emphasis added)); California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) (explaining that § 638.51 would regulate the circumstances in which "law enforcement officers [can] record all outgoing numbers from a particular ***telephone*** line" or "what numbers have called a specific ***telephone*** line" (emphasis added)). That focus on law enforcement use of telephone technologies simply cannot be squared with Plaintiff's suggestion that § 638.51 was meant to criminalize the fundamental operation of all websites.

**2. Plaintiff consented to Autotrader's collection of her IP address in any event.**

Plaintiff's legal theory has another, equally fundamental flaw: Section 638.51 imposes no liability for a website's collection of data "[i]f the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(5). Assuming Plaintiff is the "user" who must consent here, she did so as long as she used Autotrader's website in circumstances where "a reasonably prudent user would have been aware" that their information was being recorded. *See, e.g., Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. 2021); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (individual who "actually expected the [communication] to be

recorded" can be deemed to "have implicitly consented to the recording by the very act of" initiating the communication).

Every website user consents to the collection of their IP address by navigating to the website. As courts have explained, any reasonable person in those circumstances (and certainly a self-described "tester" like Plaintiff, SAC ¶ 4) would understand in advance that their IP address "information [would be] provided" as part of the interaction. *Heeger*, 509 F. Supp. 3d at 1190 (quoting *Forrester*, 512 F.3d at 510). After all, any website user ***must*** "voluntarily turn[] over" their IP address "in order to direct" the routing used to access the website—it is "inevitable that [a website] learns a [visitor]'s IP address" when they navigate to it. *Id.* at 1189-90. Indeed, for precisely this reason, courts have long held that internet users do not have any expectation of privacy in their IP addresses or the IP addresses of the websites they visit. *Id.* at 1190; *Forrester*, 512 F.3d at 510.

Because Plaintiff "consensually engaged in [an internet] transaction" and "communicated h[er] IP address as part of" that transaction, the laws prohibiting pen registers and trap and trace devices "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. 2013).

**3. The alleged collection or sharing of additional data is not alleged to, and could not, violate § 638.51(a).**

The Court declined to dismiss the FAC's § 638.51(a) claim solely by looking beyond Plaintiff's IP address and ruling that Autotrader allegedly violated the statute by collecting "additional data"—"operating system information, browser information, geolocation data, and email addresses." ECF No. 25, at 7. The Court noted that these separate forms of information, unlike IP addresses, were not "necessary for websites to operate." *Id.* It also held that website users did not consent to their collection because they had no "reason to expect this information," unlike IP addresses, would "be captured." *Id.* at 8.

As Autotrader's motion for reconsideration explained, however, Plaintiff has never asserted—and could not assert—a § 638.51(a) claim based on the collection of those separate forms of information. A device qualifies as a pen register under the statute only to the extent that it "collect[s]" one particular type of data: "dialing, routing, addressing, or signaling information" identifying the source of a "communication." Cal. Penal Code § 638.50(b). The SAC (like the FAC before it) specifies exactly what purportedly constitutes that "routing, addressing, or signaling information"—"***the IP address.***" SAC ¶ 134 (quoting Cal. Penal Code § 638.50(b)) (emphasis added); *see* FAC ¶ 134. Plaintiff never alleges that any of the other information just mentioned serves a routing function. Nor could she. Operating system and browser details play no role in routing communications to a website. Neither does a visitor's email address. And courts routinely distinguish the routing data subject to a "pen register and trap and trace," on one hand, from "geolocation information," on the other—even issuing separate "warrants" for each. *United States v. Keel*, 2017 WL 9477638, at *2, *report and recommendation adopted*, 2017 WL 1371870 (N.D. Ga. 2017); *see, e.g.*, *United States v. Turner*, 2021 WL 3009810, at *2 (separate orders authorizing "a pen register/trap and trace" and collection of "phone geolocation"), *report and recommendation adopted*, 2021 WL 2482117 (E.D. Tenn. 2021), *aff'd*, 2024 WL 3634454 (6th Cir. 2024); *United States v. Hart*, 2023 WL 10352443, at *3 (E.D.N.C. 2023) (noting separate authorizations for "the installation and monitoring of a pen register and/or trap and trace device" and "geolocation monitoring for cellular phone"), *report and recommendation adopted*, 2024 WL 578573 (E.D.N.C. 2024).

The SAC's § 638.51(a) claim thus rises and falls on whether Autotrader's collection of Plaintiff's IP address violated the statute. As explained, it did not—both because collecting IP addresses does not constitute a pen register, and because Plaintiff consented to that collection in any event.

### D. The Court Should Dismiss Plaintiff's Lawsuit With Prejudice.

Both of Plaintiff's claims are doomed by "fundamental legal flaws." *Guardia v. CitiMortgage*, 2021 WL 3811028, at *6 (C.D. Cal. 2021). Her § 638.51(a) claim is premised on the collection of specific data, her IP address, that cannot violate the statute for two independent reasons. And she lacks standing to sue under § 631(a)—and could not state a claim in any event—because her own pleadings demonstrate that she was clearly advised of, and implicitly consented to, Autotrader's sharing of her search queries. Amendment would be "futile" because no additional allegations could fix those problems. *Id.*

## V. CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's SAC with prejudice.

Dated: February 6, 2025

ARAVIND SWAMINATHAN
JACOB M. HEATH
THOMAS K. FU
Orrick, Herrington & Sutcliffe LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant
AUTOTRADER.COM, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Autotrader, certifies that this Memorandum of Points and Authorities contains 4618 words, which complies with the Court's Standing Order.

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant
AUTOTRADER.COM, INC.