**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REBEKA RODRIGUEZ,

Plaintiff,

v.

AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,

Defendant.

Case No. 2:24-cv-08735-RGK-JC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

[Request for Judicial Notice; [Proposed] Order lodged concurrently herewith]

Date: March 10, 2025
Time: 9:00 a.m.
Courtroom: 850
Judge: Hon. R. Gary Klausner

## TABLE OF CONTENTS


I. ARGUMENT ..... 1

A. Applicable Standard ..... 1

B. Defendant's Challenge to Plaintiff's Standing to Sue As to the Second Claim for Relief Is Without Merit. ..... 1

1. The Second Amended Complaint Plausibly Alleges a Concrete Injury Caused By Defendant's Wrongdoing Relating to the Third Party Interception of Plaintiff's Search Terms on the Website's Search Bar. ..... 1

2. The SAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct. ..... 2

3. Defendant Has Never Presented to the Court a Legible Version of Its Cookie Banner In Existence at the Time of Plaintiff's 2024 Visit to the Website, Which Was Before May 24, 2024. ..... 3

4. There Is Nothing to Indicate that Paragraph 101 of the SAC "Squarely Contradicts" Paragraph 112 of the SAC. ..... 4

C. Defendant's Argument Regarding the Substantive Merits of the First Claim Is an Improper Motion for Reconsideration. ..... 6

D. Defendant's Argument Regarding the Merits of the First Claim Is Without Merit. ..... 8

1. Defendant's Consent Argument Lacks Merit. ..... 12

E. Defendant's Argument Regarding the Substantive Merits of the Second Claim Is an Improper Motion for Reconsideration. ..... 15

**CERTIFICATE OF COMPLIANCE** ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**


*Adams v. Cole Haan, LLC*, 2021 WL 4907248 (C.D. Cal. Mar. 1, 2021) (Holcomb, J.) ....8

*Backer ex rel. Freedman v. Shah*, 788 F.3d 341 (2d Cir. 2015)....2

*Barker v. Riverside County Office of Education*, 584 F.3d 821 (9th Cir. 2009) ....11

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (2021) ....14

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) ....12

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014)....13, 14

*Campbell v. United Healthcare Ins. Co.*, 2025 WL 409038 (C.D. Cal. Jan. 28, 2025) (Klausner, J.) ....1

*Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009)....6

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093 (9th Cir. 2017) ....2

*Colley v. James*, 2018 WL 6131156 (C.D. Cal. Aug. 10, 2018) (Klausner, J.)....7

*Consumer Solutions Reo, LLC v. Hillery*, 2010 WL 334417 (N.D. Cal. Jan. 28, 2010)....7, 8

*D'Angelo v. FCA US LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024)....15

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024)....15

*Federal Election Comm'n v. Cruz*,
142 S. Ct. 1638 (2022) ....................2

*Gilbert v. New Line Productions, Inc.*,
2010 WL 891333 (C.D. Cal. Feb. 17, 2010) (Klausner, J.)....................7

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).................... *passim*

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ....................2

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................6, 7

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
2012 WL 12884901 (C.D. Cal. Jan. 4, 2012) (Klausner, J.) .................... 7, 8, 16, 17

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................14, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021)....................1

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................14

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.)....................14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................8, 9, 12

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ....................13, 14

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)....................13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) (Breyer, J.)....................15

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ....................2

*Licea v. American Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................15

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................15

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636, (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.),
*adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ..........15

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024).................... 9, 10, 11, 12

*Rodriguez v. Autotrader.com, Inc.*,
*No.* 2:24-cv-08735-RGK-JC, No. 25 (C.D. Cal. Jan. 8, 2025) (Klausner, J.) .................... *passim*

*SB Diversified Products, Inc. v. Murchison*,
2014 WL 3894353 (S.D. Cal. July 28, 2014) ....................8, 17

*Shah v. Fandom, Inc.*,
- F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024)....................8, 10, 11

*Tourgeman v. Collins Financial Servs., Inc.*,
755 F.3d 1109 (9th Cir. 2014) ....................2

