ARAVIND SWAMINATHAN (*Pro Hac Vice*)
aswaminathan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: +1 206 839 4340
Facsimile: +1 206 839 4301

JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

THOMAS FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 So. Grand Avenue
Suite 2700
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant,
AUTOTRADER.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

REBEKA RODRIGUEZ,

Plaintiff,

v.

AUTOTRADER.COM, INC., a Delaware corporation, d/b/a WWW.AUTOTRADER.COM,

Defendant.

Case No. 2:24-cv-08735-RGK-JC

**REPLY IN SUPPORT OF AUTOTRADER.COM, INC's MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Hearing Date: March 10, 2025

Time: 9:00 a.m.

Dept: Courtroom 850

Judge: Hon. R. Gary Klausner

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 2

A. Plaintiff Lacks Standing To Sue Under California Penal Code § 631(a). .......... 2

B. The SAC Fails To State A Claim Under California Penal Code § 631(a). .......... 5

C. The SAC Fails To State A Claim Under California Penal Code § 638.51(a). .......... 7

III. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. 2023) .......... 3, 4

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. 2009) .......... 8

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. 2025) .......... 8, 9

*Negro v. Superior Ct.*,
230 Cal. App. 4th 879 (2014) .......... 5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 5

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. 2024) .......... 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 3, 4

*United States v. Keel*,
2017 WL 9477638 (N.D. Ga. 2017) .......... 9

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) .......... 6, 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8

### Statutes

Cal. Penal Code § 631(a) .......... 1, 2, 3, 5, 6

Cal. Penal Code § 638.50(b) .......... 7, 9, 10

Cal. Penal Code § 638.51(a) .......... 2, 7, 8, 9, 10

Cal. Penal Code § 638.52(c) .......... 7

Cal. Penal Code § 638.52(d)(3) .......................................................................... 7

**Other Authorities**

California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) ...................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The many flaws in Plaintiff's lawsuit boil down to one essential problem: She asserts a privacy right where none exists. The Second Amended Class Action Complaint ("SAC") claims that Autotrader violated California Penal Code § 631(a) by sharing Plaintiff's used-car searches with third parties that "***analyze*** Website data" and "conduct targeted ***advertising***." SAC ¶ 66 (emphases added). But Plaintiff had no reasonable expectation of privacy in those searches and so lacks Article III standing. That is because Autotrader's website banner expressly informed her, in stark terms reproduced within the SAC, that it would "share information about your use of our site with our social media, ***advertising***, and ***analytics*** partners." *Id.* ¶ 101 (emphases added). Any reasonable person confronting that unambiguous disclosure would have expected all of their activity on Autotrader's website—and certainly their searches for used cars, the website's core service—to be shared for advertising and analytics purposes.

Plaintiff tries in vain to escape the legal significance of Autotrader's disclosure. Amazingly, she contends that she should not be stuck with the consequences of ***her own affirmative pleadings*** that reproduce Autotrader's website banner because Autotrader did not separately submit its own "copy." Opposition to Mot. to Dismiss, ECF No. 40 ("Opp."), at 3. That is simply not the law. Plaintiff is the master of her own complaint, and Autotrader had no duty to supplement the dispositive facts she chose to include in her pleadings. Perhaps recognizing as much, Plaintiff then suggests that the sufficiency of Autotrader's disclosure is somehow "open to interpretation." Opp. 4. But she never explains how. Nor could she. Again, the words Autotrader used to disclose its sharing of information are ***essentially identical*** to the words Plaintiff uses to describe the sharing that allegedly violated § 631(a).

Those same allegations also doom Plaintiff's § 631(a) claim on the merits. A

plaintiff who implicitly consents to information sharing has no claim under the statute. And there is no question that such implied consent may stem from a website's conspicuous disclosure of the sharing activity in question. Here, Autotrader's banner was more than conspicuous enough. (Indeed, Plaintiff herself put it in her complaint). The Court previously ruled otherwise solely because it overlooked that Plaintiff had reproduced the banner in her pleadings. The court should correct that oversight here (if not by granting Autotrader's pending motion for consideration) and dismiss the § 631(a) claim with prejudice.