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................6, 9, 12

*United States v. Simmons*,
2001 WL 710625 (E.D. Cal. May 16, 2001) ....................7

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ....................3, 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....................15

*Valenzuela v. The Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024)....................15

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ....................................15

**California Cases**

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..........................................................................................13

*Sanders v. Am. Bd. Co., Inc.*,
20 Cal. 4th 907 (1999) ........................................................................................14

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998) ........................................................................................14

**U.S. Constitution**

Article III..............................................................................................................3

**Federal Statutes**

28 U.S.C. § 1927 ..................................................................................................8

Pen Register Act.....................................................................................................6

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Title III Stat. 197 (1968) ...............................................11

Paperwork Reduction Act ......................................................................................7

**California Statutes**

Penal Code
§ 630.................................................................................................................13
§ 631.................................................................................................................11
§ 631(a) ...................................................................................... 1, 6, 13, 16
§ 638.50............................................................................................................12
§ 638.50(b) ................................................................................................ *passim*
§ 638.50(c) ................................................................................................ *passim*
§ 638.51.....................................................................................................9, 11, 12
§ 638.51(a) ..........................................................................................................6
California Invasion of Privacy Act ..........................................................12, 13

**Federal Rules**

Federal Rules of Civil Procedure

Rule 12(g)(2) ........................................ 8

Local Rule 7-18 ........................................ 1, 6, 15

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5 ........................................ 2
n.61 ........................................ 2
n.70 ........................................ 2
n.73 ........................................ 2

First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG ........................................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT

### A. Applicable Standard

"Local Rule 7-18 controls reconsideration of court orders." *Campbell v. United Healthcare Ins. Co.*, 2025 WL 409038, at *2 (C.D. Cal. Jan. 28, 2025) (Klausner, J.). "A motion for reconsideration should only be granted in 'highly unusual circumstances.'" *Id.*

### B. Defendant's Challenge to Plaintiff's Standing to Sue As to the Second Claim for Relief Is Without Merit.

As before, Defendant challenges Plaintiff's standing to sue as to the second claim for relief alleging the violation of section 631(a) of the Penal Code,[1] (Def.'s Mem. at 8:11-12), but does ***not*** challenge Plaintiff's standing to sue as to the first claim for relief. Thus, the Court should limit the scope of its standing inquiry to the second claim only.

#### 1. The Second Amended Complaint Plausibly Alleges a Concrete Injury Caused By Defendant's Wrongdoing Relating to the Third Party Interception of Plaintiff's Search Terms on the Website's Search Bar.

Paragraph 108 of the Second Amended Complaint ("SAC") alleges that Plaintiff visited the Website in 2024 and "utilized the Search Bar to perform a highly confidential search ('White SUV's safe for autistic 4 year old')." (SAC ¶ 108.) Needless to say, the reference "autistic 4 year old" is highly personal and confidential information that Plaintiff had a right to control from dissemination. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("A right to privacy 'encompass[es] the individual's control of information concerning his or her person."), *cert. denied*, 141 S. Ct. 1684 (2021) (citation omitted). Such reference to "autistic 4 year old" is in regards to Plaintiff's own child. Plaintiff's search query is "sufficiently personal or sensitive that its disclosure is harmful." (Doc. 25 at 3; Page ID #332.)

[1] All references herein to the "Penal Code" are to the California Penal Code.

**2. The SAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct.**

Although Defendant implicitly argues that Plaintiff, a "tester," suffered a self-inflicted injury, (Def.'s Mem. at 6:27-7:3), a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing. It is clear, however, that no rigid lines are drawn on this basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper"). That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* § 3531.5 & n.70. "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Notably, such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61. *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

Also, the Ninth Circuit has repeatedly cited *Havens*. *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017); *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014).

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions." Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). Rather, the SAC makes it clear that Defendant's

and its Third Party Search Engine Provider's unlawful conduct regarding Plaintiff's second claim for relief contributed to causing Plaintiff's intangible injury either solely or almost entirely on their own.