Plaintiff's claim under California Penal Code § 638.51(a) likewise asserts an illusory privacy right. The SAC contends that Autotrader operated a pen register exclusively by collecting ***its own visitor's*** IP address. But § 638.51(a) does not grant a website's visitors the right to keep their IP addresses private from the website. Indeed, that would be ***technologically impossible***. The exchange of IP addresses is essential to every connection between a visitor and a website, and criminalizing it would effectively outlaw the internet. No surprise, then, that the text and history of § 638.51(a), recent federal and California case law construing the statute, and longstanding federal case law construing the analogous Pen Register Act all squarely reject the legal theory that Plaintiff asserts here. This Court has never disagreed. It previously allowed the § 638.51(a) claim to proceed solely by mistakenly ruling that Plaintiff alleged a violation based on Autotrader's collection of ***other*** information ***beyond*** her IP address. The SAC does not—and could not—make that allegation. Once more, the Court should correct that misapprehension here (if not by granting Autotrader's pending reconsideration motion) and dismiss the § 638.51(a) claim with prejudice.

## II. LEGAL ARGUMENT

### A. Plaintiff Lacks Standing To Sue Under California Penal Code § 631(a).

Plaintiff does not contest the legal framework for standing under § 631(a): She

must adequately allege "harm to her privacy," which means pleading ***both*** that her search queries contained particularly "sensitive information" ***and*** that she "reasonably expected" the searches were "not being recorded" by third parties. Mot. to Dismiss the SAC, ECF No. 36 ("Mot."), at 6 (quoting *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3-4 (C.D. Cal. 2023)). Plaintiff also does not dispute that the SAC's amendments—in particular, the new allegation that she searched "White SUV's safe for autistic four year old," SAC ¶ 108—are intended to establish only the first required showing (sensitivity of her search), without making any effort to address the second (reasonable expectation of privacy). Mot. 6.

That leaves Plaintiff unable to make the second showing. She complains that Autotrader allowed third parties to access her searches in order to "***analyze*** Website data" and "conduct targeted ***advertising***." SAC ¶ 66 (emphases added). But she also admits that the prominent banner on Autotrader's website disclosed exactly that type of interception, telling users that it would "share information about your use of our site with our social media, ***advertising***, and ***analytics*** partners." *Id.* ¶ 101 (emphases added). Plaintiff simply cannot have retained any reasonable expectation of privacy given that disclosure.

Plaintiff's lead response is to invoke a non-existent burden of proof. She contends that Autotrader was somehow required to submit its own "copy" of the website banner that Plaintiff had already reproduced in her pleadings. Opp. 3. That is not the law. Once Plaintiff elected to provide these facts herself, Autotrader was entitled to rely on them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). And because Plaintiff had already "plead[ed] h[er]self out of a claim by including … details contrary to h[er]" § 631(a) cause of action, Autotrader had no obligation to supplement the record. *Id.* That is why the Court's prior order considered whether "Plaintiff" had "allege[d] any details about the banner," ECF No. 25, at 6: because such allegations can be dispositive. The Court simply missed that

those allegations were in the record. *Infra* 6.[1]

Plaintiff fares no better in suggesting that Autotrader's banner might not have "sufficiently notified" her of the information sharing she alleges. Opp. 4. A side-by-side comparison shows the near-perfect match between the two:

| **Alleged sharing** | **Autotrader's disclosure** |
|---|---|
| Third parties collected Plaintiff's used-car searches to "***analyze*** Website data and marketing campaigns, conduct targeted ***advertising***, and boost Defendant's revenue." SAC ¶ 66 (emphases added). | The website would "share information about your use of our site with our social media, ***advertising***, and ***analytics*** partners." *Id.* ¶ 101 (emphases added). |

Plaintiff tries to distract from those parallels by claiming she was not warned that her searches would be "used by unrelated third party data collectors having no corporate affiliation with Defendant." Opp. 4. It is not clear what this reference to "corporate affiliation" means. But it plainly has no relevance. Autotrader's disclosure of information sharing was not limited to corporate affiliates—it covered all third parties that worked with Autotrader as "partners." SAC ¶ 101. Plaintiff could not reasonably expect her searches to remain insulated from that disclosed sharing.