Further, Defendant ignores Ninth Circuit precedent regarding the issue of consent. *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("foreseeability of monitoring is insufficient to infer consent"). Plaintiff cited *Staves* in opposition to the Original Motion. (Doc. 18 at 9:1-2; Page ID #259.) Thus, Defendant is surely well aware of such precedent, but conveniently omitted making any attempt to distinguish it. Such omission speaks volumes.

Finally, if being a "tester" deprives Plaintiff of Article III standing to maintain her second claim for relief, then why hasn't Defendant challenged Plaintiff's standing to sue as to her first claim for relief? Defendant's position is inconsistent.

**3. Defendant Has Never Presented to the Court a Legible Version of Its Cookie Banner In Existence at the Time of Plaintiff's 2024 Visit to the Website, Which Was Before May 24, 2024.**

Although Defendant contends that the Court previously "overlook[ed]" paragraph 101 of the First Amended Complaint ("FAC"), (Def.'s Mem. at 2:6-8), Defendant's position is remarkable because Defendant never attempted to submit to the Court a legible copy of the alleged cookie banner that existed at the time of Plaintiff's 2024 visit to the Website. Given that Plaintiff commenced the initial Complaint against Defendant on May 24, 2024 as stated on the caption page of the FAC, (Doc. 1-1; Page ID #75), Defendant knew before it even filed the Original Motion that Plaintiff's 2024 visit to the Website preceded May 24, 2024. And, the FAC alleges that Plaintiff visited the Website in 2024 (as does the SAC). (FAC ¶ 108; SAC ¶ 108.) Thus, if Defendant was relying upon its cookie banner on its Website in support of the Original Motion, then why did Defendant omit it from the Original Motion for the Court's consideration? Indeed, while Defendant filed a Request for Judicial Notice in support of the Original Motion, (Doc. 16), Defendant neglected to seek judicial notice of any version of its cookie banner on its Website. And,

Defendant failed to provide the Court with a legible version of its cookie banner on its Website at the time of Plaintiff's 2024 visit to the Website in support of the instant Motion.

**4. There Is Nothing to Indicate that Paragraph 101 of the SAC "Squarely Contradicts" Paragraph 112 of the SAC.**

Defendant's bald contention that paragraph 101 of the SAC "squarely contradicts" paragraph 112 of the SAC, (Def.'s Mem. at 7:4-8:7), is unsubstantiated. Although Defendant purported to quote the contents of the cookie banner depicted in paragraph 101 as stating that such banner: (1) "informed [Plaintiff] that Autotrader's website 'uses cookies and other tracking technologies to enhance user experience and to analyze performance and traffic on our website,'" and "'***share[s] information about your use of our site with our social media, advertising, and analytics partners***,'" and then (2) "provided [Plaintiff] the option to 'opt-out,'" (Def.'s Mem. at 7:25-8:3) (emphasis in original), such disclosure fails to disclose that a Website visitor's use of the search bar function on the Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. At minimum, such cookie banner language is open to interpretation as to whether it sufficiently notified Website users that their use of the search bar function on the Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. Based thereon, it would be inappropriate for the Court to decide the propriety of such disclosure as a matter of law with no evidence of how a reasonable person would respond to such disclosure.

Notably, Plaintiff previously argued in response to Defendant's Request for Judicial Notice (seeking judicial notice of Exhibit B attached thereto) the foregoing issue:

> "Defendant has failed to point to anything specific in its cookie banner depicted in paragraph 101 of the FAC or in Exhibit B stating that a Website visitor's use of the search bar function on its Website would be intercepted, read by, and/or otherwise used by unrelated third party data collectors having no corporate affiliation with Defendant. Indeed, Defendant does not even cite to any specific portion of its

alleged online Privacy Policy, which is attached as Exhibit B, disclosing such interception of a Website visitor's search terms entered in the Website's search bar function."