Plaintiff then takes a misguided tangent about Autotrader's privacy policy, suggesting that Autotrader should have "relied" more on that additional document to show she lacked a reasonable expectation of privacy. Opp. 5. That is just another way of erroneously suggesting Autotrader was somehow obligated to supplement the record when the SAC's allegations already defeat standing. *See Sprewell*, 266 F.3d at 988. To be sure, however, the privacy policy confirms what the website banner

[1] Plaintiff is wrong to suggest that Autotrader "implicitly argues that Plaintiff" lacks standing merely because she is "a 'tester.'" Opp. 2. Although that is yet another indication that she lacked a reasonable expectation of privacy, *see* Mot. 6-7 (citing *Byars*, 2023 WL 2996686, at *4), Autotrader has always relied chiefly on how its website "conspicuously disclosed" the sharing at issue, *id.* at 7.

reproduced in the SAC conclusively establishes: Any reasonable user in Plaintiff's position would have expected her search queries to be shared. *See, e.g.*, ECF No. 16, Ex. B, at 13 ("By using Autotrader Sites, you consent to the use of your information and information about you in accordance with this Privacy Statement."), 17-18 ("[w]e may use information we collect … [t]o provide or sell to third parties to allow them to market or advertise their products or services to you"), 19 (Autotrader may "share information about you that we collect or receive" with "third parties" engaged "to provide the services offered through or in connection with the Autotrader Sites on our behalf").

### B. The SAC Fails To State A Claim Under California Penal Code § 631(a).

The disclosures in Autotrader's website banner, as pleaded in the SAC, do not merely eliminate Plaintiff's reasonable expectation of privacy. They also establish her implied consent to the alleged sharing of her searches, which means that in addition to lacking standing, Plaintiff has failed to state a § 631(a) claim. Mot. 8-9; *see* Cal. Penal Code § 631(a) (prohibiting interception only "without the consent of all parties"). Plaintiff never disputes that she read Autotrader's disclosures before conducting her searches, or that their "conspicuousness and placement" were sufficient to ensure that any "reasonably prudent user" would see them. Mot. 8 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Nor could she: The banner took up the ***bottom quarter*** of the website screen, Mot. 7 (citing SAC ¶ 101), and disclosed the sharing at issue in language virtually identical to Plaintiff's allegations. *Supra* 4. That makes this a "typical case" of implied consent stemming from Plaintiff's "continued use" of Autotrader's website "after receiving notice that his or her communications may be intercepted." Mot. 8 (quoting *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014)).

Plaintiff's only direct response is procedural: She urges the Court to disregard her failure to state a § 631(a) claim by classifying Autotrader's arguments as "an

improper motion for reconsideration." Opp. 6. There is nothing improper here. Autotrader has raised the same arguments in a timely motion for reconsideration of the Court's prior order dismissing in part Plaintiff's First Amended Class Action Complaint ("FAC"). *See* ECF No. 31, at 6-8; ECF No. 39, at 5-8. Autotrader explained that it also raised the arguments here "[t]o ensure that those arguments are preserved and the Court has the opportunity to rule on them." Mot. 8. The point is not merely to create a record for potential "appeal purposes." Opp. 7. Autotrader included the arguments here to ensure that ***this Court*** has the opportunity to consider them in the first instance, even if the Court were to elect not to rule on Autotrader's pending reconsideration motion in light of the SAC's filing. One way or another, this Court should decide whether Plaintiff's allegations about the disclosures on Autotrader's website establish her implied consent. The Court has not yet resolved that issue because it inadvertently overlooked the relevant allegations, and so mistakenly found that "Plaintiff does not allege any details about the banner." ECF No. 25, at 6. Autotrader simply seeks a ruling grounded in a complete assessment of Plaintiff's pleadings, which she has no procedural basis for avoiding.