(Doc. 18-1 at 10:23-11:2; Page ID #285-#286.) Thus, Plaintiff expressly challenged the sufficiency of the content of the purported cookie banner in Plaintiff's Opposition to the Original Motion.

Notably, Defendant's Original Motion relied heavily upon its online Privacy Policy (with an effective date of December 31, 2023), which Defendant attached as Exhibit B to its Request for Judicial Notice, (Doc. 16-2; Page ID #219-#240), in support of its consent-related argument, but the instant Motion is bereft of any attempt to rely upon such Privacy Policy, which speaks volumes. After all, Defendant presumably relied heavily upon such Privacy Policy because Defendant expected the ***combination*** of the purported cookie banner ***and*** such Privacy Policy to establish Plaintiff's prior consent before conducting a search on the search bar of the Website. But, Defendant has apparently now abandoned any and all reliance upon such Privacy Policy to support its consent-related argument. Defendant's apparent position makes no sense. After all, it is beyond dispute that the purported cookie banner cited by Defendant contained a hyperlink to the Privacy Policy. In other words, Defendant sought to convince the Court via the Original Motion that the terms and conditions of its Privacy Policy disclosed the third party interception of Website users' search terms inputted into the search bar of the Website. Simply put, if Defendant's Privacy Policy fails to sufficiently disclose the third party interception of Website users' search terms inputted into the search bar of the Website, then why should a mere cookie banner that is equally vague and ambiguous as to such topic be treated as dispositive of the consent issue?

Plaintiff previously argued in response to Defendant's Request for Judicial Notice (seeking judicial notice of Exhibit B attached thereto) other reasons why such Privacy Policy should not be relied upon as dispositive of the consent issue regarding the conspicuousness of such electronic of adhesion including the hyperlink to such Privacy

Policy. (Doc. 18-1 at 11:3-12:6; Page ID #286-#287.) Such argument has apparently deterred Defendant from further reliance on its Privacy Policy. Defendant's refusal to rely upon its Privacy Policy to support its consent-related argument as to the second claim alleging the violation section 631(a) is indicative of the frailty of Defendant's reliance upon its purported cookie banner.

### C. Defendant's Argument Regarding the Substantive Merits of the First Claim Is an Improper Motion for Reconsideration.

The Court can and should reject Defendant's argument challenging the substantive merits of the first claim in the SAC because it is an improper motion for reconsideration that fails to satisfy L.R. 7-18.

For example, Defendant cites *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), for the proposition that the internet "could not function" if a website's collection of its own visitor's "IP address" is subject to liability for violating section 638.51(a) of the Penal Code. (Def.'s Mem. at 2:9-15.) But, this is exactly the same argument that Defendant made in its prior Memorandum supporting Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint (Doc. 15) (the "Original Motion") filed on November 18, 2024, which included the same quoted language from *Capitol Records*. (Def.'s Mem. of 11/18/24 at 5:16-20; Page ID #188.) Defendant's prior Memorandum also quoted *Capitol Records* for the proposition that courts have interpreted the federal Pen Register Act as not intended to "prevent individuals who receive electronic communications from recording the IP information sent to them," (Def.'s Mem. of 11/18/24 at 5:13-16; Page ID #188), as does the instant Memorandum, (Def.'s Mem. at 2:15-18).

Defendant also quotes *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) and *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2007), for the proposition, "[E]very computer or server connected to the Internet has a unique IP address." (Def.'s Mem. at 4:20-23.) But, this same quote was contained in the prior Memorandum supporting the Original Motion. (Def.'s Mem. of 11/18/24 at 2:21-23; Page

ID #185.) Other portions of *Heeger* are identically quoted in both the Memorandum supporting the Original Motion and the Memorandum supporting the instant Motion. (*Compare* Def.'s Mem. of 11/18/24 at 2:25-3:3; Page ID #185-#186 *with* Def.'s Mem. at 4:23-27; Page ID #514.)