Plaintiff's brief could also be read to suggest (echoing her misguided standing argument) that Autotrader should have "relied" more on its privacy policy to establish her implied consent. Opp. 5. As for standing, however, the SAC's affirmative allegations about the website banner conclusively show that Plaintiff cannot prevail on the consent issue. So there is no need for Autotrader to cite more. And, as explained, the privacy policy simply confirms that Autotrader adequately disclosed its sharing of information (including user searches) with third parties, *supra* 5, such that Plaintiff implicitly consented by continuing to use the website.

Plaintiff also suggests that *United States v. Staves*, 383 F.3d 977 (9th Cir. 2004), somehow undercuts Autotrader's argument for implied consent. *Staves* instead provides a telling contrast. Its facts are far afield from the SAC's allegations: The Ninth Circuit considered whether a criminal defendant had implicitly consented

to warrantless police monitoring of his illegal "cloned" cell phone—i.e., one programmed to use the number of someone else's account to avoid detection—merely because he had chosen to use an illegal device. *Id.* at 980-81. The answer was no: The defendant's decision to break the law by using the cloned phone did not "indicate" that he "knew that interception was likely and agreed to the monitoring" without a warrant. *Id.* at 981. Here, the SAC alleges exactly the "indication" of interception that *Staves* found lacking: Autotrader's express statement to Plaintiff that it would "share information about your use of our site with our social media, advertising, and analytics partners." SAC ¶ 101.

### C. The SAC Fails To State A Claim Under California Penal Code § 638.51(a).

The SAC's § 638.51(a) claim fails for a straightforward reason: It is premised solely on a website collecting "the IP address" of its visitor, SAC ¶ 134, which the statute does not prohibit.[2] Section 638.51(a)—just like its federal analog, the Pen Register Act—instead regulates how ***third parties*** may install pen registers to obtain routing information about ***others'*** communications. Mot. 10-11. That is clear from the text and history of the law. The statute's language focuses on third parties adding devices to "telephone" technologies, *Id.* at 12 (citing Cal. Penal Code § 638.52(c), (d)(3)), because the Legislature was narrowly concerned with the "use [of] pen register and trap and trace devices" by unknown observers like "law enforcement officers," *id.* at 11 (quoting California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015)). What the Legislature ***did not*** do was criminalize the internet by outlawing the exchange of IP addresses necessary for any website visit. That is why a California court recently ruled that § 638.51(a) does not prohibit a website from "collecting" a visitor's "IP address," ECF No. 16, Ex. A, at 10, and why federal courts have long

---

[2] To the extent the SAC alleges that Autotrader subsequently shared the IP address it collected with third parties, § 638.51(a) does not prohibit that, either. The statute regulates only how a party "records" information—not how that party subsequently uses it. Cal. Penal Code § 638.50(b).

held that the Pen Register Act likewise "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them," since the internet otherwise "could not function," *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. 2009). Just a few days ago, moreover, a federal court dismissed a § 638.51(a) action premised on a website's collection of the plaintiff's IP address. *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *8 (S.D.N.Y. 2025). On top of all that, even if Autotrader's collection of Plaintiff's IP address could qualify as the operation of a pen register, it still would not violate § 638.51(a) because Plaintiff—like any reasonable internet user—consented to that collection by electing to access Autotrader's website. Mot. 12-13; *see Gabrielli*, 2025 WL 522515, at *6 (plaintiff "voluntarily provided his IP address when he accessed Insider's website").