Defendant has failed to demonstrate any "highly unusual circumstances" warranting the reconsideration of the Order entered on January 9, 2025 (Doc. 25) (the "Order") in this action granting in part and denying in part the Original Motion. As Defendant freely acknowledges, the SAC is "nearly identical" to the FAC. (Def.'s Mem. at 3:7; Page ID #513.) As Defendant acknowledges, "The SAC makes one small change to the FAC in an effort to address the first part of the standing test" regarding the second claim for relief. (Def.'s Mem. at 6:18-19.) This Court has previously denied similar "improper attempts to re-argue matters that the Court has already decided." *Gilbert v. New Line Productions, Inc.*, 2010 WL 891333, at *1 (C.D. Cal. Feb. 17, 2010) (Klausner, J.); *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 2012 WL 12884901, at *1 n.1 (C.D. Cal. Jan. 4, 2012) (Klausner, J.) ("The Court notes that a portion of Defendants' arguments are comprised of arguments repeated from the original motion or arguments raised for the first time that should have been raised in the original motion. The Court will not address those arguments, as they are not proper grounds for reconsideration.").

Although Defendant argues that it is making its arguments to ensure that they are "preserved," (Def.'s Mem. at 1:24), presumably for appeal purposes, Defendant's excuse rings hollow and conflicts with *Colley v. James*, 2018 WL 6131156, at *1 (C.D. Cal. Aug. 10, 2018) (Klausner, J.) ("Despite the Court's orders, Plaintiffs realleged their [Paperwork Reduction Act ("PRA")] claim in an amended complaint, claiming that it was necessary to do so to preserve their rights on appeal. The Court rejected Plaintiffs' argument and dismissed the PRA claim in accordance with its previous orders."); *see also United States v. Simmons*, 2001 WL 710625, at *2 (E.D. Cal. May 16, 2001) ("it is unnecessary to repeatedly make the same arguments … to preserve these issues for appeal"). Indeed, "fully argu[ing] the merits" "requiring [the opposing party's] response," is inconsistent

with attempting to "reassert[]" an argument or issue "simply to preserve the issue for appeal." *Consumer Solutions Reo, LLC v. Hillery*, 2010 WL 334417, at *2 (N.D. Cal. Jan. 28, 2010) (concluding that sanctions under 28 U.S.C. § 1927 "are appropriate").

In any event, this Court ought not to revisit the issue because Defendant is merely re-asserting it to purportedly preserve it for appeal purposes. *SB Diversified Products, Inc. v. Murchison*, 2014 WL 3894353, at *2 n.1 (S.D. Cal. July 28, 2014) ("Because Judge Gonzales previously denied defendant's motion to dismiss for improper venue, and defendant reasserts his motion only 'to preserve the issue [for appeal]' and to 'avoid any assertion that [he] waived his objection,' the Court will not revisit the issue here.").

Finally, to the extent that Defendant has raised arguments for the first time regarding the merits of the first claim for relief, which is disputed, the Court should not consider such arguments under Rule 12(g)(2) of the Federal Rules of Civil Procedure. *Imaginal Systematic, LLC*, 2012 WL 12884901, at *1 n.1 ("The Court notes that a portion of Defendants' arguments are comprised of … arguments raised for the first time that should have been raised in the original motion. The Court will not address those arguments…."). Numerous federal courts within the Ninth Circuit have cited Rule 12(g)(2) as the basis for denying successive motions. *See, e.g.*, *Adams v. Cole Haan, LLC*, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021) (Holcomb, J.) ("[Defendant] waived this objection by not raising it in its first motion to dismiss.").

**D. Defendant's Argument Regarding the Merits of the First Claim Is Without Merit.**

Although Defendant implicitly characterizes subdivisions (b) and (c) of section 638.50 as limited to "routing communications," (Def.'s Mem. at 14:11), Defendant ignores that such subdivisions also refer to "addressing" information. As Plaintiff explained in opposition to the Original Motion, in *Shah v. Fandom, Inc.*, - F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), the court held that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information." *Id.* at *3 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)); (Doc. 18

at 7-9; Page ID #263). Similarly, in *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024), the court explained:

> "As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' ' "

*Id.* at *4 (quoting *In re Zynga Priv. Litig.*, 750 F.3d at 1108 (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008))). The SAC (like the FAC) alleges that the spyware beacons on the website at: www.autotrader.com (the "Website") collected the IP address of Plaintiff's device. (SAC ¶ 70; FAC ¶ 70.) That, alone, was sufficient to justify the Order's denial of the Original Motion seeking the dismissal of the section 638.51 claim. After all, the Ninth Circuit's holding that IP addresses constitute "addressing" information is binding on this Court.