Plaintiff has no answer to any of that, except to note that "IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers." Opp. 9 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)) (quotation marks omitted). That is a non sequitur. No one disputes that an IP address is in some sense addressing information. But that general proposition does not resolve whether § 638.51(a), in particular, prohibits a website from collecting the IP address that its visitor inevitably conveys in connecting over the internet. As explained, every relevant consideration—the statute's text, history, and recent construction in California court, along with the parallel case law regarding the Pen Register Act—answers that question in the negative.[3]

Plaintiff then falls back on the argument that Autotrader violated § 638.51(a) by collecting ***different*** information: her "operating system information, browser

---

[3] *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. 2024), did not reckon with those considerations. *See* Opp. 10-11. That is why it erroneously expanded § 638.51(a)'s scope in ways the Legislature did not authorize—and that improperly threaten to "unsettle the basic operating rules of the Internet." *Id.* at *6.

information, geolocation data, and email addresses," purportedly used to "fingerprint" consumers. Opp. 9-11. That argument fails twice over. First, the SAC ***does not allege*** that such information gives rise to a § 638.51(a) violation. The pleadings are clear: Autotrader allegedly operated a "pen register" solely because its website "'capture[d]' the 'routing, addressing, or signaling information'—***the IP address***—from the electronic communications transmitted by Plaintiff's computer or smartphone." SAC ¶ 134 (quoting Cal. Penal Code § 638.50(b)) (emphasis added). Plaintiff cannot rewrite those allegations via attorney argument.

Second, Plaintiff ***could not possibly*** state a § 638.51(a) claim based on those other forms of information (so any amendment to that effect would be futile). A device qualifies as a pen register under the statute only to the extent that it "collect[s]" "dialing, routing, addressing, or signaling information" identifying the source of a "communication." Cal. Penal Code § 638.50(b). Operating system and browser details play no role in routing communications to a website. Neither does a visitor's email address. And courts routinely distinguish the routing data subject to a "pen register and trap and trace," on one hand, from "geolocation information," on the other—even issuing separate "warrants" for each. *E.g.*, *United States v. Keel*, 2017 WL 9477638, at *2, *report and recommendation adopted*, 2017 WL 1371870 (N.D. Ga. 2017); *see* Mot. 14. Plaintiff ignores this fundamental problem, instead vaguely alluding to "factual questions" that simply do not exist. Opp. 11.

Plaintiff also gets nowhere disputing that she consented to Autotrader collecting her IP address. There is no question—and Plaintiff does not contest—that any reasonable user would understand a website connection necessarily entails the exchange of IP addresses. *See Gabrielli*, 2025 WL 522515, at *6. That is, after all, how the internet works. So she again falls back on a distorted procedural argument, urging that the Court has already "consider[ed]" Autotrader's argument and should pay it no heed now. Opp. 13. That is wrong. The Court's prior order pointedly ***did not*** resolve Autotrader's argument that "Plaintiff implicitly consented" to the

collection of her IP address. ECF No. 25, at 8. Instead, the order again relied on the mistaken idea that Plaintiff's § 638.51(a) claim was premised on "more than just her IP address," rejecting Autotrader's consent defense solely because Plaintiff had not clearly consented regarding the collection of ***other*** "information" like "operating system" and "browser information." *Id.* This is the right time for the Court to return to the issue, on a corrected view of Plaintiff's pleadings, and rule that she implicitly consented to Autotrader's collection of her IP address by navigating to its website.[4]

## III. CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's SAC with prejudice.

Dated: February 24, 2025

ARAVIND SWAMINATHAN
JACOB M. HEATH
THOMAS K. FU
Orrick, Herrington & Sutcliffe LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant
AUTOTRADER.COM, INC.

[4] Plaintiff suggests that she did not separately consent to Autotrader ***sharing*** her IP address with third-party "tracking" tools. Opp. 15. Again, that is legally irrelevant. Section 638.51(a) regulates only how a party "records" information, not how that party subsequently uses it. Cal. Penal Code § 638.50(b). Plaintiff's claim therefore must be premised on how Autotrader ***recorded*** her IP address—not subsequent sharing.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Autotrader, certifies that this Memorandum of Points and Authorities contains 2980 words, is no more than 10 pages, and otherwise complies with the Court's Standing Order.

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant
AUTOTRADER.COM, INC.