Instead of making any attempt to address the foregoing, Defendant baldly argues that "[o]perating system and browser details play no role in routing communications to a website." (Def.'s Mem. at 14:10-11.) Notably, Defendant fails to cite any decision persuasively holding that "operating system and browser details" are irrelevant to "record[ing]" or "decod[ing]" "routing," "addressing," or "signaling" information to a website within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code.

Moreover, in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), the court held:

> "'A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***' "

*Greenley*, 684 F. Supp. 3d at 1050 (emphasis added). Indeed, in *Greenley*, the defendant's software developer kits ("SDKs") intended for use in third-party software applications for the defendant's corporate clients such as Airbnb, Disney, and Kroger allegedly collected the IP address of app users as well as other user data. Although *Greenley* does not

expressly address the collection of IP addresses in addressing the allegations of the first amended complaint at issue therein, a review of the first amended complaint filed in *Greenley* clearly shows the existence of such allegation as follows:

> "This data collection includes all sorts of website information, as well as Plaintiffs' and Class Members' respective ***IP addresses***, browser and device information, user IDs, geolocation data, and other data, [and] are used by Defendant to 'fingerprint' individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties."

(First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55; Page ID.107; Pl.'s RJN Ex. 1) (emphasis added). Thus, *Greenley*'s reference to software constituting a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code that "identifies consumers," "gathers data" and "correlates that data through unique 'fingerprinting,'" is intended to refer to a ***combination*** of IP addresses ***and other user data*** in order to "fingerprint" individuals across the internet.

In *Shah*, *supra*, the court quoted *Greenley* as follows:

> "As Plaintiffs allege, the Trackers are 'at least a 'process' because it is 'software that identifies consumers, gathers data, and correlates that data.'"

2024 WL 4539577, at *2 (quoting FAC ¶¶ 39, 49, 59 (quoting *Greenley*, 684 F. Supp. 3d at 1050)).

Similarly, in *Mirmalek*, *supra*, the court quoted *Greenley* as follows:

> "Plaintiff alleges that the third-party Trackers are 'at least a process' because they are ' 'software that identifies consumers, gathers data, and correlates that data.' ' "

2024 WL 5102709, at *3 (quoting Compl. ¶ 32 (quoting *Greenley*, 684 F. Supp. 3d at 1050)). Thus, two other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data. That is precisely what the SAC in the instant action alleges as substantiated by a computer expert who has assessed Defendant's Website. (SAC ¶¶ 55-64.)

Defendant's implicit argument that operating system information, browser information, geolocation data, and email addresses are completely irrelevant to fingerprinting Website visitors is unsubstantiated. At minimum, Defendant's argument raises factual questions that are premature to be decided as a matter of law at the pleadings stage of this case.

Thus, Defendant's current argument that Plaintiff "never asserted" a legal theory that Defendant obtained a combination of user data besides an IP address to fingerprint visitors to the Website, (Def.'s Mem. at 14:1-3), is simply wrong. Indeed, the SAC expressly references "geolocation data"[2] as amongst the information tracked by Defendant's beacons. (SAC ¶¶ 21, 70.) The Nexxen software geolocates users, which is precisely why "[t]he Nexxen platform is used for businesses to ***identify and segment visitors for marketing campaigns***." (SAC ¶ 57) (emphasis added). That is a reasonable inference to be drawn from the de-anonymization and "fingerprinting" of Website users. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff").

Furthermore, in *Mirmalek*, *supra*, the court denied a similar motion to dismiss a claim alleging the violation of section 638.51 based upon third-party software trackers installed on website visitors' Internet browsers. *Mirmalek*, 2024 WL 5102709, at *3-*5. *Mirmalek* explained:

> "As the *Shah* and *Greenley* courts held, 'the Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register],' which is 'specific as to the type of data [collected],' but 'vague and inclusive as to the form of the collection tool' (i.e. 'device or process')."

*Id.* at *3. As mentioned above, *Mirmalek* then held:

---

[2] Defendant's argument that geolocation data cannot constitute record information that constitutes part of the "routing, addressing or signaling information" is unsubstantiated. As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act).

> "Here, Plaintiff adequately alleges that the Trackers are a 'device or process' as required by CIPA's definition of a pen register. Plaintiff alleges that the third-party Trackers are 'at least a process' because they are ' 'software that identifies consumers, gathers data, and correlates that data.' ' Compl. ¶ 32 (quoting *Greenley*, 684 F. Supp. 3d at 1050)."

*Mirmalek*, 2024 WL 5102709, at *3 (citing Cal. Penal Code § 638.50). *Mirmalek* also held:

> "Further, Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses….As CIPA states, a 'pen register...records...addressing...information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.' § 638.50. As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' ' *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Here, Plaintiff alleges that the 'IP address is a unique identifier for a device...contain[ing] geographic[ ]' information regarding a 'device's state, city, and zip code.' … Thus, Plaintiff sufficiently alleges that the Trackers record addressing information in the form of IP addresses."

*Id.* at *4.

**1. Defendant's Consent Argument Lacks Merit.**

Consent is a defense to privacy-related claims, and, as the party seeking the benefit of the exception, it is the defendant's burden to prove consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

Defendant's characterization of the Order rejecting Defendant's argument asserting that Plaintiff consented to the conduct constituting a violation of section 638.51 conveniently ignores that the Court noted that:

> "And according to the plain allegations of the FAC, Plaintiff did not consent to the

software installation and use. Indeed, Plaintiff alleges that the software was installed immediately upon loading the Website before she had any opportunity to consent to Defendant's Privacy Policy."

(Order at 8.) Notably, the Court was relying upon paragraph 56 of the FAC, which alleged in relevant part:

"Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner."

(FAC ¶ 56.) That same allegation is in paragraph 56 of the SAC. (SAC ¶ 56.) Thus, the Court did consider Defendant's consent argument, but determined that it did not warrant the dismissal of the first claim as a matter of law via the Original Motion. The Court did not commit any error in doing so.

Notably, in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit interpreted section 631(a) of the California Penal Code as requiring "prior consent," and predicted that the California Supreme Court would interpret such statute in such manner. *Id.* at *2 ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added). Although the Ninth Circuit in *Javier* was interpreting section 631(a), the supportive "statements" of the California Supreme Court cited by *Javier* included the emphasis that "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier*, *id.* at *2 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (citing Cal. Penal Code § 630)).

Also, "'[c]onsent is … generally limited to the specific conduct authorized.'" *Greenley*, 684 F. Supp. 3d at 1048 (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users

consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data disclosure). As the California Supreme Court has explained:

> "[W]e adhere to the view suggested in *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."

*Sanders v. Am. Bd. Co., Inc.*, 20 Cal. 4th 907, 915-16 (1999) (recognizing an "expectation of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.)).

"Consent is frequently evaluated using principles of contract to determine "whether the user 'agreed' " to the specific use or collection." *Javier*, 2021 WL 940319, at *2 (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)). "Courts have cautioned that implied consent applies only in a narrow set of cases." *In re Google*, 2013 WL 5423918, at *12. "The critical question with respect to implied consent is whether the parties whose communications were intercepted had ***adequate notice*** of the interception." *Id.* (emphasis added). "That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent." *Id.* (emphasis in original); *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("foreseeability of monitoring is insufficient to infer consent"). "The disclosures must have only one plausible interpretation for a finding of consent." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021). "[I]f a reasonable … user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *Id.* (quoting *In re Facebook, Inc. Consumer*

*Privacy User Profile Litig.*, 402 F. Supp. 3d at 794).

If anything, the specific use of an Internet user's IP address for the user's computerized device implicitly agreed upon by the user is the disclosure of the device's IP address solely to communicate with the website visited by the Internet user. Any such limited and narrow consent to the use of the Internet user's IP address, however, is limited to communicating with the website that the user wants to visit. Users do not expect the IP address on their device to be collected by surreptitious tracking software code embedded into the websites that they visit with the goal of de-anonymizing such website visitors so that their website history can be tracked and monetized by those involved in the identity resolution industry.

The Court should follow the numerous similar federal court decisions that have rejected deciding the issue of consent as a matter of law at the pleadings stage in privacy-related actions. *See, e.g.*, *Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024); *D'Angelo v. FCA US LLC*, 726 F. Supp. 3d 1179, 1197-98 (S.D. Cal. 2024); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023); *Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081 (C.D. Cal. 2023) (same); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (Breyer, J.); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080-81 (C.D. Cal. 2021) (Holcomb, J.).

**E. Defendant's Argument Regarding the Substantive Merits of the Second Claim Is an Improper Motion for Reconsideration.**

The Court can and should reject Defendant's argument challenging the substantive merits of the second claim in the SAC because it is an improper motion for reconsideration that fails to satisfy L.R. 7-18.

Defendant acknowledges that it is moving to dismiss "the SAC's identical

allegations" regarding the violation of section 631(a) of the Penal Code. (Def.'s Mem. at 8:21.) Defendant's argument regarding the second claim is limited to the issue of whether Plaintiff's use of the Website despite the existence of the alleged cookie banner allegedly applicable to Plaintiff's visit to the Website provided Plaintiff constitutes implied consent.

In addressing the Original Motion, this Court has previously addressed the issue of consent in the context of the alleged violation of section 631(a) of the Penal Code and the alleged banner. (Order at 5-6.) Although Defendant contends that "[t]he Court previously ruled that the FAC did not establish Plaintiff's implied consent ***only*** because it concluded that 'Plaintiff does not allege any details about the banner,'" (Def.'s Mem. at 9:4-6; Page ID #519) (emphasis added), Defendant's contention is inaccurate. Defendant omitted the next sentence in the Order stating:

"Nor does Defendant provide any details about the banner via judicial notice."

(Order at 6.) Defendant also omitted footnote 3 of the Order stating:

> "To be sure, Defendant includes a copy of the Website's privacy policy in a Request for Judicial Notice. (Def.'s Request for Judicial Notice, Ex. B, ECF No. 16-2.) However, this says nothing of the banner's conspicuousness or contents."

*Id.* Defendant's Motion fails to argue that the contents of its purported banner that it is relying upon are identical to the version that existed at the time of Plaintiff's early 2024 visit to the Website. Moreover, assuming *arguendo* that such purported banner did not change at all in 2024, it failed to provide prior notice upon Website users like Plaintiff disclosing that Plaintiff's use of the search bar feature on the Website would result in the contemporaneous interception of her search terms by an undisclosed third party. Furthermore, Defendant's Motion fails to address the banner's conspicuousness.

Defendant has failed to demonstrate any "highly unusual circumstances" warranting the reconsideration of the Order.

Given that Defendant argues that it has interposed its argument so that they may be "preserved," (Def.'s Mem. at 8:19-20), the Court should summarily deny such Defendant's argument. *Imaginal Systematic, LLC*, 2012 WL 12884901, at *1 n.1 ("The Court notes that a portion of Defendants' arguments are comprised of arguments repeated

from the original motion …. The Court will not address those arguments, as they are not proper grounds for reconsideration.”); *SB Diversified Products, Inc.*, 2014 WL 3894353, at *2 n.1.

Dated: February 14, 2025

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,996 words, which complies with the word limit of Doc. 11 at 3:26-4:1.

Dated: February 14, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell